UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFFREY NEUFELD and AUBREY SREDNICKI, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY and CARECENTRIX, INC.,<br><br>      Defendants. | No. 3:17-cv-1693-WWE<br><br><br><br><br><br><br><br><br>January 19, 2018 |

### <u>RULE 26(f) REPORT</u>

Date Complaint Filed:          October 6, 2017

Date Amended Complaint Filed:     December 11, 2017

Date of CareCentrix, Inc. ("CareCentrix")
Appearance:            November 3, 2017

Date of Cigna Health and Life Insurance
Company ("Cigna") Appearance:     November 7, 2017

   Pursuant to Fed. R. Civ. P. 16(b), 26(f) and D. Conn. L. Civ. R. 16, a conference was

held on December 7, 2017.  The participants were:

-   For Plaintiffs: William H. Narwold, Mathew Jasinski, Robert A. Izard, Craig A. Raabe, and Christopher M. Barrett.

-   For Defendant Cigna: Joshua B. Simon, Warren Haskel, and Michael Valerio.

-   For Defendant CareCentrix: Ray Mullady, Lane Davis, and William Brown.

I.     **Certification**

Undersigned counsel certify that, after consultation with their clients, they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case and, in consultation with their clients, have developed the following proposed case management plan.  Counsel further certify that they have forwarded a copy of this report to their clients.

II.    **Jurisdiction**

A.     **Subject Matter Jurisdiction**

Plaintiffs allege that this court has subject matter jurisdiction over this action pursuant to (a) 28 U.S.C. § 1331, which provides for federal jurisdiction over civil actions arising under the laws of the United States, including ERISA and RICO; (b) 29 U.S.C. § 1132(e)(1) providing for federal jurisdiction of actions brought under Title I of ERISA; and (c) 18 U.S.C. § 1964 providing for federal jurisdiction to prevent and restrain violations of 18 U.S.C. § 1962.  Further, declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Rules 58 and 65 of the Federal Rules of Civil Procedure.

B.     **Personal Jurisdiction**

Personal jurisdiction is not being contested as to current parties.

III.   **Brief Description of Case**

A.     **Claims of Plaintiffs**

Plaintiffs, who purchased equipment and/or services through a health plan issued or administered by Cigna, bring this action on behalf of themselves and a Class and Subclass of similarly situated persons alleging (a) violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and (b) violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., resulting from

2

Defendants' common fraudulent and deceptive scheme to artificially inflate costs causing consumers to pay more than they otherwise should have paid for medically necessary benefits (excluding prescription drug benefits).

Plaintiffs allege that Defendants caused them and members of the Class and Subclass to pay excessive cost-sharing payments in violation of their plans.  Cigna either directly overcharged or caused managers to overcharge Class and Subclass members, and these excess payments were then sent back to Cigna, in part or in full.

- Count I: ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to enforce rights under plans and clarify benefits.

- Count II: ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), for causing plans to engage in prohibited transactions with party in interest.

- Count III: ERISA § 406(b), 29 U.S.C. § 1106(b), for engaging in prohibited transactions with plans.

- Count IV: ERISA § 404, 29 U.S.C. § 1104, for breaching fiduciary duties.

- Count V: ERISA § 702, 29 U.S.C. § 1182, for discriminating against participants and beneficiaries based on status.

- Count VI: ERISA § 405(a), 29 U.S.C. § 1105(a), for liability for the breach of a co-fiduciary.

- Count VII: ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), for violations by non-fiduciaries.

- Count VIII: RICO, 18 U.S.C. § 1962(c), against Cigna.

- Count IX: RICO, 18 U.S.C. § 1962(c), against Cigna.

- Count X: RICO, 18 U.S.C. § 1962(c), against Cigna.

- Count XI: RICO, 18 U.S.C. § 1962(d), against CareCentrix

- Count XII: RICO, 18 U.S.C. § 1962(d), against all Defendants.

Defendants intend to seek dismissal on, among others, the ground that "Plaintiffs lack standing to assert claims against unnamed entities from whom they have not suffered any

injury." (*See infra* section III.B.) But Plaintiffs' claims are against *Defendants*—not unnamed

entities. Plaintiffs allege, for example, that ***Cigna's*** discretionary management of ***Cigna's*** plans

harmed ***Cigna's*** patients in violation of ERISA.[1] That Cigna may have delegated some of its

obligations under the plans to other third-party administrator agents (in addition to Defendant

CareCentrix) is irrelevant. Cigna is the plan provider with the direct fiduciary relationship with

its customers and is liable for the breach of its fiduciary duties by itself — and by its agents if

Cigna delegated responsibilities to third parties. *See Wasley Products, Inc. v. Bulakites*, 3:03 CV

1790 MRK WIG, 2006 WL 3834240, at *6 (D. Conn. May 31, 2006) (holding that a fiduciary is

responsible for the fiduciary breaches of its agents committed within the scope of their agency

and collecting cases).

Arguing that it would add "many years to the discovery schedule," Defendants also

intend to challenge Plaintiffs' ability represent a class defined to include "individuals whose

claims related to vendors other than the two vendors involved in [Plaintiffs'] claims." (*See infra*

section V.E.) It bears noting, however, that this is a different issue. That is, whether Plaintiffs

ultimately may assert claims on behalf of others pursuant to Rule 23—"class standing"—is

separate from the question of whether Plaintiffs have Article III standing.

In *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2012)

("NECA-IBEW"), the Second Circuit explained the "***broad standard*** for class standing": "[I]n a

putative class action, a plaintiff has class standing if he plausibly alleges (1) that he 'personally

---

[1] *See, e.g.*, ¶ 60 ("Cigna implemented this fraudulent billing scheme . . . ."); ¶ 62 ("Cigna, through Cigna Medical Corp., knowingly sent an invoice . . . .); ¶ 64 ("Cigna developed and directed the fraudulent billing scheme through its Plans. . . . Cigna charged or required the managers to charge patients excessive and unlawful copayment, coinsurance, or deductible payments, and dictated that these patient payments not be discounted or excused/waived . . . .); ¶ 69 ([H]ow these plans are administered by Cigna . . . do not differ materially across Plans . . . .).

has suffered some actual ... injury as a result of the putatively illegal conduct of the defendant,'" *Id*. at 162 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) (emphasis added)) and "(2) that such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Id*. (quoting *Gratz v. Bollinger*, 539 U.S. 244, 267 (2003)). Plaintiffs' allegations easily satisfy this broad standard. They have suffered injury as a result of Cigna's charging of excessive cost-sharing payments in violation of the plans. This same conduct by Cigna is causing injury to each Class member and Cigna's conduct injuring Plaintiffs implicates the same set of concerns as the conduct alleged to have caused injury to other class members.

Moreover, Plaintiffs' claims are not limited to claims processed through third-party managers. Contrary to Defendants' argument on page 7, below, that "Cigna has a separate, factually distinct relationship in Arizona involving Health Diagnostic Laboratory," Plaintiffs do not contend that Health Diagnostic Laboratory is simply another third-party manger (like CareCentrix), but rather that it is a pseudonym for a Cigna entity. Amended Complaint ¶ 15. Accordingly, this is an example of Cigna providing services directly through providers rather than through third-party administrator agents like CareCentrix.

The two cases cited by Defendants are either irrelevant or contrary to *NECA-IBEW*. *First*, contrary to the allegations at issue in *Fayeulle v Cigna Corp.*, 2016 WL 9752012 (D. Colo. June 29, 2016), Plaintiffs here are not bringing claims against "unnamed entities" so the analysis in *Fayeulle* is not relevant. *Second*, the holding of *Peters v. Aetna*, 2016 WL 4547151 (W.D.N.C. Aug. 31, 2016), is irrelevant because here Plaintiffs have alleged that they suffered an injury caused by the Defendants' conduct. *See* Brief in Support of Aetna's Motion to Dismiss Plaintiff's Complaint, ECF No. 42, *Peters v. Aetna*, No. 1:15-cv-00109-MR (W.D.N.C.) at Part

5

III.A.1 (arguing that plaintiffs had failed to allege a concrete Article III injury). To the extent Defendants are arguing that *Peters* stands for the proposition that Plaintiffs must have suffered the *same* Article III injury as each class member, such argument fails here because (a) Plaintiffs have, in fact, alleged that each class member suffered the same injury and (b) regardless, such requirement conflicts with the Second Circuit's "same set of concerns" standard.

**B.**    **Defenses and Claims (Counterclaims, Third Party Claims, Cross Claims) of Defendants**

Plaintiffs challenge a practice fully disclosed in their ERISA plans and which significantly benefits plan sponsors and plan members by increasing the number of providers available to plan members while lowering the overall costs.  Cigna administers claims for self-insured and fully-insured healthcare benefits plans, including those sponsored by Plaintiffs' employers.  One of the key ways that Cigna ensures that plan members have access to covered healthcare services at reasonable prices is through its network of contracted providers, who accept discounted rates for their services in exchange for increased access to Cigna's plan members.

Cigna historically assembled its networks through direct contracts with healthcare providers.  But for certain types of specialty services, Cigna also began contracting with entities that could arrange for plan members to receive healthcare services through their own networks of contracted healthcare professionals.  For instance, Cigna and defendant CareCentrix have a contractual relationship pursuant to which Cigna's plan members can receive, on an in-network basis, durable medical equipment, home healthcare, and home infusion services from providers who contract with CareCentrix.  The relationship benefits plan sponsors because CareCentrix's specialized knowledge about home healthcare services generates efficiencies in contracting, credentialing, and the services provided by its contracted providers, all of which ultimately saves plan sponsors and their members money.  Cigna's relationship with CareCentrix also benefits

members by increasing access to home healthcare products and services at reduced rates through CareCentrix's extensive network of providers. Members also benefit from better quality of care through CareCentrix's oversight of its providers' services, including CareCentrix's services that ensure that a member is properly using durable medical equipment supplied through CareCentrix's professionals. Cigna has a separate, factually distinct relationship in Arizona involving Health Diagnostic Laboratory for the provision of laboratory services.

Plaintiffs assert a litany of ERISA and RICO claims challenging not only Cigna's relationships with CareCentrix and Health Diagnostic Laboratory, but all relationships in which Cigna contracts with "managers" to arrange for services for members through these managers' networks of healthcare professionals. In particular, Plaintiffs claim that these arrangements cause members to overpay for healthcare services because the members' share of costs for those services are calculated based on the agreed upon price between Cigna and the manager rather than the generally lower price paid by the manager to the treating provider.

Plaintiffs' claims suffer from a long list of defects that warrant dismissal even at the pleading stage. As a threshold matter, and as at least two courts presented with the same theories have already found, Plaintiffs lack standing to assert claims against unnamed entities from whom they have not suffered any injury. *See Fayeulle v Cigna Corp.*, 2016 WL 9752312, at *1 (D. Colo. June 29, 2016); *Peters v. Aetna, Inc.*, 2016 WL 4547151, at *4-5 (W.D.N.C. Aug. 31, 2016). In addition, Plaintiffs' ERISA or RICO claims fail under Rules 9(b) and 12(b)(6), including because Cigna's plans expressly allow Cigna to calculate benefits based on the rates paid to managers, rather than the amounts treating providers may charge the managers for their services, and that at least one Plaintiff, Jeffrey Neufeld, admits he has not exhausted his plan's administrative remedies. Defendants intend to move to dismiss Plaintiffs' Amended Complaint on January 23, 2018.

**C.     Defenses and Claims of Third Party Defendants**

Not applicable.

**IV.     Statement of Undisputed Facts**

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute.  The parties state that the following material facts are undisputed:

1.     Plaintiffs were participants in employer-sponsored medical benefit plans for which Cigna provided administrative services or that Cigna insured.

2.     Plaintiffs received benefits pursuant to their plans.

3.     Cigna retained Defendant CareCentrix to provide home patient care and durable medical equipment, including, but not limited to, sleep management solutions.  CareCentrix in turn has established a network of over 8,000 providers to provide these products and services to patients.

**V.     Case Management Plan**

**A.     Standing Order on Scheduling in Civil Cases**

The parties request modification of the deadlines in the Standing Order on Scheduling in Civil Cases as contained herein.  In addition to the deadlines included below, the parties agree that Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1) will be exchanged on January 31, 2018.

**B.     Scheduling Conference with the Court**

The parties request a conference with the Court to discuss the scheduling issues and disagreements discussed herein, including the scope and timing of discovery in light of Defendants' anticipated motions to dismiss, before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b).  The parties prefer a conference in person.

C.     **Early Settlement Conference**

1.     The parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice.  Settlement is unlikely at this time, and both parties agree that additional discovery will be necessary to further any settlement discussions.

2.     The parties do not request an early settlement conference.

3.     When and if mutually desirable, the parties prefer a settlement conference with the presiding judge.

4.     The parties, at this time, do not request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

D.     **Joinder of Parties and Amendment of Pleadings**

1.     Plaintiffs' position is that they should be allowed until the time specified in the spreadsheet attached as Exhibit A to file motions to join additional parties and to amend the pleadings.  Defendants are agreeable to that date if Defendants' scheduling proposal where discovery is limited to CareCentrix and to Health Diagnostic Laboratory where LabCorp participated in the provision of services.

2.     Defendants do not presently intend to join additional parties but reserve their right to do so.  Defendants should have the same deadline as Plaintiffs to file motions to join additional parties.

E.     **Discovery**

a.     Recognizing that the precise contours of the case, including the amounts of damages at issue, if any, may not be clear at this point in the case, in making the proposals below concerning discovery, the parties have considered the scope of discovery permitted under Fed. R.

Civ. P. 26(b)(1). At this time, the parties wish to apprise the Court of the following information regarding the "needs of the case" :

The parties agree that a schedule should be set for the limited discovery (limited to the named plaintiffs) pending the Court's ruling on the forthcoming motions to dismiss, and that the scheduling of deadlines associated with class and merits discovery should be delayed until after such ruling. To the extent the Court wishes to schedule all discovery deadlines at this time, the parties have included their proposals in the attached Exhibit A.

Plaintiffs' position:

Plaintiffs propose that discovery occur in two phases: (1) discovery limited to named plaintiffs pending the Court ruling on Defendants' anticipated motions to dismiss and (2) if the Court denies, in full or in part, such motions, full discovery, including discovery concerning class certification and the merits. Plaintiffs further propose that the parties submit an amended proposed discovery plan within 30 days of any denial of Defendants' motions to dismiss. Plaintiffs disagree with Defendants long discussion on the scope of discovery but submit that the Court need not address the issue at this time but instead should do so in the context of the proposed amended discovery plan after the ruling on the motion to dismiss. To the extent the Court prefers to address the issue now, Plaintiffs will do so immediately.

As explained above, in Section III.A, Defendants' argument that Plaintiffs may not bring claims on behalf of others to the extent they involve other providers or third-party agent administrators misconstrues Plaintiffs' allegations and controlling Second Circuit precedent. See supra section III.A at 3-6. Moreover, given that the parties are in agreement that discovery will be limited to documents and information concerning the named Plaintiffs pending the motion to dismiss, Defendants Article III standing argument is not relevant to setting the discovery plan.

<u>Defendants' position</u>:

The parties cannot reasonably anticipate the scope of discovery or when it will be completed until the Court decides Defendants' forthcoming Rule 12 motions to dismiss. Plaintiffs have defined their putative class in a way that challenges far more than just Cigna's relationship with the two vendors allegedly involved in Plaintiffs' claims.  Instead, the putative class on its face encompasses any claim in which Cigna allowed benefits in excess of what the putative class members believe was the proper amount of their claims.

At least three courts have rejected plaintiffs' attempts to expand similar challenges to the relationships that managed care companies have with vendors beyond the vendors actually involved in the named plaintiffs' claims.  In *Fayeulle v Cigna Corp.*, 2016 WL 9752312 (D. Colo. June 29, 2016), Senior District Judge John L. Kane expressly rejected that the plaintiffs had standing to pursue claims against Cigna on behalf of individuals whose claims related to vendors other than the two vendors involved in their claims.  *Id.* at *1 ("Plaintiffs do not have standing to pursue claims against other unnamed subcontractors with whom they had no interaction.").  In a similar suit filed against Aetna in the Western District of North Carolina, Judge Martin Reidinger ruled the same exact way, barring that plaintiff from pursuing claims or seeking discovery on any Subcontractors other than the one involved in her claim.  *See Peters v. Aetna, Inc.*, 2016 WL 4547151, at *4-5 (W.D.N.C. Aug. 31, 2016).  And after the *Fayeulle* matter was transferred to the Eastern District of Pennsylvania, Judge Nitza I. Quinones Alejandro granted Cigna's motion for a protective order limiting discovery to Cigna's relationship with American Specialty Health, the only vendor whose services are at issue in that suit.  *See* D.E. 63, *Lietz v. Cigna Corp., et al.*, Case No. 2:16-cv-03967-NIQA (E.D. Pa.).  As Cigna explained to Judge Quinones Alejandro, any other decision would have added many years

to the discovery schedule, an uncertainty that Cigna and CareCentrix face in light of Plaintiffs'

overbroad complaint here.  Accordingly, like Plaintiffs, Defendants request that the Court decide

the forthcoming Rule 12 motions before setting any deadlines regarding class or merits

discovery, but if the Court does not limit discovery to Cigna's relationships with CareCentrix

and with Health Diagnostic Laboratory where LabCorp participated in the provision of services,

then Defendants anticipate needing a much longer schedule.  Indeed, in the *Lietz* case, which

involves Cigna's relationship with one vendor, American Specialty Health, the court provided

nearly 18 months for class and merits discovery and an additional seven months for expert

discovery.  *See* D.E. 67, *Lietz v. Cigna Corp., et al.*, Case No. 2:16-cv-03967-NIQA (E.D. Pa.).

        b.      Plaintiffs anticipate that discovery will be needed on the following subjects:

- Whether Defendants are fiduciaries;

- Whether Defendants are parties in interest;

- Whether Defendants breached their fiduciary duties;

- Whether Defendants engaged in transactions prohibited by ERISA;

- Whether Defendants breached ERISA § 702;

- Whether Defendants conducted or participated in the conduct of the affairs of an enterprise through a pattern of racketeering activity;

- Whether Defendants conspired to conduct or participate in the conduct of the affairs of an enterprise through a pattern of racketeering activity;

- Whether such racketeering consisted of acts that are indictable pursuant to 18 U.S.C. §§ 1341 and 1343;

- Whether Defendants engaged in a scheme to defraud;

- Whether each Defendant was a knowing and active participant;

- Whether the mail, interstate carriers or wire transmissions were used in connection with such scheme to defraud;

- Whether Plaintiffs and Class and Sub-Class members were injured in their property or business as a direct and proximate result of Defendants' racketeering activities;

- Whether and to what extent Defendants violated the Plans' terms by authorizing or charging excess cost-sharing payments.

As explained further in subsection (c) below, Defendants propose that discovery will occur in phases and anticipate that discovery through the class discovery phase will be needed on the following subjects:

- The named Plaintiffs' benefit claims, plan terms and benefits, and appeals, if any;

- The claims, plan terms and benefits, and appeals of putative class members related to ERISA claims involving CareCentrix or the provision of laboratory services in Arizona related to LabCorp; and

- The named Plaintiffs' interactions with Cigna, CareCentrix, J&L Medical Services, Health Diagnostic Laboratory, and LabCorp.

c.      Plaintiffs' position is that discovery as limited in subsection (a), above, will be commenced immediately and completed (not propounded) by April 15, 2018.

Defendants agree with Plaintiffs that discovery on the named Plaintiffs can be completed by April 15, 2018, and that the parties cannot reasonably anticipate the scope of discovery or when it will be completed until the Court decides Defendants' forthcoming Rule 12 motions to dismiss.  Accordingly, like Plaintiffs, Defendants request that the Court decide the forthcoming Rule 12 motions before setting any deadlines regarding class or merits discovery. Cigna and CareCentrix believe that this is the most efficient approach given the inherent uncertainty surrounding the scope of this case, but if the Court wishes to schedule all discovery deadlines at this time, Defendants have included two proposals, one in which discovery is limited to just Cigna's relationship with CareCentrix and with Health Diagnostic Laboratory where LabCorp participated in the provision of services, and which Defendants believe can be reasonably

completed by April 15, 2021, and the other in which Plaintiffs are allowed to seek discovery into all of Cigna's relationships with specialty vendors, which Cigna anticipates would take until at least August 15, 2025 to complete.  These proposals are attached as Exhibit A to this report.

Plaintiffs have also proposed a schedule should the Court wish to set dates before deciding Defendants' Rule 12 motions, but that schedule is completely unrealistic even if limited to just Cigna's relationship with CareCentrix and with Health Diagnostic Laboratory where LabCorp participated in the provision of services, let alone the potentially tens of thousands of provider relationships Plaintiffs' putative class definition encompasses.  For example, Plaintiffs request 30 depositions at the outset of the case, but their schedule provides only six months for document production and only three more months after that to complete all depositions.  In contrast, as noted in subsection (a) above, the *Lietz* case involves Cigna's relationship with only one vendor, American Specialty Health, and the court provided nearly 18 months for class and merits discovery.  *See* D.E. 67, *Lietz v. Cigna Corp., et al.*, Case No. 2:16-cv-03967-NIQA (E.D. Pa.).

d.      The parties agree that discovery should be conducted in phases, but disagree about the number of phases. Plaintiffs' position is that discovery should be conducted in two phases with limited discovery pending the Court's ruling on Defendants' motions to dismiss. Plaintiffs believe that any decision on further phasing should be deferred until after that ruling. Defendants' position is that discovery should be conducted in three phases.  First, the parties will conduct discovery on the named Plaintiffs pending Defendants' anticipated Rule 12 motions to dismiss.  Second, following the Court's decision on Defendants' Rule 12 motions, the parties will conduct class discovery that encompasses discovery on putative class members' benefit claims and Cigna's relationships and arrangements with CareCentrix and with Health Diagnostic

Laboratory where LabCorp participated in the provision of services, but will not involve custodian-based discovery.  Third, after the Court decides class certification, the parties will conduct any discovery remaining in the case.

        e.      Plaintiffs currently anticipate that they will require a total of 30 depositions of fact witnesses and that Defendants will require a total of 10 depositions of fact witnesses.  Given that Plaintiffs have limited knowledge about the number of managerial entities potentially involved in the scheme alleged here, they reserve their right to seek leave or a stipulation to take more depositions, pursuant to Rule 30. Plaintiffs' position is that depositions can commence and shall be completed by the dates specified in Exhibit A.  Defendants' position is that Plaintiffs should be allowed to take 20 depositions of fact witnesses without leave of the Court and that Defendants will require a total of 10 depositions of fact witnesses and that depositions should not commence until after the Court decides Defendants' forthcoming Rule 12 motions, but if the parties proceed with discovery, Defendants' position is that depositions should commence according to one of the two schedules appended as Exhibit A to this report, depending on the scope of discovery.

        f.      The parties might request permission to serve more than 25 interrogatories.

        g.      The parties intend to call expert witnesses at trial. The parties propose that the scheduling associated with expert discovery be deferred until after the ruling on the motion to dismiss. To the extent the Court prefer to set these schedules now, the parties' proposals concerning the scheduling of expert discovery are set forth in the attached Exhibit A.

        h.      See part (g), above.

i.      Plaintiffs propose that a damages analysis will be provided by any party who has a claim or counterclaim for damages by the dates specified in Exhibit A.  Defendants propose that a damages analysis will be provided by any party who has a claim or counterclaim for damages by the dates specified in Exhibit A, depending on the scope of discovery.

j.      Undersigned counsel have discussed the disclosure and preservation of electronically stored information, including, but not limited to, the form in which such data shall be produced, search terms to be applied in connection with the retrieval and production of such information, the location and format of electronically stored information, appropriate steps to preserve electronically stored information, and the allocation of costs of assembling and producing such information.  Within forty-five days of this report, the parties will submit an ESI Protocol to the Court for entry identifying the procedures for the preservation, disclosure and management of electronically stored information.

k.      Undersigned counsel have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production.  Within forty-five days of this report, the parties will submit a Protective Order to the Court for entry identifying the procedures governing the production and protection of confidential or privileged information and for asserting claims of privilege after production.

**F.      Dispositive Motions and Motion for Class Certification**

The parties propose that the scheduling associated with class certification and summary judgment motion be deferred until after the ruling on the motion to dismiss. To the extent the Court prefers to set such schedule now, the parties' proposals concerning the scheduling of any motion for class certification or summary judgment are set forth in the attached Exhibit A, which

includes proposed schedules to govern the briefing of dispositive motions and motions for class certification.

> ### G.      Joint Trial Memorandum

The parties propose that the scheduling associated with the joint trial memorandum be deferred until after the ruling on the motion to dismiss. To the extent the Court prefers to set such schedule now, the parties' proposals concerning the scheduling of the filing of the joint trial memorandum are set forth in the attached Exhibit A.

## VI.      TRIAL READINESS

The parties propose that the scheduling associated with a trial in this matter be deferred until after the ruling on the motion to dismiss. To the extent the Court prefers to set such schedule now, the parties' proposals concerning the scheduling of the trial are set forth in the attached Exhibit A.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

Dated: January 19, 2018                            Respectfully submitted,

| | |
|---|---|
| *s/ Joshua B. Simon** | *s/ Robert A. Izard* |
| Joshua B. Simon | Robert A. Izard (ct01601) |
| Warren Haskel | Craig A. Raabe (ct04116) |
| KIRKLAND & ELLIS LP | Christopher M. Barrett (ct30151) |
| New York, NY | IZARD, KINDALL & RAABE, LLP |
| 601 Lexington Avenue | 29 South Main Street, Suite 305 |
| New York, NY 10022 | West Hartford, CT 06107 |
| Telephone: 212-446-4800 | Telephone: 860-493-6292 |
| Facsimile: 212-446-4900 | Facsimile: 860-493-6290 |
| jsimon@kirkland.com | rizard@ikrlaw.com |
| whaskel@kirkland.com | craabe@ikrlaw.com |
| | cbarrett@ikrlaw.com |
| James M. Sconzo (ct04571) | |
| Michael A. Valerio (ct19335) | William H. Narwold (ct00133) |
| CARLTON FIELDS JORDEN BURT, P.A. | Mathew Jasinski, (ct27520) |
| | MOTLEY RICE LLC |

One State St., Suite 1800
Hartford, CT 06103
Telephone: 860-392-5000
Facsimile: 860-392-5058
jsconzo@cfjblaw.com
mvalerio@carltonfields.com

*Attorneys for Cigna Health and Life
Insurance Company*

One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: 860-882-1681
Facsimile: 860-882-1682
bnarwold@motleyrice.com
mjasinski@motleyrice.com

*Attorneys for Plaintiffs*

*s/ James Scott Rollins*\*
_____

James Scott Rollins
NELSON MULLINS RILEY &
SCARBOROUGH, LLP
One Post Office Square – 30th Floor
Boston, MA 02109
617-573-4722
617-573-4751 fax
james.rollins@nelsonmullins.com

Lane W. Davis
William S. Brown
NELSON MULLINS RILEY &
SCARBOROUGH, LLP
Poinsett Plaza
104 South Main Street, Suite 900
Greenville, SC  29601
864-373-2300
864-373-2925 fax

Raymond G. Mullady, Jr.
NELSON MULLINS RILEY &
SCARBOROUGH, LLP
101 Constitution Ave., N.W.
Washington, D.C.  20001
202-689-2800
202-689-2860 fax

*Attorneys for CareCentrix, Inc.*

\*Signed with consent pursuant to §
 XI(D) of the Electronic Filing Policies
 & Procedures.

**Exhibit A**

| | Plaintiffs' proposal | Defendants' Proposals | |
|---|---|---|---|
| | | . . . if discovery limited to CareCentrix and Health Diagnostic Laboratory where LabCorp participated in for provision of services | . . . if discovery is not limited to CareCentrix and Health Diagnostic Laboratory where LabCorp participated in for provision of services |
| Serve initial disclosures | 1/31/18 | 1/31/18 | 1/31/18 |
| Serve initial discovery requests regarding named plaintiffs | 1/31/18 | 1/31/18 | 1/31/18 |
| Complete document production on named plaintiffs | 4/15/18 | 4/15/18 | 4/15/18 |
| Serve initial discovery requests relating to class discovery | within 30 days of ruling on motions to dismiss ("ruling") | 9/15/2018 or within 30 days of ruling, whichever is later | 9/15/2018 or within 30 days of ruling, whichever is later |
| Complete class discovery | within 14 months of ruling | 3/31/2019 or within 7 months of ruling, whichever is later | 3/31/2020 or within 18 months of ruling, whichever is later |
| Plaintiffs serve expert reports in connection with class certification | within 11 months of ruling | 5/15/2019 or within 9 months of ruling, whichever is later | 5/15/2020 or within 20 months of ruling, whichever is later |
| Depose plaintiffs' class experts | within 12 months of ruling | 6/15/2019 or within 10 months of ruling, whichever is later | 6/15/2020 or within 21 months of ruling, whichever is later |
| Defendants serve rebuttal expert reports in connection with class certification | within 13 months of ruling | 7/15/2020 or within 11 months of ruling, whichever is later | 7/15/2020 or within 22 months of ruling, whichever is later |
| Depose rebuttal class experts | within 14 months of ruling | 8/15/2019 or within 12 months of ruling | 8/17/2020 or within 23 months of ruling |
| File motion for class certification | within 15 months of ruling | 9/15/2019 or within 13 months of ruling, whichever is later | 9/17/2020 or within 24 months of ruling, whichever is later |
| File opposition to class certification | within 16 months, 15 days of ruling | 10/30/2019 or within 14 months and 15 days of ruling, whichever is later | 11/2/2020 or within 25 months, 15 days of ruling whichever is later |
| File reply in support of class certification | within 17 months, 15 days of ruling | 11/30/2019 or within 15 months, 15 days of ruling, whichever is later | 12/2/2020 or within 26 months, 15 days of ruling, whichever is later |
| Serve initial discovery requests regarding merits | within 30 days of ruling | 3/1/2020 or within 18 months of ruling, whichever is later | 3/1/2021 or within 30 months of ruling, whichever is later |
| Complete document production | within 6 months of ruling | 9/1/2020 or within 24 months of ruling, whichever is later | 12/1/2024 or within 6 years of ruling, whichever is later |
| Complete merits fact discovery | within 9 months of ruling | 12/31/2020 or within 27 months of ruling, whichever is later | 3/3/2025 or within 6 years, 4 months of ruling, whichever is later |

**Exhibit A**

| | | | |
|---|---|---|---|
| Parties serve merits expert reports on issues on which they bear burden of proof | within 11 months of ruling | 2/1/2021 or within 28 months, 15 days of ruling, whichever is later | 5/15/2025 or within 6 years, 8 months of ruling, whichever is later |
| Parties serve rebuttal expert reports | withing 12 months, 15 days of ruling | 3/15/2021 or within 30 months of ruling, whichever is later | 7/15/2025 or within 6 years, 10 months of ruling, whichever is later |
| Depose merits experts | withing 13 months, 15 days of ruling | 4/15/2021 or within 31 months of ruling, whichever is later | 8/15/2025 or within 6 years, 11 months of ruling, whichever is later |
| File motions for summary judgment | within 15 months, 15 days of ruling | 6/15/2021 or within 33 months of ruling, whichever is later | 11/3/2025 or within 7 years, 2 months of ruling, whichever is later |
| File oppositions to summary judgment motions | within 17 months of ruling | 8/1/2021 or within 34 months, 15 days of ruling, whichever is later | 12/19/2025 or within 7 years, 4 months of ruling, whichever is later |
| File replies in support of summary judgment motions | within 18 months of ruling | 9/1/2021 or within 35 months, 15 days of ruling, whichever is later | 1/19/2026 or within 7 years, 5 months of ruling, whichever is later |
| File joint trial memorandum | 24 months after ruling | 3/20/2022 or within 42 months of ruling, whichever is later | 7/20/2026 or within 8 years of ruling, whichever is later |
| Trial | 25 months after ruling | 4/20/2022 or within 43 months of ruling, whichever is later | 8/20/2026 or within 8 years, 1 month of ruling, whichever is later |