UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JEFFREY NEUFELD and               :
AUBREY SREDNICKI, individually and   :
on behalf of all others similarly situated,   :
      Plaintiffs,                   :
                                  :
v.                             :         3:17-cv-01693-WWE
                                  :
                                  :
CIGNA HEALTH AND LIFE          :
INSURANCE COMPANY,           :
      Defendant.                 :

**MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS**

      Plaintiffs Jeffrey Neufeld and Aubrey Srednicki, who received health benefits through group health plans issued and administered by Cigna Health and Life Insurance Company and its controlled subsidiaries ("Cigna"), bring this action on behalf of themselves and a Class and Subclass of similarly situated persons alleging (a) violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and (b) violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., resulting from Cigna's common fraudulent and deceptive scheme to artificially inflate medical costs causing consumers to pay more than they should have paid for medically necessary products and services.

      Cigna has moved to dismiss plaintiffs' complaint.  For the following reasons, Cigna's motion will be granted in part and denied in part.

## BACKGROUND

      For purposes of deciding defendants' motion to dismiss, the following allegations from plaintiffs' amended complaint are accepted as true.

Defendant Cigna has engaged in a scheme to defraud patients by overcharging for the cost of medically necessary services and products.  Patients, including plaintiffs and the Class and Subclass, paid undisclosed excess charges in exchange for receiving these products and services. Unbeknownst to the Class and Subclass members, Cigna misrepresented the purported costs of these products and services in the form of invoices for increased charges to patients.  Am. Compl. ¶ 7 [ECF No. 29].

Plaintiff Neufeld's plan provides that he is required to pay a "portion of Covered Expenses for services and supplies" that is a "Copayment, Coinsurance or Deductible." "Covered Expenses" are "expenses" for "charges" for these services or supplies. "Charges" are the amount "the provider has contracted directly or indirectly with Cigna . . ."  Since a "portion" is a "share," the patient, at most, should pay only a share of the amount the provider contracts to be paid for products or services.  Id. at ¶ 8.

Contrary to the express language of the plans, Cigna and its agents exercised their unilateral discretion to charge patients unauthorized and excessive amounts for products and services that exceeded the charges by providers.  Id. at ¶ 9.

For example, on June 22, 2017, plaintiff Neufeld purchased a disposable CPAP filter from J&L Medical Services ("J&L"), an authorized CareCentrix provider, pursuant to his plan. CareCentrix sent plaintiff Neufeld an invoice for the filter listing total charges of $25.68 that plaintiff was required to pay towards his deductible.  J&L, the provider, had contracted directly with CareCentrix and indirectly with Cigna to provide the filter for only $7.50, and was in fact paid only $7.50 for the filter.  Id. at ¶ 10.

Hidden from plaintiff Neufeld, Cigna and its agents unilaterally charged plaintiff an unlawful $18.18 spread over J&L's contracted charge for the product.  Id. at ¶ 11.

Had Cigna lived up to its obligations and its plan terms, plaintiff Neufeld would not have been billed more than the $7.50 charge that J&L agreed to be paid by Cigna. Instead, Cigna imposed a hidden premium of almost 350% beyond the total amount plaintiff should have paid. Id. at ¶ 12.

Plaintiff Srednicki's plan similarly provides that she is required to pay a portion of Covered Expenses that is "Coinsurance or a Deductible." "Covered Expenses" are "Expenses" that are the "charge for a covered service or supply." Her Explanation of Benefits ("EOB") further provides that the "Amount Billed" is "[t]he amount charged" by the healthcare provider, and that the "Discount" is "[t]he amount you save" by using a Cigna network provider because "Cigna negotiates lower rates" with "in-network" providers "to help you save money." Id. at ¶ 13.

As one example of Cigna's fraudulent scheme as it relates to plaintiff Srednicki, on June 19, 2017, she obtained a blood test from Laboratory Corporation of America Holdings (doing business as "LabCorp"), an in-network provider. The cash price for this test to an uninsured customer of LabCorp was only $449.00. Nevertheless, Cigna listed on the EOB that the provider was "HLTH DIAG LAB"—not the actual provider, LabCorp—and that the "Amount Billed" was an astounding $17,362.66, almost 40 times greater than the uninsured cash price. Cigna claimed on the EOB that it had provided a "Discount" of $14,572.66, over 32 times greater than the cash price, and that the "Covered Amount" for the test with a cash price of $449.00 was $2,787.00, more than 6 times greater than the cash price. Cigna further stated on the EOB that of the "Covered Amount" of $2,787.00, the plan paid $471.02 (roughly the cash price) and plaintiff Srednicki was required to pay an additional $2,315.98 in deductible and coinsurance payments. Id. at ¶ 14.

Upon information and belief "HLTH DIAG LAB" is a doing-business-as pseudonym for Cigna-affiliate Cigna Healthcare of Arizona, Inc.  Cigna, through yet another business name, "Cigna Medical Group," wrongfully and fraudulently "balance-billed" plaintiff Srednicki $2,315.98. According to a statement at the bottom of its bill, Cigna Medical Group "is the medical group practice division of Cigna HealthCare of Arizona, Inc."  When contacted by plaintiff Srednicki's doctor, the actual lab provider, LabCorp, confirmed orally (but would not do so in writing) that it had been paid in full by Cigna with a payment of $471.02.  LabCorp also described the charges on Cigna's fraudulent EOB as "unreasonably high," including the "Amount billed" of $17,362.66 and the supposed "Covered amount" of $2,787.00.  Cigna did not disclose to plaintiff Srednicki in its billing materials the fact that Lab Corp. had been paid in full, or that, in fact, there was no "balance" to bill plaintiff Srednicki. On information and belief, LabCorp's confirmation to plaintiff Srednicki's doctor of these facts was in violation of a "gag clause," which explains its unwillingness to confirm certain facts in writing.  In short, Cigna knew that the actual cost of plaintiff Srednicki's blood test was no more than the $471.02 paid by the plan, but it employed numerous fraudulent misrepresentations to conceal that fact from plaintiff Srednicki, including a misrepresentation that the $471.02 test had a value of $17,362.66.  Id. at ¶ 15.

Through this fraudulent billing scheme, defendants overcharged their customers for medical products and services in violation of the plans and defendant's fiduciary duties. Under Cigna's scheme as illustrated by these actual examples, its charges were excessive and unlawful.  Id. at ¶ 16.

Cigna violated the plans and breached its fiduciary duties by secretly determining that plaintiffs must pay inflated deductible and cost-sharing payments, and secretly collecting those inflated payments from plaintiffs.  Id. at ¶ 17.

Cigna utilizes the U.S. Mail and interstate wire facilities to engage in its fraudulent billing scheme in violation of RICO.  Defendants represented to plan participants that their payment amounts were based on some portion of the actual cost for the product or service when, in fact, defendants submit false and intentionally misleading invoices and EOBs to patients to cause them to pay more than the actual cost and defendants simply pocket the overpayment in the form of spread.  Id. at ¶ 18.

In furtherance of defendants' fraudulent scheme, defendants' Provider Manual dictates that participating providers like J&L effectively cannot disclose the existence of the excessive charges as further alleged below.  As a result of these "gag clauses," the spread remains hidden from participants and beneficiaries.  Id. at ¶ 19.

Defendant's fraudulent scheme to artificially inflate the costs of medically necessary products or services, and then to surreptitiously retain those excess amounts, jeopardizes the entire health care delivery system.  For one, patients are paying higher amounts than they otherwise would have paid had defendants not artificially inflated the payment amounts. Therefore, patients believe that they are saving money through the use of their health benefits, when, in reality, they are charged excessive amounts beyond what their health plans require them to pay.  Id. at ¶ 20.

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action: "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."  Id. at ¶ 159.

With regard to ERISA, under Count I, ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides that a participant or beneficiary may bring an action to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of

the plan.  Defendants have violated the ERISA Plans by establishing and charging spread and should not be allowed to continue to do so.  Id. at ¶ 23.

Under Count II, ERISA § 406(a), 29 U.S.C. § 1106(a), provides that a party in interest shall not receive direct or indirect compensation unless it is reasonable, and prohibits transfers of plan assets and use of plan assets by or for the benefit of fiduciaries and plan service providers.  In setting the amount of and taking excessive undisclosed spread compensation, Cigna allowed and received unreasonable compensation and misused the assets of the ERISA Plans, including participant contributions and the plan contracts that provided defendants with the ability to extract these funds.  Id. at ¶ 24.  ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action: "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."  Id. at ¶ 159.

Under Count III, ERISA § 406(b), 29 U.S.C. § 1106(b), provides that a fiduciary shall not deal with plan assets in its own interest or for its own account, act in any transaction involving the plan on behalf of a party whose interests are adverse to participants or beneficiaries, or receive any consideration for its own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.  In setting the amount of and taking spread compensation, Cigna set its own compensation, received plan assets and consideration for its personal accounts in violation of this provision, and acted under other conflicts of interest.  Id. at ¶ 25.

Under Count IV, ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides that a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and

beneficiaries and defraying reasonable expenses of administering the plan, and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  In setting the amount of and taking excessive undisclosed spread compensation, defendants have breached their fiduciary duties of loyalty and prudence.  Id. at ¶ 26.

Under Count V, ERISA § 702, 29 U.S.C. § 1182, prohibits defendants from discrimination and requiring discriminatory premiums and contributions based on health factors.  Defendants have required insureds who have medical conditions that require products and services that are subject to defendants' spreads to pay greater premiums and contributions than those patients who do not need products and services that are subject to defendant's spreads for their health benefits.  Id. at ¶ 27.

Under Count VI, ERISA § 405(a), 29 U.S.C. § 1105(a), imposes liability on a fiduciary, in addition to any liability which it may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if it knows of a breach and fails to remedy it, knowingly participates in a breach, or enables a breach.  Cigna breached all three provisions.  Id. at ¶ 28.

Under Count VII, Cigna had actual or constructive knowledge of and participated in and profited from the prohibited transactions and fiduciary breaches alleged in Counts II-V by those who are found to be fiduciaries, and is liable to disgorge illgotten gains and plan assets and to provide other appropriate equitable relief, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  Id. at ¶ 29.

With regard to RICO, under Counts VIII through X, Cigna engaged in a scheme to defraud in violation of RICO, 18 U.S.C. § 1962(c), by overcharging patients for the cost of

medically necessary products and services alleged below and is liable for all statutory remedies.
Id. at ¶ 30.

Count XI alleged RICO violations against former defendant CareCentrix.  However,
the claims against CareCentrix have been withdrawn.  Cigna is the only defendant remaining
in the case.

Under Count XII, defendant has engaged in a scheme to defraud in violation of
RICO, 18 U.S.C. § 1962(d), by overcharging patients for the cost of medically necessary
products and services as alleged below and is liable for all statutory remedies.  Id. at ¶ 32.

Consumers purchase health insurance and enroll in employer-sponsored health plans
to protect them from unexpected high medical costs.  Patients, including plaintiffs and other
Class and Subclass members, at a minimum, expect to pay the same prices or better than
uninsured or cash-paying individuals for health care services durable medical equipment and
supplies.  Otherwise, they not only would receive no benefit from their plans, but also would,
in fact, be punished for having a health plan.  Therefore, Class and Subclass members
reasonably expect to pay less than cash-paying customers who do not have health coverage.
Id. at ¶ 43.

Contractual relationships exist between the employer or individual and the health
insurance company that underwrites and/or administers the plan; the insurer/administrator
and the manager; and the insurer/administrator/manager and the provider.  An employer or
individual buys healthcare coverage from a health insurance company to provide a variety of
healthcare benefits, including healthcare services, home healthcare and durable medical
equipment.  Health insurance companies manage the healthcare and medical equipment
services offered pursuant to their plans, or they retain managers like CareCentrix to perform
these functions.  Id. at ¶ 46.

The terms of the plans—and more importantly, how these plans are administered by Cigna, its controlled subsidiaries, affiliates, and providers—do not differ materially across plans. Accordingly, upon information and belief, the rights relevant to the claims alleged herein are shared by all members of the Class and Subclass regardless of the funding arrangement underpinning the health plan benefits that defendants offer and administer.  Id. at ¶ 69.

Plaintiffs and the members of the Class and Subclass are participants in employee welfare benefit plans as that term is defined in 29 U.S.C. § 1002(1)(A), insured or administered by defendants to provide participants with medical care.  Id. at ¶ 77.

ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).  Id. at ¶ 78.

Moreover, the plans expressly granted Cigna broad discretionary authority under the plans, including the authority to determine benefit payments.  Id. at ¶ 82.

The spread is additional "premium" within the meaning of ERISA § 702, for the provision of coverage that was collected by defendants that was neither disclosed to nor agreed to by the participants and beneficiaries that were required to make these additional contributions to receive their healthcare services or durable medical equipment.  Cigna had and exercised discretion to determine the amount of and require the payment of this additional undisclosed premium payment, as well as whether to disclose it—or require its concealment.  ERISA § 3(21)(A)(i), (iii), 29 U.S.C. § 1002(21)(A)(i), (iii).  Id. at ¶ 84.

Cigna is also a fiduciary because it exercised discretion to set the prices that the Class and Subclass were and are required to pay for their healthcare products and services.  Cigna is required to act in the best interests of the Class and Subclass, but by allowing participants and

beneficiaries of ERISA plans to be subject to the fraudulent billing scheme described herein, Cigna has breached its fiduciary duties.  <u>Id.</u> at ¶ 87.

Cigna is aware of the effect the fraudulent billing scheme is having on the Class and Subclass.  Nevertheless, it has maximized and continues to maximize its revenues at the expense of the Class and Subclass by engaging in the illegal conduct described herein.  <u>Id.</u> at ¶ 88.

Plaintiff Srednicki fully exhausted her administrative remedies and was summarily rejected by Cigna.  On September 25, 2017, plaintiff Srednicki appealed the decision of Cigna as set forth in her EOB.  In connection with that appeal, she set forth in detail all of the material facts concerning her claim as set forth above and she attached supporting documentation.  <u>Id.</u> at ¶ 124.

On October 30, 2017, Cigna summarily denied the appeal with a form letter that did not even address the merits of her claim as set forth above.  Cigna further stated as follows:

> **This decision represents the final step of the internal appeal process. However, if your plan is governed by ERISA, you also have the right to bring legal action under Section 502(a) of ERISA within three (3) years.**

To the extent that Cigna's internal appeals process even applies, this action is the "legal action" that Cigna recognized in its internal appeal process.  <u>Id.</u> at ¶ 125.

It is not clear that Cigna's administrative claims procedures would or could contemplate the return of an overpayment because there has been no denial of benefits, or adverse benefit determination.  But even if it could apply, making administrative claims should not be required of plaintiffs and the Class and Subclass.  Even utilizing defendants' claims procedures, if they were available or valid under these circumstances, which they were not, would not make plaintiffs or the Class or Subclass whole.  First, as is evident from the perfunctory, non-responsive denial of plaintiff Srednicki's administrative claim, it is clear that

this procedure would not result in a refund, and is therefore futile and unnecessary.  Second, even if defendants' claims procedures could provide a spread reimbursement, plaintiffs and the Class and Subclass are entitled to more, including disgorgement of profits, treble and punitive damages, and injunctive relief.  In this regard as well, utilizing a claims procedure would be futile and unnecessary.  Id. at ¶ 131.

Correcting the prices paid by patients on an individualized basis would inevitably result in further unfair, disparate, and discriminatory treatment among those Class and Subclass members who have been reimbursed for the overcharges and those who have not.  A far more equitable and cost-effective way to adjudicate overpayments made by the Class and Subclass is for defendants to disgorge in full these amounts pursuant to their own records that can track such payments for everyone in the Class and Subclass.  Id. at ¶ 133.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).  When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader.  Hishon v. King, 467 U.S. 69, 73 (1984).  The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).   A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## I.  Breach of the Plans

### A. The Neufeld Plan

Cigna argues that plaintiffs have failed to specify any term within their plans that was breached.  Therefore, Cigna contends that plaintiffs are not entitled to a lower or "discounted" rate.  Plaintiffs respond that Cigna violated the express terms of both plans.

Neufeld's plan provides in relevant part as follows:

**For You and Your Dependents**
Open Access Plus Medical Benefits provide coverage for care In-Network and Out-of-Network. To receive Open Access Plus Medical Benefits, you and your Dependents may be required to pay a portion of the Covered Expenses for services and supplies. That portion is the Copayment, Deductible or Coinsurance.

p. 15 [ECF No. 55, Ex. 2]

**Covered Expenses**
The term Covered Expenses means the expenses incurred by or on behalf of a person for the charges listed below if they are incurred after he becomes insured for these benefits. Expenses incurred for such charges are considered Covered Expenses to the extent that the services or supplies provided are recommended by a Physician, and are Medically Necessary for the care and treatment of an Injury or a Sickness, as determined by Cigna. **Any applicable Copayments, Deductibles or limits are shown in The Schedule.**

p. 29

**Charges**
The term "charges" means the actual billed charges; except when the provider has contracted directly or indirectly with Cigna for a different amount.

p. 68

According to his plan, Neufeld may be required to pay a portion of the Covered Expenses incurred for medical services and supplies.  Those expenses are based on "charges," which means the actual billed charges, except when the provider has contracted directly or indirectly with Cigna for a different amount.

Presumably, when the provider has contracted for a different amount, the "charges" must correspond to such amount.  Likewise, the portion that Neufeld may be required to pay

must be based on this amount.  Nevertheless, Cigna argues without support that the charges may be based instead upon a third number, not described by the definition of charges.  Cigna contends that the plan allows it to base Neufeld's charges on an amount it has agreed to pay an intermediary.  But the amended complaint alleges that such intermediaries provide no medical services or supplies and exist primarily to inflate the charges billed by the actual providers.  Plaintiffs further allege that Cigna deceives them and others similarly situated by hiding from them the actual charges for which the provider has contracted.  In their stead, Cigna allegedly presents inflated bills that are explicitly labeled as representing significant savings, when in truth those savings are based on further inflated bills upon which the actual cost of the services or supplies has little bearing.  The upshot is that plaintiffs, instead of paying the portion of their charges as agreed, pay amounts significantly greater than their legitimate medical expenses and at times greater than their charges would be had they no medical insurance in the first place.

Cigna argues that even if all of this is true, no terms of the plans have been breached, but the court must draw all reasonable inferences in favor of plaintiffs.  Plaintiffs have plausibly alleged that Cigna's actions are in violation of Neufeld's plan language in that Cigna has failed to base its charges on either (1) the provider's actual billed charges, or (2) the different amount for which the provider has contracted.  Under the plain terms of his plan, Neufeld may be entitled to charges based on these rates, not the inflated rates Cigna has agreed to pay a shell intermediary.

**B. The Srednicki Plan**

Srednicki's plan provides in relevant part as follows:

**Covered Expenses**
The term Covered Expenses means Medically Necessary Expenses Incurred by or on behalf of a Covered Person after he or she becomes covered for these benefits. Expenses are considered Covered Expenses to the extent that the services or supplies provided are recommended by a Physician **and are essential for** the necessary care and treatment of an Injury or Illness. Covered Expenses will include only those charges listed in Section 5.F., and, with respect to Out-of-Network Benefits, only those Expenses Incurred that do not exceed the Maximum Reimbursable Charge. Covered Expenses are subject to the exclusions listed in Section 6.

p. 78 [ECF No. 55, Ex. 3]

**Expense**
Expense The term Expense means the charge for a covered service or supply.

p. 81

**Coinsurance**
Coinsurance means the percentage (shown in the Benefits-at-a-Glance table) of Covered Expenses that a Covered Person is required to pay for certain covered services. See Section 5.B. for more information on Coinsurance.

p. 81

According to her plan, Srednicki is required to pay for a percentage of her Covered Expenses.  Expenses are defined as the charges for a covered service or supply.  Similar to Neufeld, Srednicki alleges that Cigna billed her for expenses that were not based on charges for medical services or supplies.  Rather, she received inflated bills that were deceptively labeled as representing significant savings on the providers' charges.

Srednicki alleges that she received no medical services or supplies to justify the inflated bills.  For example, Srednicki alleges that the explanation of benefits provided by Cigna listed HLTH DIAG LAB as the provider of a blood test when the actual provider was LabCorp. Although LabCorp's cash price for the test is $449, Cigna listed the amount billed by HLTH

14

DIAG LAB at $17,363.  Srednicki further alleges that HLTH DIAG LAB is a doing-business-as pseudonym for Cigna-affilliate, Cigna Healthcare of Arizona, Inc.

Plaintiffs have plausibly alleged that Cigna's actions are in violation of Srednicki's plan language, namely that Cigna violated the plan by secretly determining that Srednicki must pay inflated cost sharing payments unrelated to the charge for a covered service or supply.  Similar to Neufeld, under the plain terms of her plan, Srednicki may be entitled to charges based on her providers' actual charges for covered services or supplies.

## II. Standing

Cigna argues that, having alleged injury only from Cigna's relationship with CareCentrix (Neufeld) and Health Diagnostic Laboratory (Srednicki), plaintiffs have no stake in pursuing claims relating to any other healthcare "managers" or "vendors."  Cigna contends that the nature of the services each plaintiff received and the roles that Cigna, the vendor, and the provider each played are completely different.

Plaintiffs maintain that regardless of the nature and circumstances of underlying relationships with various participants in Cigna's health networks, Cigna's conduct implicates the same set of concerns: Cigna's disguised and inflated billing practices in contravention of plaintiffs' plans, whose terms require plaintiffs' responsibility to be based on the providers' charges for the medical services or supplies.  Plaintiffs have plausibly alleged that their portion of medical expenses should correspond with the providers' charges for a covered service or supply but that Cigna has fraudulently avoided such requirement, in breach of the plans.

Plaintiffs have alleged personal injury traceable to defendant's conduct that is likely to be redressed by the requested relief.  See Lujan v. Defenders of Wildlife, 504. U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general

allegations embrace those specific facts that are necessary to support the claim.").  The court

must also consider whether the named plaintiffs have "class standing" to bring claims related

to Cigna plans on behalf of absent class members.  See Retirement Bd. Of the Policemen's

Annuity and Ben. Fund of the City of Chicago v. Bank of New York Mellon, 775 F.3d 154,

160 (2d Cir. 2014).

> [I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1)
> that he personally has suffered some actual injury as a result of the putatively
> illegal conduct of the defendant, and (2) that such conduct implicates the same
> set of concerns as the conduct alleged to have caused injury to other members
> of the putative class by the same defendants.

NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145, 162 (2d Cir.

2012).

Plaintiffs argue that they satisfy the second prong of the class standing analysis by

alleging that Cigna's violation of its plans implicates the same set of concerns as Cigna's

conduct that harmed every class member with materially identical plan language.  Specifically,

plaintiffs allege the following:

> (1) Cigna developed and directed the fraudulent billing scheme through its Plans;
> (2) Cigna charged or required the managers to charge patients excessive and
> unlawful copayment, coinsurance or deductible payments, and dictated that
> these patient payments not be discounted or excused/waived; and (3) . . . Cigna
> through contracts with providers blocked and/or threatened providers from
> disclosing the true cost of healthcare services and goods and from disclosing the
> existence of Spread.

The only claims plaintiffs allege are against Cigna, and the only relationship that they

challenge is the relationship between plaintiffs and Cigna.[1]  Plaintiffs assert that Cigna's

election to use intermediaries such as CareCentrix or HLTH DIAG LAB is irrelevant as to

Cigna's liability.  Regardless of which other relationships Cigna employs, it requires plan

---

[1] On February 28, 2018, plaintiffs voluntarily dismissed their claims against the only other defendant in the case,
CareCentrix, Inc.  [ECF No. 63].

members to pay fees in excess of the amounts that are charged by in-network providers in violation of the terms of the plans.  Plaintiffs argue that this conduct implicates the same set of concerns as the conduct that caused injury to them.  See Langan v. Johnson & Johnson Consumer Companies, Inc., 879 F.3d 88, 94 (2d Cir. 2018) (holding that non-identical injuries of the same general character can support standing, even where claims are governed by various state laws).

The court finds instructive the Second Circuit's ruling in In re U.S. Foodservice Inc. Pricing Litigation, 729 F.3d 108 (2d Cir. 2013).  Although it was farther down the road, addressing class certification, the decision focuses on the requisite similarity of concern among class members in a comparable lawsuit:

> We agree with the district court that the question of breach with regard to plaintiffs' contract claims will focus predominantly on common evidence to determine whether, in fact, USF used controlled middlemen to inflate invoice prices and whether such a practice departs from prevailing commercial standards of fair dealing so as to constitute a breach.  In this regard, we find the Eleventh Circuit's decision in *Allapattah Services, Inc. v. Exxon Corp.,* 333 F.3d 1248, instructive. There, plaintiffs alleged that Exxon breached its contracts with its dealers by overcharging them on fuel purchases.  Though the contracts were not identical, the Eleventh Circuit affirmed the class certification because the dealer agreements were materially uniform insofar as they imposed the same duty of good faith on Exxon. Thus, the question of whether Exxon had violated its duty was common to all class members. The same holds true here.
>
> Like the district court, we anticipate that adjudication of the breach of contract claims will largely parallel adjudication of the RICO claims. The common issues will include USF's creation and control of the VASPs, the actual services, if any, the VASPs provided, USF's efforts to hide the true nature of the VASPs from its customers (which in the breach of contract setting is circumstantial proof that customers did not know of and never acquiesced in USF's course of performance), and trade usage concerning controlled middlemen like the VASPs. Since the record does not indicate the existence of material differences in contract language or other significant individualized evidence, we conclude that the district court did not abuse its discretion in concluding that common issues will predominate over any individual issues, and that USF's claim to the contrary should be rejected.

17

U.S. Foodservice at 125-26 (internal citation omitted).

> Here, the district court did not abuse its discretion in determining that USF's alleged misrepresentation was uniform and susceptible to generalized proof. Specifically, plaintiffs allege that the VASP-related invoices mailed from USF to its cost-plus customers included the same fraudulent misrepresentation: namely, that the cost component of USF's billing was based on the invoice cost from a legitimate supplier and not from a shell VASP controlled by USF and established for the purpose of inflating the cost component. While each invoice obviously concerned different bills of goods with different mark-ups, the material misrepresentation—concealment of the fact of a mark-up inserted by the VASP—was the same in each.

Id. at 118. The instant case involves equivalent allegations of material misrepresentation and concealment, which the court finds may be susceptible to similar generalized proof. Plaintiffs allege that Cigna's contracts are materially uniform insofar as they misrepresent the services of middlemen to inflate invoice prices. Plaintiffs' allegations plausibly implicate the same set of concerns as the conduct alleged to have caused injury to other members of the putative class. Accordingly, plaintiffs' complaint will not be dismissed for lack of standing.

### III. Exhaustion

Cigna argues that Neufeld failed to exhaust her administrative remedies before filing her claim pursuant to ERISA § 502(a)(1)(B).

Utilization of an administrative appeals process to satisfy the court-imposed exhaustion requirement is necessary only where that process is capable of remedying the alleged harm. Plaintiffs are not required to exhaust administrative remedies where such pursuit would be futile, and plaintiffs may assert equitable defenses of waiver, estoppel, and equitable tolling. Kirkendall v. Halliburton, Inc., 707 F.3d 173, 179 (2d Cir. 2013). Moreover, "[p]lan participants will not be required to exhaust administrative remedies where they reasonably interpret the plan terms not to require exhaustion and do not exhaust their administrative remedies as a result." Id.

In Kirkendall, the Second Circuit determined that it was unclear whether the plaintiff's claim was a "benefit claim" within the meaning of her plan such that it would be governed by Article III Claims Procedures and require administrative exhaustion.

> We have doubts as to whether Kirkendall's inquiry was truly a "benefit claim" within the meaning of the Plan terms. Regardless, we imagine that if the plan terms are a bit baffling to us, they are equally baffling to plan participants such as Kirkendall. Two of our sister circuits have held that, where a plaintiff reasonably interprets the plan terms not to require exhaustion and, as a result, does not exhaust her administrative remedies, the case may proceed in federal court. *Watts v. BellSouth Telecomms., Inc.,* 316 F.3d 1203, 1209–10 (11th Cir.2003) ("If a plan claimant reasonably interprets the relevant statements in the summary plan description as permitting her to file a lawsuit without exhausting her administrative remedies, and as a result she fails to exhaust those remedies, she is not barred by the court-made exhaustion requirement from pursuing her claim in court."); *Gallegos v. Mount Sinai Med. Ctr.,* 210 F.3d 803, 810 (7th Cir.2000) (same, on estoppel grounds).

Kirkendall, 707 F.3d at 180.

The Second Circuit held: "It is unclear, therefore, whether Kirkendall's inquiry as to the amount of her benefits . . . was a 'benefit claim' within the meaning of the Plan such that it would be governed by the Article III Claims Procedures."

In the instant case, Cigna argues that Neufeld should have taken advantage of his plan's appeals procedure. Specifically, the Neufeld plan provides: "If you are not satisfied with the results of a coverage decision, you can start the appeals procedure." Plan p. 65 [ECF No. 55, p. 131]. Plaintiffs respond that Neufeld was not denied coverage in the traditional sense. Neufeld received his supplies, and the provider was paid in full. Plaintiffs contend that Neufeld was not denied any benefits; instead, he seeks to recover the secret, unlawful overcharges that were not directed toward paying for the medical supplies he received.

Cigna has not demonstrated that its appeals processes are capable of remedying what are ultimately legal disputes over contract interpretation. See Cramer v. Hartford Hosp., 1996 WL 732552, at *5 (D. Conn. Dec. 6, 1996) ("Because there does not appear to be an

administrative remedy or internal dispute resolution procedure that governs claims for

coverage which the plaintiffs should have pursued before instituting this suit, this action

should not be dismissed on exhaustion grounds.").  Indeed, Srednicki, who did appeal Cigna's

determination that her cost-sharing responsibility was based on gross inflation of her true

medical costs, was met with a boilerplate denial from Cigna that did not address the detailed

allegations of her appeal.  Cigna's failure to even address the merits of Srednicki's appeal

demonstrates the futility of engaging a "coverage decision" based appeals process to resolve

disputes about fixed company-wide policy.  The court addressed this issue in Peck v. Aetna

Life Ins. Co., 2005 WL 1683491, at *3 (D. Conn. Jul. 19, 2005):

> However, Peck has alleged that Aetna has a "fixed company-wide policy," and
> that this policy is "a policy of failing to pay for benefits that accumulate during
> the Waiting Period."  Therefore, Peck alleges, it would be futile for Peck to
> pursue administrative remedies with Aetna.  This is all that is required under the
> notice pleading standard employed by the federal courts.

Id.

Finally, failure to exhaust ERISA administrative remedies under section 502(a)(1)(B) is

an affirmative defense.  Paese v. Hartford Life and Acc. Ins. Co., 449 F.3d 435, 446 (2d Cir.

2006).  Cigna has not demonstrated that is has established a reasonable claims and appeals

procedure in compliance with DOL regulations relevant to Neufeld's overcharge claims.  See

Negron v. Cigna Health and Life Insurance, 300 F. Supp. 3d 341, 354 (D. Conn. 2018).

Moreover, consideration of defendant's exhaustion defense is more appropriate on summary

judgment.  At this time, plaintiffs' complaint will not be dismissed for failure to exhaust

administrative remedies.

**IV. ERISA Fiduciary Claims**

Cigna argues that plaintiffs' fiduciary duty claims should be dismissed because Cigna

paid plaintiffs' claims in accordance with their plans' terms.  But as discussed above with

respect to breach of the plans, plaintiffs have plausibly alleged that Cigna failed to act in accordance with the plans' terms.

Cigna next argues that "the calculation of benefits" is the type of "ministerial task" that does not constitute a fiduciary act because it requires no exercise of discretion. Further, Cigna contends its decisions on how to structure its contractual relationships and provider network are not fiduciary acts. Cigna submits that while a claims administrator can act as a fiduciary "when administering a plan," it does not "when designing or making business decisions allowed for by a plan" even if its "determinations may impact" plan members. See Coulter v. Morgan Stanley & Co. Inc., 753, F.3d 361, 367 (2d Cir. 2014). Nevertheless, here plaintiffs allege that Cigna made decisions *not allowed for* by the plans when it secretly forced plaintiffs to pay inflated deductible and cost-sharing payments by disguising Cigna's bills as representing providers' charges for medical services and supplies. Moreover, effecting such a scheme is not equivalent to the miscalculation of benefits in that it requires the exercise of noteworthy discretion. The court is not persuaded by Cigna's attempts to characterize its alleged conduct as the mere calculation of benefits. Nor is the court persuaded by Cigna's argument that these are business decisions about how to structure its contractual relationships. Plaintiffs have plausibly alleged that Cigna's actions violated terms of the plans.

Cigna next argues that plaintiffs' fiduciary claims should be dismissed because they are duplicative of plaintiffs' breach claims pursuant to § 502(a)(1)(B). More specifically, Cigna contends that plaintiffs have merely "repackaged" their 502(a)(1)(B) claims as 502(a)(2) and (3) claims.

ERISA § 502, codified as 29 U.S.C. § 1132, provides in relevant part:

**(a) Persons empowered to bring a civil action**
A civil action may be brought—

**(1)** by a participant or beneficiary—

> **(A)** for the relief provided for in subsection (c) of this section, or
> **(B)** to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

**(2)** by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

**(3)** by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

Although courts prohibit plaintiffs from bringing claims pursuant to sections 502(a)(2) and (3) when adequate relief is available through section 502(a)(1)(B), here plaintiffs adequately allege that further equitable relief is warranted. See Varity Corp. v. Howe, 516 U.S. 489, 515 (1996).

In Montesano v. Xerox Corp. Retirement Income Guarantee Plan, 117 F. Supp. 2d 147, 166 (D. Conn. 2000), this Court held that "plaintiffs can not simultaneously maintain a claim for benefits under § 502(a)(1)(B) and a claim for breach of fiduciary duty under § 502(a)(3) where . . . the relief sought is substantively the same in both counts." But the plaintiffs in Montesano were merely challenging the plan administrator's decision that workers were not "employees" within the meaning of the plan.

> The Plan Administrator found that the plaintiffs failed to meet the Plans' eligibility requirements because, *inter alia,* they were not on the Xerox payroll, they did not receive compensation from Xerox, and were "leased employees," a category that was excluded from coverage under the Plans.

Id. at 152.  Montesano was a simple dispute about whether the plaintiffs there were eligible to

participate in Xerox's benefit plans.  Thus, characterizing the plan administrator's actions in

the alternative as a breach of fiduciary duty pursuant to 502(a)(3) achieved nothing; the

workers' eligibility to participate in the plans would be entirely resolved by their claim

pursuant to 502(a)(1)(B).

      Here, in addition to recovering benefits and enforcing rights as individual participants

in the plans, plaintiffs seek to enjoin Cigna's billing practices, redress alleged ERISA

violations, and enforce provisions of the subchapter and the terms of their plans.  This is not a

simple action to recover benefits, so plaintiffs' equitable claims are not superfluous.

      Cigna argues that plaintiffs have failed to plead any conduct that would give rise to a

prohibited transaction claim under ERISA § 406.  Relying on In re UnitedHealth Group PBM

Litigation, 2017 WL 6512222, (D. Minn. Dec. 19, 2017), Cigna contends that plaintiffs' spread

theory is insufficient to establish that Cigna engaged in a prohibited transaction.  But

UnitedHealth does not support such a generalized conclusion about spread billing practices.

Rather, UnitedHealth determined that *some* of the plaintiffs' plans did not entitle them to pay

the "discounted rate" if it was less than the copayment amount.  Id. at *3.  Because the

language of those plaintiffs' plans permitted UnitedHealth Group to retain profits when the

copayment amount was greater than the pharmacies' charges, the defendant's conduct was not

prohibited by those plans.  In contrast, some of the UnitedHealth plaintiffs participated in

plans that *did* entitle them to the "discounted rate:"  Id. at *5 ("In summary, Ellington's and

Sohmer's (2016 only) plans entitled them to pay the discounted rate if the rate was less than

stated copayment amounts.  The Court assumes that Holm's and Mohr's plans entitled plan

members to the discounted rate.")  So too in the instant case, plaintiffs' plausibly allege that

their plans prohibited Cigna's conduct regarding retaining profits from the spread.

Finally, Cigna argues that (1) Neufeld's plan was an insured benefit plan, not employer-funded, so his claims involved Cigna's money, not the plan's, (2) the spread amounts are not plan assets but profits belonging to the medical provider, and (3) negotiating discounted rates in order to create the spread does not constitute exercise or control over plan assets. Plaintiffs contest all of these characterizations, and summary judgment is more appropriate for resolution of these disputes.

Cigna argues that it has not violated its duty of prudence and loyalty under ERISA §404(a)(1) because there is "nothing wrong as a matter of law" with Cigna calculating cost-share responsibility based on network rates that may include a spread. Moreover, Cigna asserts that it had no duty to disclose the spread to plan members. Nevertheless, the fact that instituting a spread to increase profits is not per se prohibited by law does not necessitate that Cigna's alleged violations of the plans at issue were permissible and thus did not amount to a breach of its fiduciary duties. Simply put, when the taking of a spread is not prohibited by the plans, such conduct does not give rise to a reasonable inference of the breach of fiduciary duties, but this does not foreclose the existence of a breach in circumstances where a spread *is prohibited* by the plans.

ERISA's definition of fiduciary is broad:

> **(21)(A)** Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002.

Plaintiffs argue that the Cigna is a fiduciary for four reasons. First, under the plans, Cigna was specifically granted discretionary authority concerning the computation of any and

all payments under the plans.  Second, irrespective of whether it was granted fiduciary authority, Cigna exercised discretionary authority or control over the plan management by setting cost-sharing payments greater than the amounts allowed under the plans and by requiring managers or providers to charge and collect spread.  Third, Cigna exercised discretion to set and take its own compensation by dictating the amount of the spread and taking spread compensation.  Fourth, Cigna exercised authority or control over plan assets and plan contributions toward the payment of medical services and supplies.

Plaintiffs have proffered adequate support for the legal conclusion that Cigna is acting as a fiduciary.  The question of whether plainiffs' allegations support a claim that Cigna breached its obligations is similarly straightforward.

> The second question-whether [defendant's] deception violated ERISA-imposed fiduciary obligations-calls for a brief, affirmative answer. ERISA requires a fiduciary to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries. To participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the [defendant] money at the beneficiaries' expense is not to act solely in the interest of the participants and beneficiaries. As other courts have held, lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA.

Varity, 516 U.S. at 506.

Although ERISA does not define plan assets, courts have broadly construed the term.  See In re Regions Morgan Keegan ERISA Litig., 692 F.Supp.2d 944, 960 (W.D. Tenn. 2010) (citing cases).  The Department of Labor has advised that plan assets should be identified based on "ordinary notions of property rights."  Faber v. Metro. Life Ins. Co., 648 F.3d 98, 105 (2d Cir. 2011).  In an advisory opinion, the DOL indicated that plan assets "include any property, tangible or intangible, in which the plan has a beneficial ownership interest," considering "any contract or other legal instrument involving the plan as well as the actions and representations of the parties involved."  See Carver v. Bank of New York Mellon, 2017 WL 1208598, at *6 (S.D.N.Y. Mar. 31, 2017).  In Faber, the Second Circuit

expressed that the DOL's advisory opinion is entitled to deference.  648 F.3d at 105; <u>Carver</u>,

2017 WL 1208598, at *6.

Plaintiffs have asserted plausible claims that Cigna is a fiduciary and that it exercised

its discretion over the plans in breach of its fiduciary duties.  <u>See</u> <u>Negron</u>, 300 F. Supp. 3d at

355-59.  Accordingly, the court will deny the motion to dismiss for failure to state a claim

with respect to the ERISA fiduciary claims.

### V. Discrimination under ERISA §702(B) (Count V)

Plaintiffs consent to dismissal of Count V.

### VI. RICO

Plaintiffs allege that defendants are liable under the civil RICO statute, 18 U.S.C. §

1962(c), which provides that it is unlawful for "any person employed by or associated with any

enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to

conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through

a pattern of racketeering activity...."

Plaintiffs consent to dismissal without prejudice of Counts IX and XI, alleging RICO

association-in-fact enterprises.

Plaintiffs assert that because the enterprise operation and management allegations here

are materially identical to the allegations in <u>Negron</u>, the court should similarly deny Cigna's

motion to dismiss.  <u>See</u> <u>Negron</u>, 300 F. Supp. 3d at 363-67.  Although it dealt with

prescription drugs instead of broader categories of medical services and supplies, this court in

<u>Negron</u> found the plaintiffs' allegations sufficient to demonstrate that Cigna maintained

fraudulent intent at the time of the contract execution:

> Plaintiffs allege that Cigna created a mechanism through which Cigna could
> obtain additional monies beyond what plaintiffs should have paid under their
> plan for prescription drugs. Cigna allegedly designed and entered into the
> Clawback scheme with the intent to defraud insureds who paid for excessive

> prescription drug costs. The complaint plausibly alleges that defendant Cigna acted with scienter by alleging that it intentionally sought to charge excess amounts for prescription drugs and that it required the pharmacies to conceal from the insureds the amounts of the prescription drug costs.

Id. at 364-65.

Cigna argues that plaintiffs fail to identify any actual misrepresentations to support their alleged "scheme to defraud" with the specificity required by Rule 9(b). But Cigna once again bases its argument on the theory that they have fully complied with the plaintiffs' plans.  Indeed, Cigna provides the following:

> Plaintiffs baldly point to their plans as the basis of Cigna's misrepresentations, claiming that "Cigna represent[ed] to Plaintiffs and Class members through form Plan language that they would pay a certain amount" and that Cigna then later "misrepresent[ed] the correct charge" in asking for cost-sharing responsibility that included the "Spread" amount. (See, e.g., AC ¶¶ 219-220.) But as explained supra in Section II.A, nothing in Plaintiffs' plans suggests the amount represented in the plans was any different than the amount Plaintiffs were asked to pay, nor do any provisions suggest that Plaintiffs were entitled to the "Spread" payments they now seek.

[ECF No. 55-1, p. 48]

Cigna argues that plaintiffs' RICO claims should be dismissed for failure to state a claim, in part, because Cigna's conduct represents what it describes as routine and legitimate business and contractual arrangements.

Nevertheless, RICO not only permits civil suit; it encourages private litigation to deter prohibited practices.  Rotella v. Wood, 528 U.S. 549, 558 (2000) ("The object of civil RICO is thus not merely to compensate victims but to turn them into prosecutors, 'private attorneys general,' dedicated to eliminating racketeering activity.").  To do so, plaintiffs must prove the existence of an "enterprise" separate from the defendant itself.  A defendant must have:

> 1) invested the proceeds of the pattern of racketeering activity into the enterprise;
> 2) acquired or maintained an interest in, or control of, the enterprise through the pattern of racketeering activity;

      3) conducted or participated in the affairs of the enterprise through the pattern of racketeering activity; or,

      4) conspired to do one of the above.

18 U.S.C. § 1962.

The above four roles that an enterprise may play have been described as the "prize," "instrument," "victim," or "perpetrator" of the racketeers.  National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 259 n.5 (1994).

First, Cigna argues that plaintiffs have failed to plead a RICO "enterprise" or that Cigna participated or conducted the affairs of any enterprise.  Plaintiffs respond that the Cigna Manager Enterprises allegations are more than sufficient to satisfy the notice standard of Rule 8(a).  See D. Penguin Bros. Ltd. v. City Nat. Bank, 587 Fed. Appx. 663, 666 (2d Cir. 2014) ("In the RICO context, a plaintiff must plead predicate acts sounding in fraud or mistake according to the particularity requirement of Rule 9(b); for other elements of a RICO claim— such as non-fraud predicate acts or, as relevant here, the existence of an "enterprise"—a plaintiffs' complaint need satisfy only the "short and plain statement" standard of Rule 8(a).").

Cigna contends that the complaint merely describes Cigna as directing its own affairs during normal, arm's-length commercial transactions.  But the pleadings allege that Cigna orchestrated and directed its managers' actions and prevented managers and providers from divulging the scheme.  Plaintiffs submit that Cigna directed the affairs of each manager in the Cigna Manager Enterprise through uniform contracts and agreements that required those managers to intentionally misrepresent the cost-sharing amount and collect that unlawful sum from all Cigna participants.  Pursuant to the "operation management" test, "one is liable under RICO only if he 'participated in the operation or management of the enterprise itself." First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159, 176 (2d Cir. 2004).

In this Circuit, the "operation or management" test typically has proven to be a relatively low hurdle for plaintiffs to clear, *see, e.g., Baisch v. Gallina,* 346 F.3d 366, 377 (2d Cir.2003); *De Falco v. Bernas,* 244 F.3d 286, 309 (2d Cir.2001), especially at the pleading stage, *cf. United States v. Allen,* 155 F.3d 35, 42–43 (2d Cir.1998) (holding the question whether defendant "operated or managed" the affairs of an enterprise to be essentially one of fact). Ultimately, however, it is clear that the RICO defendant must have played "*some* part in directing [the enterprise's] affairs." *De Falco,* 244 F.3d at 310; *see Reves,* 507 U.S. at 178–79, 113 S.Ct. 1163.

First Capital, 385 U.S. at 176; see also D'Addario v. D'Addario, 2018 WL 3848501, at *17 (2d Cir. Aug. 14, 2018) (holding that active assistance to effectuate the underlying scheme may fairly be considered "participation" in the operation or management of an enterprise for purposes of section 1962(c)). The court finds that plaintiffs have adequately alleged that Cigna conducted or participated in the affairs of the enterprise through a pattern of racketeering.

Second, Cigna argues that plaintiffs have failed to plead a pattern of predicate acts. Cigna asserts that plaintiffs have failed to identify any "actual misrepresentations" with the specificity required by Rule 9. But here again, Cigna relies on its contention that "nothing in plaintiffs' plans suggests the amount represented in the plans was any different than the amount plaintiffs' were asked to pay, nor do any provisions suggest that plaintiffs' were entitled to the 'spread' they now seek."

Racketeering activity is defined to include a list of enumerated predicate acts, including "any act which is indictable" under the mail and wire fraud statutes. 18 U.S.C. § 1961(1)(B). Plaintiffs' complaint details how the fraudulent billing scheme worked, and includes many specific misrepresentations made by Cigna. See, e.g., ¶ 13 (Srednicki's EOB misrepresented that "'Discount' is '[t]he amount you save' by using a Cigna network provider because 'Cigna negotiates lower rates' with 'in-network' providers 'to help you save money,'" while in fact Srednicki was charged $2,315.00 even though Cigna knew it had only paid LabCorp $471.02);

¶ 8 (detailing misrepresentations made in Neufeld's plan documents); ¶¶ 67- 76 (describing terms of Plaintiffs' plans); ¶¶ 220, 254, 288 (describing the "various misrepresentations and omissions of material fact" that constituted Cigna's "fraudulent billing scheme"); ¶¶ 224-227, 292-295 (describing intent to defraud and scienter).  This is sufficient to meet the standards of Rule 9(b) for plaintiffs' allegations that the mails and wires were used in furtherance of Cigna's fraudulent scheme.

As in <u>Negron</u>, the court finds that plaintiffs have plausibly alleged more than an entitlement to lower-cost medical services and supplies.  <u>See</u> 300 F. Supp. 3d at 364.  The complaint plausibly alleges that Cigna acted with scienter by alleging that it intentionally sought to charge excess amounts and that it required managers to conceal from the insureds the amounts of the prescription drug costs.  <u>Id.</u>

Third, Cigna argues that plaintiffs have failed to allege fraudulent mailing or wire transfers in furtherance of the scheme to defraud.

The "essential elements" of both mail and wire fraud are: "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." <u>United States v. Binday</u>, 804 F.3d 558, 569 (2d Cir. 2015).  To allege a "scheme to defraud," plaintiffs must plead: "(i) the existence of a scheme to defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the defendant, and (iii) the materiality of the misrepresentations." <u>United States v. Autuori</u>, 212 F.3d 105, 115 (2d Cir. 2000) (internal citations omitted).  Plaintiffs have adequately alleged fraudulent mailing and wire transfers in furtherance of a scheme to defraud.

Finally, Cigna argues that plaintiffs have failed to allege that they suffered the concrete financial loss necessary to satisfy RICO's injury requirement, in that plaintiffs allege that they

were billed for purported "overcharges," but they do not allege that either paid for such charges.

Plaintiffs' amended complaint at paragraph 268 provides:

As a direct and proximate result of Cigna's racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs and Class members have been injured in their business and property. Plaintiffs and Class members were injured by reason of Cigna's RICO violations because they directly and immediately received through interstate wires or mail a fraudulent demand for payment, incurred a corresponding debt and **paid fraudulent charges** for medically necessary healthcare services and durable medical equipment. Their injuries were proximately caused by Cigna's violations of 18 U.S.C. §1962(c) because these injuries were the foreseeable, direct, intended, and natural consequence of Cigna's RICO violations (and commission of underlying predicate acts) and, but for Cigna's RICO violations (and commission of underlying predicate acts), they would not have suffered these injuries.

[ECF No. 29]. Accordingly, plaintiffs RICO claims will not be dismissed for failure to allege financial loss.

## CONCLUSION

For the foregoing reasons, Cigna's motion to dismiss is GRANTED in part and DENIED in part. Counts V, IX and XI are dismissed. The balance of plaintiffs' claims remain. Within 21 days of this ruling's filing date, plaintiffs are instructed to file an amended complaint that includes only the remaining claims.

Dated this 30th day of August, 2018, at Bridgeport, Connecticut.

        /s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE