UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

JEFFREY NEUFELD, AUBREY SREDNICKI, KEVIN JACQUES, NICHOLAS MARSHALL, WILLIAM NINIVAGGI, TROY TERRY, and NATHAN WHEATLEY, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

CIGNA HEALTH AND LIFE INSURANCE COMPANY,

Defendant.

No. 3:17-cv-1693

CLASS ACTION

**AMENDED RICO CASE STATEMENT**

August 7, 2019

Pursuant to the Standing Order in Civil RICO Cases, Plaintiffs, Jeffrey Neufeld, Aubrey Srednicki, Kevin Jacques, Nicholas Marshall, William Ninivaggi, Troy Terry, and Nathan Wheatley, submit this RICO Case Statement, concerning their RICO allegations against Cigna Health and Life Insurance Company ("Cigna").

**1. The alleged unlawful conduct that is claimed to be in violation of 18 U.S.C. §§ 1962(a), (b), (c) and/or (d).**

The operative Third Amended Complaint contains one count alleging a violation of 18 U.S.C. § 1962.

| *Count* | *Section* | *Defendant(s)* | *Enterprise(s)* |
|---|---|---|---|
| V | § 1962(c) | Cigna | "**Cigna Manager Enterprises**": Separate enterprises consisting of network managers CareCentrix, eviCore, and Linkia. |

Plaintiffs allege that Cigna violated 18 U.S.C. § 1962(c) by conducting the affairs of enterprises through a pattern of racketeering. The unlawful conduct alleged in Count V consisted of the following: Cigna entered into agreements with CareCentrix, Inc., eviCore healthcare MSI,

LLC, and Linkia, Inc. (collectively referred to herein as "managers") for access to their provider/vendor networks, and the managers in turn, entered into agreements with participating providers/vendors that enabled Defendant to fraudulently overcharge Plaintiffs and class members for medical benefits other than prescription drugs ("medical benefits")[1]; Plaintiffs and class members were in fact fraudulently overcharged for medical benefits; and agreements ("gag clauses") between Cigna's managers and providers/vendors prohibited the disclosure of the unlawful scheme and/or the sale of medical benefits to Plaintiffs and class members at prices other than the unlawful prices.

The scheme was to deprive Plaintiffs and class members of money by deceit and false pretenses, and it was characterized by a departure from community standards of fair play and candid dealings.

The scheme to defraud included various misrepresentations and omissions of material fact, including, but not limited to: (a) the representation in the plain form language of the policy that class members would pay a certain amount for medical benefits with knowledge and intent that class members would be charged a higher amount; (b) the failure to disclose that a material portion of cost-sharing payments were neither payments for medical benefits nor were they "co-" payments by the insureds in conjunction with a payment by the insurer for the medical benefits, as required by the plain language of the policies, but rather were unlawful payments to Defendant and/or Cigna's managers; (c) the failure to disclose that medical benefit payments under deductible portions of health insurance policies were based on medical benefit prices that

[1] To be clear, Cigna is also overcharging its participants for prescription drug medical benefits, but because prescription drug benefits are governed, in part, by different plan language and prescription drug riders, those claims have been brought in a separate class action, currently pending before the same Court. *See In re Cigna Corp. PBM Litig.*, No. 3:16-cv-1702-WWE (D. Conn.).

were not based on, or exceeded, the contracted fees charged by the participating providers, as required by the plain form language of the policy; (d) the failure to disclose that cost-sharing payments were based on medical benefit prices that were not based on, or exceeded, the contracted fees charged by the participating providers, as required by the plain form language of the policy; and (e) the failure to disclose "gag clauses" and the fact that class members could pay less for a medical care by purchasing it outside of their respective insurance policies.

It was and is reasonably foreseeable by Defendant that mail, interstate carriers and wire transmissions would be used — and mail, interstate carriers and wire transmissions were in fact used — in furtherance of the scheme, including but not limited to the following manner and means:

(a) whenever Plaintiffs or class member seeks to receive medical benefits, the providers participating in the managers' or Cigna's provider networks enter information into a computer and transmit it via interstate mail or carrier and/or wire transmissions to the managers for processing; (b) Cigna and/or managers collect "Spread" money via interstate mail or carrier or wire transmissions; (c) Plaintiffs and class members make payments to managers or providers using credit or debit cards, which require the use of use of interstate wire transmissions; (d) medical benefits received by Plaintiffs and class members through Cigna's fraudulent scheme were delivered by mail or interstate carrier; and (e) Cigna's or managers' representatives communicated with each other by mail, interstate carrier and/or wire transmissions in order to carry out the fraudulent scheme. For specific allegations, *see* Counts VIII through XII.

**2. The identity of each defendant and the alleged misconduct and basis of liability of each defendant.**

Cigna is the entity that issued plaintiffs' health insurance policies — the terms of which were violated by the charging of unauthorized and excessive fees for medical benefits.

The alleged misconduct by Defendant includes, but is not limited to the following: Cigna entered into agreements with its managers, which in turn entered into agreements with participating providers/vendors that enabled Defendant to fraudulently overcharge Plaintiffs and class members for medical benefits; Plaintiffs and class members were in fact overcharged for medical benefits; and these agreements prohibited the disclosure of the unlawful scheme and/or the sale of medical benefits to Plaintiffs and class members at prices other than the unlawful prices.

**3. The identity of the alleged wrongdoers, other than the defendants listed in response to paragraph 2, and the alleged misconduct of each wrongdoer.**

As explained above, Cigna's managers — CareCentrix, Inc., eviCore healthcare MSI, LLC, and Linkia, Inc. —were involved in the scheme to overcharge participants. The alleged misconduct by these managers includes, but is not limited to the following: Defendant entered into agreements with the managers, which in turn entered into agreements with participating providers/vendors that enabled Defendant to overcharge Plaintiffs and class members for medical benefits; Plaintiffs and class members were in fact overcharged for medical benefits; and agreements between Cigna's managers and providers/vendors prohibited the disclosure of the unlawful scheme and/or the sale of medical benefits to Plaintiffs and class members at prices other than the unlawful prices.

**4. The identity of the alleged victims and the manner in which each victim was allegedly injured.**

The victims of Defendant's scheme to defraud includes Plaintiffs and each member of the Class and Subclasses. Plaintiffs and the class members were injured in that they were illegally overcharged for medical benefits. Specifically, Plaintiffs and the class members were damaged and suffered losses in that they were required to pay more for medical benefits than Defendant had represented they would pay.

**5. A description of the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim, which shall include the following information:**

**(a) The alleged predicate acts and the specific statutes which were allegedly violated;**

Pursuant to and in furtherance of their fraudulent scheme, Defendant committed multiple, related predicate acts within the relevant time period and within the last ten years that are indictable as mail and/or wire fraud pursuant to 18 U.S.C. §§ 1341 and 1343. The predicate acts had a common purpose and similar results on similar victims.

**(b) The dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts;**

On or about June 22, 2017, Plaintiff Neufeld was fraudulently billed by CareCentrix $25.68 for a disposable CPAP filter— ***a 342% premium over the actual $7.50 fee*** that CareCentrix paid to J&L. Without disclosing it to Plaintiff, Defendant and/or its agents fraudulently billed Plaintiff Neufeld the $18.18 overcharge or "Spread." Plaintiffs Jacques, Marshall, Terry, and Wheatley were likewise overcharged for and misled about the cost of a "disposable CPAP filter."

On or about June 22, 2017, Plaintiff Neufeld was fraudulently billed by CareCentrix $147.78 for a full-face Mirage CPAP/BIPAP mask—***a 156% premium over the actual $95 fee*** that CareCentrix paid to J&L. Without disclosing it to Plaintiff, Defendant and/or its agents fraudulently billed Plaintiff Neufeld the $52.78 overcharge or "Spread." Plaintiffs Marshall, Ninivaggi, Terry, and Wheatley were likewise overcharged for and misled about the cost of a "full-face Mirage CPAP/BIPAP mask."

On or about June 22, 2017, Plaintiff Neufeld was fraudulently billed by CareCentrix $37.61 for CPAP headgear—***a 188% premium over the actual $20 fee*** that CareCentrix paid to J&L. Without disclosing it to the customer, Defendant and/or its agents fraudulently billed

Plaintiff Neufeld the $17.61 overcharge or "Spread." Plaintiffs Jacques, Marshall, Ninivaggi, and Wheatley were likewise overcharged for and misled about the cost of a "CPAP headgear."

On or about June 22, 2017, Plaintiff Neufeld was fraudulently billed by CareCentrix $24.43 in coinsurance for CPAP tubing—***a 175% premium over the actual $14 fee*** paid to J&L. Without disclosing it to the customer, Defendant and/or its agents fraudulently billed Plaintiff Neufeld the $10.43 overcharge or "Spread," which Plaintiff paid. Plaintiffs Marshall, Terry, and Wheatley were likewise overcharged for and misled about the cost of a "CPAP tubing."

**(c) If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made shall be identified;**

See response to 5(b), which states the circumstances constituting the fraud, including the particular details of the misrepresentations. No misrepresentation, however, is required to allege mail or wire fraud. *U.S. v. Trapilo*, 130 F.3d 547, 550 (2d Cir. 1997) ("The scheme exists although no misrepresentation of fact is made."); *see also Silverman v. U.S.*, 213 F.2d 405, 405 (5th Cir. 1954) ("The scheme need not be fraudulent upon its face, and need not misrepresent any fact, because all that is necessary is that it be a scheme reasonably calculated to deceive persons of ordinary prudence and comprehension . . . ."); *U.S. v. Thomas*, 377 F.3d 232, 242 (2d Cir. 2004) (citing *Silverman* and referring to it as the seminal case); *U.S. v. Baren*, 305 F.2d 527, 533 (2d Cir. 1962) (citing *Silverman*, 213 F.2d at 405); *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 991 (8th Cir. 1989) ("[N]o misrepresentation of fact is required in order to establish mail fraud."); *U.S. v. McNeive*, 536 F.2d 1245, 1249 n.10 (8th Cir. 1976) ("The types of fraudulent schemes falling within this classification are limited only by the ingenuity of the perpetrator. No misrepresentation of fact is required if the scheme is reasonably calculated to deceive persons of ordinary prudence.").

**(d) Whether there has been a criminal conviction for violation of the predicate acts;**

There has not been a criminal conviction for violation of the predicate acts.

**(e) Whether civil litigation has resulted in a judgment in regard to the predicate acts;**

Civil litigation has not yet resulted in a judgment in regard to the predicate acts.

**(f) The manner in which the predicate acts form a "pattern of racketeering activity"; and**

Defendant has directly and indirectly conducted and participated in the conduct of the enterprises' affairs through an on-going, continuous and related pattern of racketeering activity that was and is the enterprise's regular way of conducting its business and/or that distinctly threatens continued criminally indictable activity. For example, whenever a medical benefit was or is provided, (a) Cigna's provider networks enter information into a computer and transmit it via interstate mail or carrier and/or wire transmissions to the managers for processing; (b) Cigna and/or managers collect "Spread" money via interstate mail or carrier or wire transmissions; (c) Plaintiffs and class members make payments to Cigna, managers, or providers using credit or debit cards, which require the use of use of interstate wire transmissions; (d) medical benefits received by Plaintiffs and class members through Cigna's fraudulent scheme were delivered by mail or interstate carrier and (e) Cigna's, or managers' representatives communicated with each other by mail, interstate carrier and/or wire transmissions in order to carry out the fraudulent scheme. For specific allegations, see Count V.

**(g) Whether the alleged predicate acts relate to each other as part of a common plan, and if so, a detailed description of the common plan.**

The alleged predicate acts relate to each as part of a common plan in that they were in furtherance of Defendant' pervasive plan to overcharge Plaintiffs and class members.

**6. A detailed description of the alleged enterprise for each RICO claim, which shall include:**

**(a) The names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise;**

*See* Table supra at 1.

**(b) The structure, purpose, function and course of conduct of the enterprise;**

*Structure*. There are three separate legal-entity enterprises: CareCentrix, Inc., eviCore healthcare MSI, LLC, and Linkia, Inc.

*Function*. In general, the legitimate function of the enterprises are to provide medical benefits to insureds who purchase medical benefits from participating providers and the illegitimate function of the enterprises are to fraudulently obtain sums from Plaintiffs and class members.

*Course of conduct*. The legitimate course of conduct of the enterprises are as follows: When a patient presents a claim to a provider, key information about the patient and his or her plan is transmitted via interstate wire to Cigna or a Cigna manager. Cigna or the manager are supposed to process the claim according to the benefits plan assigned to the patient. Cigna or the manager electronically transmits via interstate wire a message back to the provider indicating whether the medical benefit and patient are covered and, if so, in some circumstances the amount the provider must collect from the patient as a co-payment, co- insurance, or to be paid toward a deductible. The illegitimate function involves Cigna or the manager electronically transmitting via interstate wire an amount to collect from the patient as a co-payment, co- insurance, or to be paid toward a deductible that exceeds the amount that is permitted under the health plans.

**(c) Whether any defendants are employees, officers or directors of the alleged enterprise;**

No Defendant is an employee, officer or director of the alleged enterprise or enterprises.

**(d) Whether any defendants are associated with the alleged enterprise;**

As described above, the Defendant has agreements with the managers or providers that facilitate the fraudulent scheme.

**(e) Whether plaintiffs contend that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise; and**

Defendant is an entity separate from the alleged enterprises.

**(f) If any defendants are alleged to be the enterprise itself, or members of the enterprise, an explanation as to whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.**

Not applicable.

**7. Whether plaintiffs contends that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.**

Plaintiffs contend that the pattern or racketeering activity and the enterprise are separate.

**8. The alleged relationship between the activities of the enterprise and the pattern of racketeering activity, including a description of the manner in which the racketeering activity differs, if at all, from the usual and daily activities of the enterprise.**

The legitimate purpose of the enterprise(s) is to provide medical benefits to insureds who purchase medical benefits from participating providers. The legitimate activities of the enterprise(s) consist of processing medical benefit coverage and payment information in connection with the sale of medical benefits to insureds. With a legitimate transaction, the manager or Cigna will process the claim according to the benefits plan assigned to the patient, and indicate to the provider whether the medical product or service and patient are covered and, if so, in certain circumstances, the ***proper*** amount to collect from the patient as a co-payment, co-insurance, or to be paid toward a deductible. With an illegitimate transaction (*i.e.*, racketeering activity), the amount that the Cigna and the manager knowingly charge is an amount that exceeds

the insured's payment obligation pursuant to her/her health insurance policy — with the excess amount being unlawfully retained by the Defendant and/or the enterprise.

**9. The benefits, if any, the alleged enterprise receives or has received from the alleged pattern of racketeering.**

The benefits generally will accrue to the Defendant more than the enterprise(s), although Plaintiffs believe that the enterprises receive some of the excess, unlawful charges.

**10. The effect of the activities of the enterprise on interstate or foreign commerce.**

Cigna is one of the largest health insurers in the United States — earning $39.7 billion during its last fiscal year — and offers health insurance and provider networks in all fifty states. As such, Cigna's activities and the activities of the enterprises have a significant effect on interstate commerce.

**11. If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:**

**(a) The identity of the individual(s) who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and**

Not applicable.

**(b) The use or investment of such income.**

Not applicable.

**12. If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.**

Not applicable.

**13. If the complaint alleges a violation of 18 U.S.C. § 1962(c), provide the following information:**

**(a) The individuals who are employed by or associated with the enterprise; and**

Cigna is alleged to be the entity that is associated with the enterprises.

**(b) Whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).**

Cigna is the liable person but is not an enterprise under 18 U.S.C. § 1962(c).

**14. If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.**

Not applicable.

**15. The alleged injury to business or property.**

The injury to Plaintiffs and class members is that they were fraudulently overcharged for medical benefits.

**16. The direct causal relationship between the alleged injury and the violation of the RICO statute.**

The injury and the RICO violations are related because Defendant's conduct and/or participation in the conduct of the enterprises' affairs through a pattern of racketeering activity was the proximate cause of the fraudulent, excessive fees paid by Plaintiffs and the class members for medical benefits.

**17. The damages sustained for which each defendant is allegedly liable.**

The damages equal the difference between the amount paid for medical benefits and the amount that Defendant represented would be paid.

**18. A description of other federal causes of action alleged in the complaint, if any, and citation to the relevant statutes.**

Plaintiffs also allege violations of the Employee Retirement Income Security Act of 1974 — including, violations of (1) ERISA § 502(a)(1)(B) [codified at 29 U.S.C. § 1132(a)(1)(B)], which provides that a participant or beneficiary may bring an action to enforce rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan; (2) ERISA § 406(a)(1)(C) [codified at 29 U.S.C. § 1106(a)(1)(C)] for engaging in prohibited transactions; (2) ERISA § 406(b) [codified at 29 U.S.C. § 1106(b)] for engaging in prohibited transactions; and (3) ERISA § 404 [codified at 29 U.S.C. § 1104] for breach of fiduciary duties.

**19. A description of all pendent state claims alleged in the complaint, if any.**

Plaintiff Wheatley alleges claims for breach of contract claims and breach of the covenant of good faith and fair dealing on behalf of himself and the State Law Subclass. These claims, however, are not pendent because the court has jurisdiction over these claims under 28 U.S.C. § 1332 irrespective of the federal causes of action.

**20. Any additional information plaintiff feels would be helpful to the Court in processing the RICO claim.**

Plaintiffs do not have any additional information that they want to provide at this time.

Respectfully submitted,

Dated: August 7, 2019

/s/ Robert A. Izard

Robert A. Izard (ct01601)
Craig A. Raabe (ct04116)
Christopher M. Barrett (ct30151)
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: 860-493-6292
Facsimile: 860-493-6290
rizard@ikrlaw.com
craabe@ikrlaw.com
cbarrett@ikrlaw.com

William H. Narwold (ct00133)
Mathew Jasinski, (ct27520)
MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: 860-882-1681
Facsimile: 860-882-1682
bnarwold@motleyrice.com
mjasinski@motleyrice.com

Ronen Sarraf
Joseph Gentile
SARRAF GENTILE LLP
14 Bond Street, Suite 212

Great Neck, NY 11021
Telephone: 516-699-8890
Facsimile: 516-699-8968
ronen@sarrafgentile.com
joseph@sarrafgentile.com

*Attorneys for Plaintiffs*