UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFFREY NEUFELD, et al., individually and on behalf of all others similarly situated, | No. 3:17-cv-1693-KAD |
| Plaintiffs, | |
| vs. | |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY, | |
| Defendant. | March 15, 2021 |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ..................................................................................................3

I.     CIGNA FACED REPEATED REGULATORY SCRUTINY FOR ITS NETWORK-MANAGEMENT RELATIONSHIPS WITH VENDORS LIKE CARECENTRIX ..........................................................................................................3

II.    CIGNA CONCEALED ITS OVERCHARGE SCHEME WHILE MARK-UPS STEADILY INCREASED .......................................................................................7

III.   CIGNA TERMINATES THE CARECENTRIX CONTRACT, AND FINALLY DISCLOSES MARK-UPS. .........................................................................................8

ARGUMENT ..........................................................................................................................9

I.     STANDARD ...............................................................................................................9

II.    THE ERISA CLASS ................................................................................................10

     A.    The ERISA Class Satisfies Rule 23(a)........................................................10

          1.    Rule 23(a)(1): The ERISA Class is sufficiently numerous.......................10

          2.    Rule 23(a)(2): Plaintiffs' ERISA claims present common questions ........10

          3.    Rule 23(a)(3): Plaintiffs' claims are typical of those of the proposed ERISA Class...................................................................................11

          4.    Rule 23(a)(4): The Class representatives and Class counsel are adequate. ......................................................................................................12

          5.    The ERISA Class is ascertainable.............................................................13

     B.    The ERISA Class Satisfies the Requirements of Rule 23(b)......................14

          1.    The ERISA Class satisfies the requirements of Rule 23(b)(1). ................14

          2.    The ERISA Class may be certified under Rule 23(b)(2). ..........................14

          3.    The ERISA Class may be certified under Rule 23(b)(3). ..........................15

III.   THE RICO CLASS...................................................................................................18

# TABLE OF AUTHORITIES

**CASES**

*Amara v. Cigna Corp.*,
   2002 WL 31993224 (D. Conn. Dec. 20, 2002) ...................................................... 11

*Amara v. Cigna Corp.*,
   775 F.3d 510 (2d Cir. 2014) ...................................................................................... 15

*Amgen, Inc. v. Conn. Ret. Plans and Trust Funds*,
   568 U.S. 455 (2013) .................................................................................................. 10

*Audet v. Frasier*,
   332 F.R.D. 53 (D. Conn. 2019) ................................................................................. 17

*Bridge v. Phoenix Bond. & Indem. Co.*,
   553 U.S 639 (2008) ................................................................................................... 19

*Caranci v. Blue Cross & Blue Shield of R.I.*,
   194 F.R.D. 27 (D.R.I. 2000) ..................................................................................... 15

*Consol. Rail Corp. v. Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) ........................................................................................ 10

*Des Roches v. Cal. Physicians' Serv.*,
   320 F.R.D. 486 (N.D. Cal. 2017) .............................................................................. 15

*Ebin v. Kangadis Food Inc.*,
   297 F.R.D. 561 (S.D.N.Y. 2014) ............................................................................... 13

*Escalante v. Cal. Physicians' Serv.*,
   309 F.R.D. 612 (C.D. Cal. 2015) ............................................................................... 12

*Haddock v. Nationwide Fin. Servs. Inc.*,
   293 F.R.D. 272 (D. Conn. 2013) ............................................................................... 17

*Hanks v. Lincoln Life & Annuity Co. of N.Y.*,
   330 F.R.D. 374 (S.D.N.Y. 2019) ..................................................................... 10, 12, 16

*High St. Rehab, LLC v. Am. Specialty Health Inc.*,
   2019 WL 4140784 (E.D. Pa. Aug. 29, 2019) ............................................................. 5

*In re Drexel Burnham Lambert Grp.*,
   960 F.2d 285 (2d Cir. 1992) ...................................................................................... 13

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
   209 F.R.D. 323 (S.D.N.Y. 2002) ................................................................. 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
   827 F.3d 223 (2d Cir. 2016) ...................................................................... 12

*In re Petrobras Sec.,*
   862 F.3d 250 (2d Cir. 2017) ................................................................. 13, 17

*In re U.S. Foodservice Inc. Pricing Litig.,*
   2011 WL 6013551 (D. Conn. Nov. 29, 2011) ............................................ 17

*In re U.S. Foodservice Inc. Pricing Litig.,*
   729 F.3d. 108 (2d Cir. 2013) ........................................... 9, 11, 16, 18, 19

*Johnson v. Meriter Health Servs. Emp. Ret. Plan,*
   702 F.3d 364 (7th Cir. 2012) .................................................................... 15

*Kennedy v. United Healthcare of Ohio, Inc.,*
   206 F.R.D. 191 (S. D. Ohio 2002) .................................................. 10, 14, 15

*Kindle v. Dejana,*
   315 F.R.D. 7 (E.D.N.Y. 2016) ..................................................................... 9

*LaFlamme v. Carpenters Local No. 370 Pension Plan,*
   212 F.R.D. 448 (N.D.N.Y. 2003) .............................................................. 15

*Lassen v. Hoyt Livery Inc.,*
   2014 WL 4638860 (D. Conn. Sept. 17, 2014) ...................................... 10, 12

*Mahon v. Chicago Title Ins. Co.,*
   296 F.R.D. 63 (D. Conn. 2013) ............................................ 10, 11, 12, 16, 18

*Marisol A. v. Giuliani,*
   126 F.3d 372 (2d Cir. 1997) ..................................................................... 11

*Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.,*
   332 F.R.D. 138 (S.D.N.Y) ................................................................... 11, 12

*Meidl v. Aetna, Inc.,*
   2017 WL 1831916 (D. Conn. May 4, 2017) .......................................... 9, 14, 15

*Mullins v. Direct Digital, LLC,*
   795 F.3d 654 (7th Cir. 2015) .................................................................... 17

*Neufeld v. Cigna Health & Life Ins. Co.*,
  2018 WL 4158377 (D. Conn. Aug. 30, 2018) ............................................. 11, 16

*Owens v. Metro. Life Ins. Co.*,
  323 F.R.D. 411 (N.D. Ga. 2017) ....................................................................... 14

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015) ....................................................................... 9, 16, 17

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) .............................................................................. 12

*Scott v. N.Y. Dist. Council of Carpenters Pension Plan*,
  224 F.R.D. 353 (S.D.N.Y. 2004) ........................................................................ 13

*Sherman v. Burwell*,
  2016 WL 4197575 (D. Conn. Aug. 8, 2016) ....................................................... 13

*Sinclair v. United Healthcare of Ga.*,
  1998 WL 34080882 (N.D. Ga. Aug. 31, 1998) .............................................. 12, 16

*Smith v. UnitedHealthCare Servs., Inc.*,
  2002 WL 192565 (D. Minn. Feb. 5, 2002) ........................................ 10, 12, 16, 17

*Spencer v. Hartford Fin. Servs. Grp.*,
  256 F.R.D. 284 (D. Conn. 2009) ....................................................................... 16

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015) ............................................................................. 9, 17

*Vellali v. Yale Univ.*,
  333 F.R.D. 10 (D. Conn. 2019) ......................................................................... 10

*Ward v. Dixie Nat Life Ins. Co.*
  595 F.3d 164 (4th Cir. 2010) ............................................................................ 17

*Wit v. United Behavioral Health*,
  317 F.R.D. 106 (N.D. Cal. 2016) ...................................................................... 14

## STATUTES

ERISA § 404, 29 U.S.C. § 1104 ........................................................................... 11

ERISA § 406, 29 U.S.C. § 1106 ........................................................................... 11

RICO § 1964(c) ................................................................................................. 20

**RULES**

Fed. R. Civ. P. 23(a) ................................................................................................... 9, 10

Fed. R. Civ. P. 23(a)(1) ...................................................................................................... 10

Fed. R. Civ. P. 23(a)(3) ...................................................................................................... 11

Fed. R. Civ. P. 23(a)(4) ...................................................................................................... 12

Fed. R. Civ. P. 23(b) ......................................................................................................... 14

Fed. R. Civ. P. 23(b)(1) ..................................................................................... 3, 9, 10, 14

Fed. R. Civ. P. 23(b)(3) ............................................................... 3, 9, 10, 14, 15, 16, 17

Fed. R. Civ. P. 30(b)(6) ........................................................................................................ 6

**REGULATIONS**

29 C.F.R. § 2560.503-1(b)(5) ............................................................................................ 14

## INTRODUCTION

This case involves hundreds of thousands of putative class members who had Cigna health plans ("Plans") that had materially identical relevant Plan terms. Cigna violated these boilerplate Plan terms by charging members inflated cost shares (*i.e.*, copayment, coinsurance or deductible payment) on hundreds of millions of claims for covered services, supplies, and durable medical equipment ("DME"). Rather than charge members cost shares based on the amount charged by the health care provider of the services, supplies, and DME as required by the Plans, Cigna instead based member cost shares on a marked-up amount charged by CareCentrix, the company to whom Cigna outsourced the management and administration of its network of providers. For example, on February 6, 2019, Plaintiff Ruthersby CPAP purchased tubing with an integrated heating element from provider Apria Healthcare. Although Apria contracted through CareCentrix to receive ▮▮ for these supplies, Mr. Ruthersby was charged a deductible payment of $76 —a ▮▮ overcharge. Ex. A.[1] This class action is perfectly suited to recover these pervasive overcharges that violated Cigna's uniform Plan language.

Plaintiffs' uniform Plan terms required them to pay a cost share that was a "portion" of "Covered Expenses."  "Covered Expenses" are:

> expenses incurred by or on behalf of a person for the ***charges*** listed below . . . to the extent that the services or supplies provided are recommended by a Physician, and are Medically Necessary for the care and treatment of an Injury or a Sickness, as determined by Cigna.

Ex. B at 653.[2] Those "charges" are defined uniformly as "actual billed charges; except when the ***provider has contracted directly or indirectly with Cigna for a different amount***." *Id.* at 692.

All Plans within the classes have this language.

---

[1] All references to "Ex.  " are to Exhibits to the Declaration of Meghan S. B. Oliver ("Oliver Decl.").

[2] Unless otherwise noted, emphasis is added, and internal quotation marks and citations are omitted.

Contrary to this Plan language, Cigna unlawfully based members' cost shares on the inflated charges of its network manager, CareCentrix (the "CareCentrix Rate"), rather than on the charges of the "provider," like Apria, which contracted "indirectly [through CareCentrix] with Cigna for a different amount" (the "Provider Rate"). In its memorandum supporting its Motion to Dismiss, Cigna admitted the important distinction between a provider and a network "vendor" like CareCentrix. These vendors arranged for a network of providers, and the providers in that network indirectly contracted with Cigna through vendors like CareCentrix:

> Cigna often directly contracts with individual healthcare providers (*e.g.*, doctors, hospitals, and other facilities) to bring them in-network so that Cigna can offer a comprehensive array of quality healthcare services to employers and plan members. But Cigna also assembles its provider networks through contracts with entities that arrange to provide plan members with healthcare services through their own networks of healthcare professionals and facilities (Cigna's "vendors"). Cigna has such a vendor relationship with CareCentrix, which has contracted with a nationwide network of providers that supply members with home healthcare services and durable medical equipment, including provider J&L Medical Services ("J&L").

Cigna's Mem. in Supp. of its Mot. to Dismiss at 3 [ECF 55-1]. Cigna also acknowledged that it had "indirect" contracts with its providers in the network established and administered by CareCentrix:

> The concept of ***indirect contracting with providers*** is also specifically disclosed in the plan documents that Cigna provides to its members. For instance, Plaintiff Neufeld's plan defines the term "charges" as "the actual billed charges; except when the provider has contracted directly or indirectly with Cigna for a different amount," as is the case with providers who provide in-network services to plan members through Cigna's contract with CareCentrix."

*Id.* at 4. Internally, Cigna often described relationships like the one it had with CareCentrix as

████████████████████████████████

████ Ex. C.

When arguing for dismissal, Cigna emphasized the language on which Plaintiffs rely — language that is common to the class:   Cigna "specifically disclosed in the plan documents that

Cigna provides to its members" that "when the provider contracted . . . indirectly with Cigna [through CareCentrix] for a different amount," the member was entitled to a cost share based on the provider's "different amount." ECF 55-1 at 3-4. In violation of this uniform Plan language, there is no dispute that Cigna based its members' cost shares on the inflated charges of its network manager, CareCentrix, not on the "different amount" for which the "provider has contracted directly or *indirectly with Cigna*." Ex. B at 692. Plaintiff Ruthersby's deductible payment should have been based on Apria's indirectly contracted price of ████, not on CareCentrix's marked-up price of $76.00.  Every class member was similarly harmed.

The principal common question at the center of this litigation is whether Cigna's systematic calculation of cost shares using the inflated CareCentrix Rate — instead of the Provider Rate — violated the uniform Plan terms.  On behalf of themselves and the classes of similarly situated health Plan members (the "Classes"), Plaintiffs seek to certify (1) an ERISA Class under Rule 23(b)(1) to avoid inconsistent adjudications, under Rule 23(b)(2) to obtain an order requiring Cigna to reprocess the claims and recompense any cost-share overpayments, or, in the alternative, under Rule 23(b)(3) to recover damages for Cigna's violation of the Plan terms; and (2) a RICO Class under Rule 23(b)(3).

## FACTUAL BACKGROUND

I.   **Cigna Faced Repeated Regulatory Scrutiny for Its Network-Management Relationships with Vendors Like CareCentrix**

Cigna entered a contract with CareCentrix in 2003 for certain administrative services and to have CareCentrix contract with providers on Cigna's behalf to establish Cigna's home healthcare network. Cigna previously represented that CareCentrix is a "vendor" of a network, not a "provider."  ECF 55-1 at 3-4.  Cigna's 30(b)(6) witness on the CareCentrix relationship, Anita Manely, ████████████████████████████ Ex. S at 17:24-18:12,

22:22-23:7. She testified that Cigna ████████████████████████████████

████████████████████████████████████████████████████

██████ *Id.* at 196:9-197:5. ████████████████████████ Ex. AL. ████████

█████████████████████████████████████████████████████████

████████████████████████████████ Ex. S at 60:23-61:8. ██████████

██████████████████████████████████ Ex. H at 131.

████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████ Ex. D at 084-85.

This is not the first time that Cigna has been tagged off base for unlawfully basing cost

shares on its network "vendor" rates, rather than the actual "provider" rates. ██████████

████████████████████████████████████████████

████████████████████████. Ex. C; Ex. E. ██████████████████

██████████████████████████████████ Ex. F at 971; Ex. G at 3; Ex.

H at 131, 133; Ex. I at 152; Ex. J at 184.  Cigna violated Plan terms by ████████████

█████████████████████████████████████████████████████████

█████████ Ex. F at 971; Ex. K at 037; Ex. L at 454; Ex. M at 708; Ex. J at 184.

████████████████████████████████████████████

███████████████████████████████████ Ex. N; Ex. O at 413. ████████

███████████████████████████████████████████ Ex. O at

412. ████████████████████████████████████





. Ex. N.

Ex. P at 735.

To resolve the proceeding,

*Id.* at 735; Ex. Q.

Cigna also inserted the following language in fully insured Plans filed with the State of New

Jersey:



Ex. R at 293 (emphasis in original). But Cigna narrowly tailored its revision to affect ***only***

chiropractic claims for fully insured Plans in New Jersey. Cigna did not change any language or

change how it processed claims for self-funded, Administrative Services Only ("ASO") Plans in

New Jersey or for ***any*** Plans outside of New Jersey.  Cigna also did not tell members that cost

shares for services arranged by other "intermediary vendors," such as CareCentrix, were illegally

calculated in exactly the same way as cost shares were illegally calculated in New Jersey.[3]

---

[3] Cigna also was sued in a class action for these unlawful cost-share charges through ASH. *High St. Rehab, LLC v. Am. Specialty Health Inc.*, 2019 WL 4140784 (E.D. Pa. Aug. 29, 2019).  Cigna settled the class action. *Id.* Those chiropractic claims are not included in this class action.



Ex. D at 085, 088 (emphasis in original).

Ms. Manely testified that these sworn interrogatory responses that she signed



Ex. S at 212:10-21.

CareCentrix similarly confirmed in its Rule 30(b)(6) testimony that

Ex. T at

88:5-23.[4]

---

[4] As set forth above, cost shares are a "portion" of "Covered Expenses" and "Covered Expenses" are expenses for services and supplies that are both "recommended by a Physician" and "Medically Necessary." Any services that CareCentrix provided were for the benefit *of Cigna*, rather than services giving rise to Covered Expenses. For instance, CareCentrix engaged                    Ex. AK at 435. As Cigna swore to California regulators, CareCentrix

## II.     Cigna Concealed Its Overcharge Scheme While Mark-Ups Steadily Increased.

Knowing that its CareCentrix vendor relationship worked the same way as the ASH relationship and exposed Cigna to liability, Cigna concealed its overcharge scheme.  In 2013, when Cigna had ███████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ███████████████████ Ex. U at 178; *see also* Ex. V at 624. Accordingly, network providers that indirectly contracted with Cigna through CareCentrix ██████████████████ ██████████████████████████████████████████████████████████ ████████████████ Ex. W at 450; Ex. X at 511; Ex. H at 131; Ex. Y at 370, 372. ████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████ Ex. Y at 373; Ex. AM at 554-55. Cigna ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████ Ex. Z at 897; *see also* Ex. AA; Ex. H at 131. Moreover, Cigna's relationship with CareCentrix, █████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████ Ex. J at 187; Ex. AB at 841-44, 849, 852-53. ██████████████████████████████████ Ex. AC at 173, ████████████████████████████████████████████████████ ██████████████████████████████████████████████ Ex. AD at 417; Ex. AE at 930.

**III.     Cigna Terminates the CareCentrix Contract, and Finally Discloses Mark-Ups.**

███████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

████████████ Ex. J at 184. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ Ex. S at 200:7-201:19

In early 2020, Cigna finally disclosed that it was basing members' cost shares on its

network vendor rates, rather than the rates of the providers with which it indirectly contracted

through those vendors. To do so, Cigna made extensive changes to its Plan documents and the

form Explanations of Benefits ("EOBs") it used to disclose cost share amounts to members. The

Plans were changed to provide that a member's cost share would be based on ██████████████

████████████████████████████████████████████████

███████████████████████████████████████████

Exhibit AF at 299. At the same time, EOBs were modified to provide:

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████

Ex. AG at 770; *see also* Ex. AN at 516. ██████████████████████

████████████████████████████ Ex. S at 193:11-25. The only difference

between before and after the end of the class period is that the Plans previously mandated that

the cost share would be based on the contracted rate with the provider whereas now the cost

share is based on the arranger's charge.

## ARGUMENT

### I. STANDARD

Class certification is appropriate where the plaintiffs can establish "the threshold requirements for class certification under Rule 23(a)" and "the requirements for the particular relief" sought under 23(b). *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015). Rule 23(a) requires (1) the class to be so numerous so as to make joinder impracticable; (2) questions of law or fact common to the class; (3) the named plaintiffs' claims to be typical of the class; and (4) the named plaintiffs to be able to fairly and adequately protect the interests of the absent class members. Fed. R. Civ. P. 23(a).

Certification under Rule 23(b)(1) is proper when separate actions would create a risk of inconsistent results or leave members unable to protect their interests. Fed. R. Civ. P. 23(b)(1). Because ERISA statutorily protects against the risk of differential treatment of class members by fiduciaries, courts regularly certify ERISA cases under 23(b)(1). *Kindle v. Dejana*, 315 F.R.D. 7, 12 (E.D.N.Y. 2016). Rule 23(b)(2) applies if final declaratory or injunctive relief is appropriate for the class as a whole. Fed. R. Civ. P. 23(b)(2). Classes are often certified under 23(b)(2) in ERISA cases when plaintiffs seek a reprocessing of claims. *See, e.g.*, *Meidl v. Aetna, Inc.*, 2017 WL 1831916, at *22 (D. Conn. May 4, 2017). Rule 23(b)(3) requires that common questions of law or fact predominate so as to make a class action the superior method for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Certification under 23(b)(3) is appropriate when plaintiffs seek damages and the "costs of bringing individual actions outweigh the expected recovery." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d. 108, 130 (2d Cir. 2013). While common questions of liability must predominate over individualized questions, the need for calculation of individualized damages does not defeat certification. *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 409 (2d Cir. 2015).

Here, Plaintiffs meet the requirements of Rule 23(a) as well as Rule 23(b)(1) – (b)(3). Thus, class certification is appropriate.

## II.    THE ERISA CLASS

### A.    The ERISA Class Satisfies Rule 23(a)

#### 1.    Rule 23(a)(1): The ERISA Class is sufficiently numerous.

Numerosity is established when the proposed class consists of at least forty members. *Consol. Rail Corp. v. Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995). Here, there are thousands of members, and numerosity is easily satisfied.

#### 2.    Rule 23(a)(2): Plaintiffs' ERISA claims present common questions

Rule 23(a)(2)'s commonality requirement is a "low hurdle," *Hanks v. Lincoln Life & Annuity Co. of N.Y.*, 330 F.R.D. 374, 379 (S.D.N.Y. 2019), and simply requires class members to share a "single" common question of law or of fact, *Lassen v. Hoyt Livery Inc.*, 2014 WL 4638860, at *9 (D. Conn. Sept. 17, 2014).  A common question is presented 'where the same conduct or practice by the same defendant gives rise to the same kind of claims from all other class members. . . .'" *Hanks*, 330 F.R.D. at 379-80. For class certification, Plaintiffs need only establish that common issues **exist,** not that Plaintiffs will ultimately **prevail** on those issues. *Amgen, Inc. v. Conn. Ret. Plans and Trust Funds,* 568 U.S. 455, 459-60 (2013); *Mahon v. Chicago Title Ins. Co.,* 296 F.R.D. 63, 73 (D. Conn. 2013).

Commonality is satisfied where an insurer's uniform conduct violated standard policy language.  *See, e.g., Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004); *Hanks*, 330 F.R.D. at 380; *Vellali v. Yale Univ.*, 333 F.R.D. 10, 17 (D. Conn. 2019); *Kennedy v. United Healthcare of Ohio, Inc.*, 206 F.R.D. 191, 196 (S. D. Ohio 2002). How plan terms are interpreted "involve[s] issues of legal construction common to all potential class members." *Smith v. UnitedHealthCare Servs., Inc.*, 2002 WL 192565, at *3 (D. Minn. Feb. 5, 2002); s*ee*

*also Mahon*, 296 F.R.D. at 73 (D. Conn. 2013); *Steinberg*, 224 F.R.D. at 74; *Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, 332 F.R.D. 138, 148 (S.D.N.Y).

All of Plaintiffs' ERISA claims arise from the same common nucleus of fact: Cigna violated its uniform Plan terms through its uniform policy of basing member cost shares on the CareCentrix Rate instead of the Provider Rate. Common questions include the meaning of the relevant Plan terms and whether Cigna's policy of using the CareCentrix Rate violated those terms. Count I is ERISA's version of a breach of contract claim, and because the contract terms are common, it falls within *U.S. Foodservice*. *U.S. Foodservice*, 729 F.3d. 108 at 124 (holding that the "contracts are substantially similar in all material respects"). The common issues for all ERISA claims except those alleged in Count I are whether Cigna was a fiduciary in its role as claims administrator (and, where applicable, insurer) and whether it breached its fiduciary duties.[5] Even the court, in ruling on the motion to dismiss, grouped all of these claims together as "ERISA Fiduciary Claims." *Neufeld v. Cigna Health & Life Ins. Co.,* 2018 WL 4158377, at * 11-14 (D. Conn. Aug. 30, 2018). "Regardless of whether the answer to each of these inquiries is affirmative or negative, the answer is identical as to each member of the class," and commonality is satisfied. *Amara v. Cigna Corp.*, 2002 WL 31993224, at *3 (D. Conn. Dec. 20, 2002).

### 3. Rule 23(a)(3): Plaintiffs' claims are typical of those of the proposed ERISA Class.

Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997). This "does not require that the factual background of each named plaintiff's claims be identical to that of all class members; rather, it

---

[5] Counts II and III allege that Cigna as fiduciary violated ERISA § 406 by permitting or engaging in prohibited transactions. Count IV alleges that Cigna violated the fiduciary duties outlined in ERISA § 404.

requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Lassen*, 2014 WL 4638860, at \*9. In analyzing typicality, courts often consider "whether other members of the class have the same or similar injury, whether the action is based on conduct not special or unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Mahon*, 296 F.R.D. at 74. "[W]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *Escalante v. Cal. Physicians' Serv.*, 309 F.R.D. 612, 619 (C.D. Cal. 2015). As with commonality, this is true "irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936-37.

Here, Plaintiffs and putative Class members have the same relevant Plan terms, and Cigna's uniform calculation of member cost shares using the CareCentrix Rate rather than the Provider Rate is the sort of uniform action that routinely satisfies the typicality requirement. *Hanks*, 330 F.R.D. at 380-81; *Steinberg*, 224 F.R.D. at 75; *Sinclair v. United Healthcare of Ga.*, 1998 WL 34080882, at \*4 (N.D. Ga. Aug. 31, 1998); *Smith*, 2002 WL 192565, at \*4.

### 4. Rule 23(a)(4): The Class representatives and Class counsel are adequate.

Rule 23(a)(4) provides that the representatives must "(1) have an interest in vigorously pursuing the claims of the class, and (2) must have no interests antagonistic to the interests of the other class members." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016). Additionally, "[they] must demonstrate that plaintiffs' attorneys are qualified, experienced, and able to conduct the litigation." *Med. Soc'y of N.Y.*, 332 F.R.D. at 149.

Under the first prong, a class representative need only have "a minimal degree of knowledge" of the case, and is inadequate only if the deficiencies are "so substantial that they threaten to undermine the plaintiffs' case as a whole." *Scott v. N.Y. Dist. Council* of *Carpenters Pension Plan*, 224 F.R.D. 353, 355-56 (S.D.N.Y. 2004). The named Plaintiffs have demonstrated their commitment to vigorously pursuing the claims of the class by monitoring the case, responding to written discovery, and by being willing to be deposed. *See* Oliver Decl. at ¶ 3.

Under the second prong, only a "fundamental" conflict between a class representative and the absent class members will render a class representative inadequate. *Sherman v. Burwell*, 2016 WL 4197575, at *9 (D. Conn. Aug. 8, 2016). The named plaintiffs and the absent Class members have identical claims here, and there are no conflicts between them.

The adequacy requirement also seeks to ensure that class counsel is "qualified, experienced, and generally able to conduct the litigation." *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992). Proposed co-lead class counsel Motley Rice ("MR") and Izard, Kindall, & Raabe ("IKR") have decades of class action experience, extensive knowledge of the applicable law and facts and the resources necessary to litigate this action.

### 5.    The ERISA Class is ascertainable.

Plaintiffs seeking to certify a class must also satisfy the implied requirement of ascertainability. *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017). The "standard for ascertainability is not demanding and is designed only to prevent the certification of a class whose membership is truly indeterminable." *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014). It only requires that "a class be defined using objective criteria that establish a membership with definite boundaries," and "'does not require a complete list of class members at the certification stage.'" *Petrobras*, 862 F.3d at 264, 266 n.16; *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002). Here, the Class is

ascertainable because it is defined by objective criteria: relevant terms that appear in each member's Plan and claim transactions that satisfy specified criteria. Cigna and CareCentrix have produced claims data containing the amount of the member's cost share, the CareCentrix Rate, and the Provider Rate. Additionally, Cigna has stipulated that plans containing the relevant language can be identified using a combination of automated and manual review. ECF 153.[6]

**B.    The ERISA Class Satisfies the Requirements of Rule 23(b).**

This ERISA class meets the requirements of Rule 23(b)(1), 23(b)(2) and 23(b)(3) with respect to all claims alleged under ERISA.

**1.    The ERISA Class satisfies the requirements of Rule 23(b)(1).**

The ERISA Class should be certified under Rule 23(b)(1) because the prosecution of separate actions by individual class members would create the risk of inconsistent adjudications. Health plan cases are often certified under Rule 23(b)(1) because ERISA requires claim procedures to be applied consistently for similarly situated claimants. *See Meidl,* 2017 WL 1831916, *18-19; *Kennedy*, 206 F.R.D. at 198; 29 C.F.R. § 2560.503–1(b)(5). Here, permitting separate lawsuits creates the risk that different courts could interpret the same Plan language in different ways, requiring Cigna to calculate some members' cost shares differently than others. Accordingly, certification under 23(b)(1) is warranted.

**2.    The ERISA Class may be certified under Rule 23(b)(2).**

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

---

[6] Cigna's records concerning whether a Plan is subject to ERISA identify Plans in the ERISA class. Cigna is required to determine claims "in accordance with governing plan documents," 29 C.F.R. §2560.503-1(b)(5), and Cigna relies on those records in setting up Plans and in adjudicating claims. Accordingly, like Cigna, the Court is entitled to rely on those records. *Wit v. United Behavioral Health*, 317 F.R.D. 106, 129-30 (N.D. Cal. 2016); *Owens v. Metro. Life Ins. Co.,* 323 F.R.D. 411, 416 (N.D. Ga. 2017).

declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). An injunction ordering an insurance administrator to reprocess claims for benefits is retrospective injunctive relief. *Meidl*, 2017 WL 1831916, at \*22. Such relief is proper under Rule 23(b)(2). *Id; Caranci v. Blue Cross & Blue Shield of R.I.*, 194 F.R.D. 27, 40 (D.R.I. 2000); *Des Roches v. Cal. Physicians' Serv.*, 320 F.R.D. 486, 509-10 (N.D. Cal. 2017); *Kennedy*, 206 F.R.D. at 199. A "reprocessing order is not properly treated as monetary relief. Rather than seeking payment, a reprocessing claim simply seeks that claims be reprocessed via a lawful method, despite the fact that certain class members may receive no payment even after the reprocessing." *Meidl*, 2017 WL 1831916, at \*20-22 (collecting cases); *Amara v. Cigna Corp.*, 775 F.3d 510, 523 (2d Cir. 2014); *LaFlamme v. Carpenters Local No. 370 Pension Plan*, 212 F.R.D. 448, 456-57. Any monies payable as a result of the recalculation are "incidental" to the reprocessing injunction, and so are an allowable remedy for a Rule 23(b)(2) class. *Meidl*, 2017 WL 1831916, at \*20-21; *see also generally Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 371-72 (7th Cir. 2012);

Here, Cigna adjudicated all of the Class members' claims using the CareCentrix Rate rather than the Provider Rate. Relief declaring that the relevant Plans required Class members' cost shares to be based on the Provider Rate instead of the CareCentrix Rate and requiring Cigna to reprocess all Class member claims consistent with that holding would be a proper remedy for all members of the class. Certification under 23(b)(2) is thus appropriate.

### 3.     The ERISA Class may be certified under Rule 23(b)(3).

Rule 23(b)(3) applies when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

####    a.        Common issues predominate over individualized issues.

Predominance exists "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach*, 778 F.3d at 405. "Rule 23(b)(3) does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof,' but rather, requires 'that common questions predominate over any questions affecting only individual class members." *U.S. Foodservice,* 729 F.3d at 118. "In particular, courts should 'focus on the liability issue . . . and if the liability issue is common to the class, common questions are held to predominate over individual ones.'" *Mahon*, 296 F.R.D. at 75. Here, the predominant issue is whether Cigna violated ERISA by improperly calculating member cost shares in violation of the Plan terms. The Plans are "materially uniform insofar as they misrepresent the services of middlemen to inflate invoice prices." *See Neufeld*, 2018 WL 4158377, at * 9; *see also U.S. Foodservice*, 729 F.3d at 118; *Hanks*, 330 F.R.D. at 382-83; *Smith*, 2002 WL 192565, at *5; *Sinclair*, 1998 WL 34080882, at *5.  Not only is the Plan language uniform, but Cigna's calculation of cost shares based on the CareCentrix Rate rather than the Provider Rate was also common across the class.

Any individual issues that may arise regarding damages are incidental to the common liability questions Plaintiffs have identified and do not defeat certification. While specific damage amounts may vary, "[t]he court's inquiry at the class certification stage is limited to determining whether. . . there is nevertheless a possible and reasonable means of computing damages on a class-wide basis, for example by using a formula or statistical analysis." *Spencer v. Hartford Fin. Servs. Grp.,* 256 F.R.D. 284, 305 (D. Conn. 2009). Plaintiffs' proposed method for determining damages is a simple formula that can be applied on an automated basis to claims

data to calculate the difference between what members were charged using the CareCentrix Rate and what they should have been charged using the Provider Rate. This uniform calculation is "not individualized" because "the formula for damages [is] identical for all class members." *Ward v. Dixie Nat Life Ins. Co.* 595 F.3d 164, 180 (4th Cir. 2010); *In re U.S. Foodservice Inc. Pricing Litig.*, 2011 WL 6013551, at \*15-16 (D. Conn. Nov. 29, 2011). Even if a member has unique circumstances that must be accounted for, "individualized damages determinations alone cannot preclude certification under Rule 23(b)(3)." *Roach*, 778 F.3d at 409; *Smith*, 2002 WL 192565, at \*5. Thus, any individual inquiry can be made "at [a] later stage of the litigation" and "does not itself justify the denial of certification." *Audet v. Frasier*, 332 F.R.D. 53, 74 (D. Conn. 2019) (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 671 (7th Cir. 2015))). [7]

> **b.**      **A class action is superior to thousands of individual actions.**

Rule 23(b)(3) provides the following nonexclusive factors to guide the Court's analysis of whether a class action is superior to many individual actions:

> (A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by . . . a member of the class; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). "While [the Rule] sets out four individual factors for courts to consider, manageability 'is by far, the most critical concern in determining whether a class action is a superior means of adjudication.'" *Sykes*, 780 F.3d at 82. However, courts "rarely, if ever, deny class certification solely on manageability grounds." *Haddock*, 293 F.R.D. at 287; *Petrobras*, 862 F.3d at 268. Accordingly, courts often certify classes notwithstanding the fact that it might

---

[7] To the extent Cigna argues that certification under 23(b)(3) is inappropriate due to individualized damages issues, district courts have a number of resources available to them including certifying a separate (b)(2) liability class and (b)(3) damages class or appointing a special master or magistrate to preside over individual proceedings. *Haddock v. Nationwide Fin. Servs. Inc.*, 293 F.R.D. 272, 285-86 (D. Conn. 2013).

require individual file or data review and have recognized that "the burden and cost of litigation placed on the defendant would be the same in the aggregate if class members were to proceed with the alternative approach of filing individual lawsuits." *Mahon*, 296 F.R.D. at 79; *U.S. Foodservice*, 729 F.3d at 130.

Here, losses from each individual transaction were often between a few dollars and a few hundred dollars. Even where losses were larger, litigation costs are such that individual Class Members would have little interest in pursuing their own litigation, especially for a case involving ERISA. Indeed, Plaintiffs and their counsel are unaware of any other litigation concerning this controversy. The District of Connecticut is the most efficient and pragmatic forum given that Class Members reside nationwide, and Cigna is headquartered in this District. Lastly, the relevant Plan provisions are identical for all members of the Class, and Defendant has stipulated that the Plans using that language can be identified through a combination of automatic and manual review processes. Finally, evidence concerning losses is easily manageable. Any manageability concerns that may exist are not such that individual actions are superior to a class action.

## III.    THE RICO CLASS[8]

The RICO Class claims can be established through common proof. The Second Circuit affirmed certification of a national class just like this one, where the defendant "having entered into contracts that entitled its customers to [medical benefit] pricing, is alleged to have systematically deceived them into believing that they were being afforded such pricing when, in fact, they were being overcharged." *U.S. Foodservice*, 729 F.3d at 123. That case likewise alleged a "centralized conspiracy to defraud," and the Court recognized that "fraud claims based

---

[8] The applicable arguments made in support of numerosity, commonality, typicality, adequacy, ascertainability, predominance, and superiority above, are incorporated into this RICO section by reference.

on uniform misrepresentations to all members of a class 'are appropriate subjects for class certification." *Id.* at 118–19.  Here, Cigna's misrepresentations — that member cost shares were based on Provider Rates instead of the CareCentrix Rate — were uniform and are susceptible to class-wide proof.  Cigna's *scienter* also can be established through class-wide proof, including that (1) Cigna continued its fraudulent or reckless practice of basing cost shares on the CareCentrix Rate rather than the Provider Rate, ██████████████████████████████



███████████ and (2) ██████████████████████████████████ ██████████████████████████████████████████ Ex. AH at 101:20-102:9, and disclosed ***only*** to members receiving chiropractic services that the cost share ██████ ██████████████████████████████████████ Ex. R at 293.

        Cigna's control of the CareCentrix Manager Enterprise can also be established through the common proof of the agreements and practices that Cigna put in place that required CareCentrix to misrepresent to members the cost-share amount they had to pay.  ███████████ ████████████████████████████████████████████████ ████. Ex. G at 3; Ex. AI at 35-38; Ex. AJ at 578. Causation, or reliance on this common misrepresentation, can also be established on a class-wide basis.  In the case of fraudulent billing, payment "may constitute circumstantial proof of reliance . . . ."  *U.S. Foodservice*, 729 F.3d at 119-20 (internal quotation marks omitted).[9]  Generalized proof that these fraudulent billing practices were concealed serve as further class-wide proof of reliance.  *Id.* at 120.

---

[9]  Moreover, "[u]sing the mail to execute or attempt to execute a scheme to defraud is indictable as mail fraud, and hence a predicate act of racketeering under RICO, even if no one relied on any misrepresentation."  *Bridge v. Phoenix Bond. & Indem. Co.,* 553 U.S 639, 648-49 (2008).

Finally, as discussed above, losses can be proved on a class-wide basis. Damages under RICO § 1964(c) must place the injured parties "in the same position they would have been in but for the illegal conduct." *Id*. at 122. The "key inquiry" is calculating the difference between what a member would have paid if the cost share had been based on the Provider Rate, and what the member actually paid. This amount can be calculated by applying a common formula to the claims data produced by Cigna and CareCentrix. Calculation of damages will be formulaic and performed on a class-wide basis using a common methodology. Accordingly, Plaintiffs' RICO claims present no individualized issues that preclude class certification.

Dated: March 15, 2021

Respectfully submitted,

*/s/ Robert A. Izard*
Robert A. Izard (ct01601)
Craig A. Raabe (ct04116)
Christopher M. Barrett (ct30151)
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: 860-493-6292
Facsimile:860-493-6290
rizard@ikrlaw.com
craabe@ikrlaw.com
cbarrett@ikrlaw.com

William H. Narwold (ct00133)
Mathew Jasinski, (ct27520)
MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: 860-882-1681
Facsimile: 860-882-1682
bnarwold@motleyrice.com
mjasinski@motleyrice.com

Meghan S. B. Oliver
Charlotte Loper
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: 843-216-9000
moliver@motleyrice.com
cloper@motleyrice.com