UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFFREY NEUFELD, et al., individually and on behalf of all others similarly situated, | No. 3:17-cv-1693-KAD |
| Plaintiffs, | |
| vs. | |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY, | |
| Defendant. | August 11, 2021 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

RESPONSE TO CIGNA'S "FACTUAL BACKGROUND"...........................................2

I.      ANY PURPORTED VALUE PROVIDED BY CARECENTRIX IS
        IRRELEVANT .........................................................................................................2

II.     ALL CLASS PLANS CONTAIN STANDARD TEMPLATE LANGUAGE...................4

ARGUMENT ..................................................................................................................7

I.      THERE ARE NO MATERIAL PLAN VARIATIONS THAT DEFEAT
        COMMONALITY ..................................................................................................7

      A.     "Discretionary Authority" Provisions Do Not Defeat Commonality .....................7

      B.     Cigna's Plan Variation Arguments Are Meritless. .................................................10

             1.     Cigna's "[C]harges"/"Covered Expenses" Arguments Relate to
                 Whether There Is Coverage, Not Deductible Amounts ...........................11

             2.     The "Charges" Cost Share Definition Does Not Materially Vary...........12

             3.     The "Portion" Clause .................................................................................13

      C.     There Are No Plan Terms Other Than the Uniform Language in the Class
            Definition That Affect How Deductibles Are Calculated.....................................14

      D.     Cigna's ASO Agreements are Irrelevant ...............................................................15

      E.     Cigna Is a Proper Defendant ..................................................................................16

II.     CIGNA'S ARGUMENTS REGARDING DAMAGES ARE PREMATURE.................17

      A.     Cigna Improperly Conflates Injury and Damages .................................................17

      B.     Cigna's Attempts to Setoff and Aggregate Transactions Are Improper................19

III.   THE ERISA CLASS IS CERTIFIABLE UNDER RULE 23(B)(1), (2) OR (3) .............21

    A.   The ERISA Class Should Be Certified Under Rule 23(b)(1) ...............................21

    B.   The ERISA Class Should Be Certified Under Rule 23(b)(2) ..............................23

    C.   The ERISA Class Should Be Certified Under Rule 23(b)(3) ..............................28

        1.   Plaintiffs Have Shown Classwide Injury ...................................................28

        2.   Plaintiffs More Than Pass *Comcast* ..........................................................30

        3.   There Are No Material Individualized Issues ............................................33

IV.   CIGNA'S ARGUMENTS REGARDING TYPICALITY ARE WITHOUT
MERIT .........................................................................................................................38

CONCLUSION ...........................................................................................................................40

# TABLE OF AUTHORITIES

CASES

*A.D. v. T-Mobile USA, Inc.*,
  2016 WL 3882919 (W.D. Wash. July 18, 2016) ............................................................. 21, 23

*A.R. v. Conn. State Bd. of Educ.*,
  2020 WL 2092650 (D. Conn. May 1, 2020) .............................................................. 34

*AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*,
  938 F.3d 1170 (11th Cir. 2019) .............................................................. 27

*Adams v. Anheuser–Busch Cos.*,
  2012 WL 1058961 (S.D. Ohio Mar. 28, 2012) .............................................................. 40

*Allison v. Citgo Petrol. Corp.*,
  151 F.3d 402 (5th Cir. 1998) .............................................................. 27

*Almonor v. BankAtlantic Bancorp, Inc.*,
  2009 WL 8412125 (S.D. Fla. 2009) .............................................................. 20

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) .............................................................. 21

*Audet v. Fraser*,
  332 F.R.D. 53 (D. Conn. 2019) .............................................................. 38

*Ballas v. Anthem Blue Cross Life & Health Ins. Co.*,
  2013 WL 12119569 (C.D. Cal. Apr. 29, 2013) .............................................................. 24

*Berrien v. New Raintree Resorts, Int'l, LLC*,
  276 F.R.D. 355 (N.D. Cal. 2011) .............................................................. 19

*Berry v. Wells Fargo & Co.*,
  2018 WL 9989754 (D.S.C. Oct. 9, 2018) .............................................................. 22

*Bish v. Aquarion Servs. Co.*,
  289 F. Supp. 2d 134 (D. Conn. 2003) .............................................................. 39

*Bond v. Mariott Int'l, Inc.*,
  296 F.R.D. 403 (D. Md. 2014) .............................................................. 22

*Briceno v. USI Services Group, Inc.*,
  2015 WL 5719727 (E.D.N.Y. Sept. 29. 2015) .............................................................. 19

*Butto v. Collecto Inc.*,
  290 F.R.D. 372 (E.D.N.Y. 2013) .............................................................. 39

*Caranci v. Blue Cross,*
    194 F.R.D. 27 (D.R.I. 2000) ........................................................................... 24

*Carlson v. Northrop Grumman Corp.,*
    333 F.R.D. 415 (N.D. Ill. 2019) ........................................................................ 8

*Cigna v. Amara,*
    563 U.S. 421 (2011) ............................................................................... 24, 38

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ................................................................................. 25, 26

*Coan v. Kaufman,*
    457 F.3d 250 (2d Cir. 2006) ........................................................................... 22

*Comcast Corp. v. Behrend,*
    569 U.S. 27 (2013) ........................................................................... 30, 31, 34

*Conn. Gen. Life Ins. Co. v. BioHealth Laboratories, Inc.,*
    988 F.3d 127 (2d Cir. 2021) ........................................................................... 24

*Cunningham v. Wawa, Inc.,*
    387 F. Supp. 3d 529 (E.D. Pa. 2019) .............................................................. 16

*Custom Hair Designs by Sandy v. Cent. Payment Co.,*
    984 F.3d 595 (8th Cir. 2020) .......................................................................... 18

*Daniel F. v. Blue Shield of Cal.,*
    305 F.R.D. 115 (N.D. Cal. 2014) ............................................................... 30, 34

*Des Roches v. Cal. Physicians' Servs.,*
    320 F.R.D. 486 (N.D. Cal. 2017) ............................................................... 21, 23

*Donovan v. Bierwirth,*
    754 F.2d 1049 (2d Cir. 1985) ......................................................................... 33

*Douglin v. GreatBanc Tr. Co.,*
    115 F. Supp. 3d 404 (S.D.N.Y. 2015) .............................................................. 21

*Duling v. Gristede's Operating Corp.,*
    267 F.R.D. 86 (S.D.N.Y.2010) ........................................................................ 39

*Dunnigan v. Metro. Life Ins. Co.,*
    214 F.R.D. 125 (S.D.N.Y. 2003) ..................................................................... 37

*Escalante v. Cal. Physicians,*
    309 F.R.D. 612 (C.D. Cal. 2015) ........................................................... 21, 23, 24

*Estate of Barton v. ADT Sec. Servs. Pension Plan,*
  820 F.3d 1060 (9th Cir. 2016) ............................................................. 32

*Estate of Gardner v. Cont'l Cas. Co.,*
  316 F.R.D. 57 (D. Conn. 2016) ............................................................. 39

*Fed. Ins. Co. v. Mertz,*
  2016 WL 164618 (S.D.N.Y. Jan. 12, 2106) ......................................... 33

*Franco v. Conn. Gen. Life Ins. Co.,*
  299 F.R.D. 417 (D.N.J. 2014) ............................................................... 31

*Fritcher v. Health Care Serv. Corp.,*
  301 F.3d 811 (7th Cir. 2002) ............................................................... 15

*Frommert v. Becker,*
  153 F. Supp. 3d 599 (W.D.N.Y. 2016) ................................................. 25

*Hall v. LHACO, Inc.,*
  140 F.3d 1190 (8th Cir. 1998) ............................................................. 16

*Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ.,*
  819 F.3d 42 (2d Cir. 2016) ..................................................................... 7

*Hecht v. United Collection Bureau, Inc.,*
  691 F.3d 218 (2d Cir. 2012) ................................................................. 26

*Hendricks v. Aetna Life. Ins. Co.,*
  2021 WL 2497950 (C.D. Cal. June 11, 2021) ..................................... 21

*Herman v. SeaWorld Parks & Entm't, Inc.,*
  320 F.R.D 271 (M.D. Fla. 2017) ........................................................... 19

*Hughes Comm. Galaxy, Inc. v. United States,*
  271 F.3d 1060 (Fed. Cir. 2001) ........................................................... 36

*In re Aetna UCR Litig.,*
  2018 WL 10419839 (D.N.J. 2018) ....................................................... 27

*In re Air Cargo Shipping Servs. Antitrust Litig.,*
  2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ................................. 18, 20

*In re Barrick Gold Sec. Litig.,*
  314 F.R.D. 91 (S.D.N.Y. 2016) ............................................................. 31

*In re Delta/AirTran Baggage Fee Antitrust Litig.,*
  317 F.R.D. 675 (N.D. Ga. 2016) ..................................................... 19, 37

*In re Elec. Books Antitrust Litig.*,
  2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) ....................................................... 19

*In re Global Brokerage, Inc.*,
  2021 WL 1160056 (S.D.N.Y. Mar. 18, 2021) ....................................................... 30

*In re Glumetza Antitrust Litig.*,
  2020 WL 3498067 (N.D. Cal. June 29, 2020) ....................................................... 21

*In re Literary Works in Electronic Databases Copyright Litig.*,
  654 F.3d 242 (2d Cir. 2011) ................................................................................. 20

*In re Nifedipine Antitrust Litig.*,
  246 F.R.D. 365 (D.D.C. 2007) .............................................................................. 27

*In re Petrobras Sec. Litig.*,
  862 F.3d 250 (2d Cir. 2017) ................................................................................. 36

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  292 F. Supp. 3d 14 (D.D.C. 2017) ........................................................................ 19

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
  2017 WL 4621777 (D. Mass. Oct. 16, 2017) ....................................................... 27

*In re U.S. Foodservice Inc. Pricing Litig.*,
  2011 WL 6013551 (D. Conn. Nov. 29, 2011) ....................................................... 34

*In re Wellbutrin SR Direct Purchaser Antitrust Litig.*,
  2008 WL 1946848 (E.D. Pa. May 2, 2008) .......................................................... 21

*Indergit v. Rite Aid Corp.*,
  293 F.R.D. 632 (S.D.N.Y. 2013) .......................................................................... 14

*Jacob v. Duane Reade, Inc.*,
  2016 WL 3221148 (S.D.N.Y. June 9, 2016) ......................................................... 14

*Kelly v. Honeywell Int'l, Inc.*,
  233 F. Supp. 3d 302 (D. Conn. 2017) ................................................................... 37

*Kennedy v. United Healthcare of Ohio, Inc.*,
  206 F.R.D. 191 (S.D. Ohio 2002) .............................................................. 22, 23, 24

*Kohen v. Pac. Inv. Mgmt. Co.*,
  571 F.3d 672 (7th Cir. 2009) ................................................................................. 28

*Krauss v. Oxford Health Plans, Inc.*,
  517 F.3d 614 (2d Cir. 2008) ................................................................................. 10

*Lapin v. Goldman Sachs & Co.,*
    254 F.R.D. 168 (S.D.N.Y.2008) ................................................................. 39

*LaRue v. DeWolff, Boberg & Assocs., Inc.,*
    552 U.S. 248 (2008) ................................................................................... 22

*Lassen v. Hoyt Livery, Inc.,*
    2016 WL 7165716 (D. Conn. Dec. 8, 2016) ............................................. 33

*Laumann v. National Hockey League,*
    105 F. Supp. 3d 384 (S.D.N.Y. 2015) ....................................................... 21

*Laurenzano v. Blue Cross & Blue Shield,*
    134 F. Supp. 2d 189 (D. Mass. 2001) ....................................................... 40

*Leber v. Citigroup 401(k) Plan Investment Committee,*
    323 F.R.D. 145 (S.D.N.Y. 2017) ........................................................ 22, 23

*Lipstein v. UnitedHealth Group,*
    296 F.R.D. 279 (D.N.J. 2013) ..................................................................... 8

*Local 1522 of Council 4 v. Bridgeport Health Care Ctr., Inc.,*
    2018 WL 1419792 (D. Conn. Mar. 21, 2018) .......................................... 22

*Long Island Neurological Assocs., P.C. v. Highmark Blue Shield,*
    375 F. Supp. 3d 203 (E.D.N.Y. 2019) ...................................................... 15

*Macedonia Church v. Lancaster Hotel Ltd. P'ship,*
    270 F.R.D. 107 (D. Conn. 2010) ............................................................... 34

*Mahon v. Chicago Title Ins. Co.,*
    296 F.R.D. 63 (D. Conn. 2013) ......................................................... 10, 36

*McCutcheon v. Colgate-Palmolive Co.,*
    2020 WL 3893303 (S.D.N.Y. July 10, 2020) ............................................. 9

*McNair v. Synapse Grp., Inc.,*
    672 F.3d 213 (3d Cir. 2012) ...................................................................... 26

*Med. Soc'y of N.Y. v. UnitedHealth Group,*
    332 F.R.D. 138 (S.D.N.Y. 2019) ................................................... 21, 23, 35

*Meidl v. Aetna,*
    2017 WL 1831916 (D. Conn. May 4, 2017) ..................... 18, 21, 22, 24, 26, 27, 28

*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.,*
    246 F.R.D. 293 (D.D.C. 2007) .................................................................. 21

*Messner v. Northshore Univ. HealthSystem¸*
  669 F.3d 802 (7th Cir. 2012)......................................................................... 18

*Munro v. Univ. of S. Cal.,*
  2019 WL 7842551 (C.D. Cal. Dec. 20, 2019) ........................................... 19

*N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.,*
  798 F.3d 125 (2d Cir. 2015)......................................................................... 16

*Negron v. Cigna Health & Life Ins. Co.,*
  2021 WL 2010788 (D. Conn. May 20, 2021) ............................................ 1, 10, 14

*Noah U. v. Trib. Co. Med. Plan,*
  138 F. Supp. 3d 1134 (C.D. Cal. 2015)................................................ 15, 16

*O'Shea v. Littleton,*
  414 U.S. 488 (1974) .................................................................................... 26

*Owens v. Metro. Life Ins. Co.,*
  323 F.R.D. 411 (N.D. Ga. 2017) ............................................................... 17

*Owino v. CoreCivic, Inc.,*
  2021 WL 120874 (N.D. Cal. Jan. 13, 2021) ............................................. 30

*Peck v. Aetna Life Ins. Co.,*
  2005 WL 1683491 (D. Conn. July 19, 2005).............................................. 39

*Peters v. Aetna Inc.,*
  2 F.4th 199 (4th Cir. 2021)......................... 1, 2, 3, 9, 17, 20, 24, 29, 30, 33, 34, 37, 38

*Peters v. Aetna, Inc.,*
  2016 WL 4547151 (W.D.N.C. Aug. 31, 2016) ......................................... 35

*Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Michigan,*
  654 F.3d 618 (6th Cir. 2011)....................................................................... 17

*Richards v. FleetBoston Fin. Corp.,*
  235 F.R.D. 165 (D. Conn. 2006).................................................................. 18

*Roach v. T.L. Cannon Corp.,*
  2017 WL 11529679 (S.D.N.Y. Sept. 27, 2017) ......................................... 18, 31, 34

*Salovaara v. Eckert,*
  222 F.3d 19 (2d Cir. 2000).......................................................................... 33

*Schachner v. Blue Cross & Blue Shield of Ohio,*
  77 F.3d 889 (6th Cir. 1996)......................................................................... 16

*Schear v. Food Scope Am., Inc.*,
  297 F.R.D. 114 (S.D.N.Y. 2014)................................................................. 18, 34

*Scott v. Chipotle Mexican Grill, Inc.*,
  954 F.3d 502 (2d Cir. 2020) ........................................................................ 14

*Sheet Metal Workers Local No 20 Welfare & Benefit Fund v. CVS Pharm. Inc.*,
  2021 WL 1986564 (D.R.I. May 11, 2021) ................................................... 37

*Smith v. United HealthCare Servs., Inc.*,
  2002 WL 192565 (D. Minn. Feb. 5, 2002) .................................................. 24

*Spano v. Boeing Co.*,
  633 F.3d 574 (7th Cir.2011)................................................................... 22, 23

*Spencer v. Hartford Fin. Servs. Grp., Inc.*,
  256 F.R.D. 284 (D. Conn. 2009) ................................................................. 34

*Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc.*,
  813 F.3d 420 (1st Cir. 2016) ....................................................................... 15

*Sun Life Assur. Co. of Canada v. Diaz*,
  2015 WL 1826088 (D. Conn. Apr. 22, 2015) .............................................. 24

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015) .......................................................................... 31

*Thomas v. SmithKline Beecham Corp.*,
  201 F.R.D. 386 (E.D. Pa. 2001) .................................................................. 40

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
  445 F.3d 311 (4th Cir. 2006)....................................................................... 26

*Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) .................................................................... 18

*Tyll v. Stanley Black & Decker Life Ins. Prog.*,
  403 F. Supp. 3d 27 (D. Conn. 2019) ........................................................... 16

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ................................................................................ 18

*Valley Drug Co. v. Geneva Pharm., Inc.*,
  350 F.3d 1181 (11th Cir. 2003).............................................................. 20, 21

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996) ............................................................................... 16, 17

*Vetromile v. JPI Partners, LLC*,
   706 F. Supp. 2d 442 (S.D.N.Y. 2010) ................................................................. 9

*Vogt v. State Farm Life Ins. Co*.,
   2018 WL 1955425 (W.D. Mo. Apr. 24, 2018), aff'd, 963 F.3d 753 (8th Cir. 2020) ............... 24

*Wit v. United Behav. Health*,
   317 F.R.D. 106 (N.D. Cal. 2016) ........................................... 17, 21, 22, 23, 24, 27

*Z.D. ex rel J.D. v. Grp. Health Co-Op*,
   2012 WL 5033422 (W.D. Wash. Oct. 17, 2012) ........................................................ 24

*Z.D. ex rel. J.D. v. Grp. Health Co-op*.,
   2012 WL 1977962 (W.D. Wash. June 1, 2012) ................................................... 22, 23

## STATUTES

ERISA § 104(b), 29 U.S.C. § 1024(b) ................................................................. 15

ERISA § 502(a)(1), 29 U.S.C. § 1132(a)(1) ................................................... 22, 23

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ........................................... 16, 17

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) ................................................... 22, 23

 ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) ........................................... 17, 22, 23, 24

## OTHER AUTHORITIES

Federal Practice & Procedure § 3531.4 (3d. ed. 2021 update) .................................. 20

Newburg on Class Actions § 2:3 (5th Ed.) ......................................................... 40

## RULES

Fed. R. Civ. P. 23(a)(2) ........................................................................ 27

Fed. R. Civ. P. 23(b) ........................................................................... 21

Fed. R. Civ. P. 23(b)(1) ............................................................ 18, 21, 22, 23, 28

Fed. R. Civ. P. 23(b)(1)(A) ..................................................................... 21

Fed. R. Civ. P. 23(b)(2) ................................................ 18, 21, 23, 24, 25, 26, 27, 28

Fed. R. Civ. P. 23(b)(3) ................................................... 18, 21, 27, 28, 36, 38

Fed. R. Civ. P. 30(b)(6) ........................................................................ 8

**REGULATIONS**

29 C.F.R. § 2560.503-1(b)(3) ........................................................................ 7

29 C.F.R. § 2560.503-1(b)(5) ........................................................................ 8

29 C.F.R. § 2560.503-1(g)(1)(ii) .................................................................... 8

29 C.F.R. § 2560.503-1(g)(1)(iii) ................................................................... 7

29 C.F.R. § 2560.503-1(l)(1) .......................................................................... 7

29 C.F.R. § 2590.715-2719(b)(2)(F) ............................................................. 7

# INTRODUCTION[1]

This case concerns Cigna's excessive and improper deductible cost-share calculations for medically necessary products and services provided by providers in the CareCentrix network. Contrary to Cigna's assertion, Plaintiffs do **not** challenge "Cigna's use of a third party, CareCentrix," to provide services through its subcontracted providers. Cigna's Mot. in Opp. to Class Certification [ECF 183] ("Opp.") at 1. Instead, Plaintiffs challenge only how much Cigna charged its members when CareCentrix was involved. In particular, they challenge Cigna's uniform practice of secretly overcharging members on their deductible payments in violation of the clear Plan language in order to pay "[CareCentrix]'s fees in the guise of medical expenses." *Peters v. Aetna Inc.,* 2 F.4th 199, 224 (4th Cir. 2021).

Cigna made *Peters*, a single district court opinion from the Western District of North Carolina, the linchpin of its opposition. On June 22, 2021, the Fourth Circuit Court of Appeals unanimously reversed the grant of summary judgment and denial of class certification. *Id.* at 240, 245. With that defective linchpin gone, Cigna's arguments fail across the board.

Cigna also relies heavily on *Negron v. Cigna Health & Life Ins. Co.*, 2021 WL 2010788 (D. Conn. May 20, 2021). But *Negron* concerned prescription-drug-benefit provisions rather than the medical-benefit provisions at issue in this case, and the provisions at issue in *Negron* impacted the cost-share calculations for individual purchases. Here, by contrast, there are no language variations that affect the calculation of a member's deductible charge for individual transactions. As to the Plan language issues that Cigna has raised in this case, Plaintiffs have amended their proposed class definition as set forth in **Appendix A** to resolve those issues by, for example,

---

[1] Unless otherwise indicated, "Ex. __" refers to exhibits to the Declaration of Seth Klein filed with this Reply and all internal quotation marks and citations are omitted.

limiting the claims in this case to deductible overcharges. Accordingly, there are no plan language variances that defeat certification of the proposed class.[2]

## RESPONSE TO CIGNA'S "FACTUAL BACKGROUND"

### I.    ANY PURPORTED VALUE PROVIDED BY CARECENTRIX IS IRRELEVANT

Cigna relies extensively on the district court opinion in *Peters* throughout its Opposition, arguing that CareCentrix provided overall value to Plan members and that the district court in *Peters* "analyzed very similar claims arising out of another payor's (Aetna) use of a vendor (Optum) for chiropractors and physical therapists." Opp. at 2. As Aetna did with Optum, Cigna contracted with CareCentrix to provide a network of health care providers. *Compare Peters,* 2 F.4th at 210, *with* Opp. at 7. As Optum did in *Peters*, CareCentrix "bundled" its "administrative fee" for network management, credentialing, utilization management, care coordination and other administrative services into the "cost of the health care provider's services" and forwarded the claim to Cigna for approval. *Peters*, 2 F.4th at 210. As in *Peters*, Plan participants' cost-shares were based on this marked-up fee, rather than the "cost of the health care provider's services." *Id.* And just like in the Aetna–Optum relationship, Cigna sought to conceal CareCentrix's markups for administrative services from the members because "it does not show or give the feeling of a value-add of having insurance." Decl. of Meghan S. B. Oliver, Mar. 15, 2021 [ECF 157] ("Oliver Decl."), Ex. Y at 373; Oliver Decl., Ex. J at 187 (recognizing that there was "increased dissatisfaction over the non-transparency, and increasing Amazon effect"); *see also Peters*, 2 F.4th at 211 (members "[we]re feeling they are absorbing costs, which in turn makes most of them

---

[2] Plaintiffs are withdrawing their request to certify a RICO class. In addition, Plaintiffs Wood, Burns, and Ninivaggi are no longer seek appointment as class representatives and will pursue only their individual claims. All other Plaintiffs continue to seek to represent the proposed ERISA class.

unhappy."). Under these facts, the *Peters* district court granted summary judgment and denied class certification.

The Fourth Circuit unanimously reversed the district court opinion, effectively rejecting the core of Cigna's arguments.  For example, Cigna argues that in determining injury and damages Plaintiffs must account for the global economic benefit that CareCentrix supposedly provided through "value-add" services. In a direct rejection of this contention, *Peters* specifically concluded that, even if true, it was error for the district court to conduct such an economic analysis. *See Peters*, 2 F.4th at 222-23. Indeed, whether CareCentrix did or did not provide a global benefit to Plan sponsors and their employees is irrelevant to whether Plaintiffs and other class members were charged excessive deductibles in violation of their Plans to pay for that alleged benefit. Ex. AO at 483, 486 ███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████; Ex. AP at 296 ████████████████████████████

███████████████████████████████████[3]

Importantly, none of the purported "value-add" services provided by CareCentrix were medically necessary and, therefore, could not have been the basis of a deductible payment under the Plan language. ██████████████████████████████████████████████ Ex. AT at 21:19-22:23, 144:17-146:16; *see also e.g.*, Ex. AU; Ex. AT at 149:12-150:9; Ex. AV; Ex. AT at 154:17-158:3; Ex. BK at 594. Including these administrative costs in customer deductibles

---

[3] Cigna members and their employers viewed CareCentrix's role as anything but a "value-add." *See, e.g.*, Ex. AQ at 346 ██████████████████████████████████████████████████████████; Ex. AR at 035 ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████; Ex. AS at 565-66 ██████████████████ █████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████

was contrary to members' uniform Plan requirement that deductible amounts be limited to a portion of Covered Expenses, which include only charges for medically necessary products and services, not administrative services. ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████ Oliver Decl., Ex. G at slide 4; Oliver Decl., Ex. AM at 554; Ex. AW at 33:6-36:9, 67:6-10. Although Cigna was free to pay CareCentrix's administrative costs based on whatever terms it deemed appropriate, it was not permitted to recoup those costs through member deductibles in violation of the Plans.

## II.    ALL CLASS PLANS CONTAIN STANDARD TEMPLATE LANGUAGE

This case is based on standard templates and boilerplate language provisions. With over 26,000 clients and millions of members, Cigna provided health insurance or administrative services on a standardized rather than bespoke basis and offered a selection of standard benefit options. *See e.g.*, Ex. AY at 007 ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████. Any plan sponsor wishing to offer members a benefit other than ████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████ *Id.*[4]

██████████████████████████████████████████████████████████████████████

████████████ ██████████████████████████████ *See* Ex. AZ at 35:4-36:7, 38:5-19; 40:7-20. For

_____

[4] █████████████████████████████████████████████████████████████████████████Ex. AY at 028. ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████ *See* Ex. BA at 305 ████████████████████████████████████████
████████████████████████████

each benefit, Cigna maintained boilerplate language provisions for each standard benefit option as well as for frequently chosen "nonstandard" (but still common) benefit options (as opposed to genuinely rare and unique outliers that are specifically negotiated with an individual client and for which no form language exists).

For self-funded (*i.e.*, administrative services only or ASO) plans, ██████████████ ████████████████████████████████████████████████████████████████████ Ex. BB at 4; *see also* Ex. BC ████████████████████████████████████████████ ███████. For fully insured plans, ███████████████████████████████████████ ████████████████████████████████████████████████████████████████████ Ex. BB at 3; Ex. BD ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ █████████████████████████ After benefits are selected and included in the Plans, ████████ ████████████████████████████ Ex. BB at 3; Ex. BJ at 17:3-17, 25:10-26:8.

The standard and "nonstandard" Plan terms are also set out in in templates. For example, there are fifteen source pages of templates for the "charges" definition. *See* **Appendix B** hereto. Four of those templates use the standard language,[5] which is the language in the class definition. Ex BL at p. 1-4; *see also* Ex. BC at 632 (sample plan includes the class definition of "charges"). Two of the templates ████████████████████████████████████████████████. One of these templates separately includes the class language. Ex. BL at p. 5. Plans using this template are in the class. ████████████████████████████████████████████████████████ *Id.* at p. 6. █████████████████████████████████████████████

---

[5] Some of these templates refer to Cigna using "Cigna," some using "CG," and others with "CIGNA." Plaintiffs have included all of these templates and treat them interchangeably.

Four of the remaining nine templates ███████████████ *Id.* at 7-10. Because ███████

████████████████████████████████████████████████████████████

██████████████████████████████ █████████████████████████████

████████████████████████████

Four of the remaining five templates include language ███████████████████

████████████████████████████████████████████████████ *See*

Pls.' Mem. of Law in Supp. of Mot. for Class Certification. [ECF 155] ("Opening Memo") at 8;

Ex. BL at 11-14. Plaintiffs' proposed class ends on December 31, 2019 ██████████████

████████████████████████████.

The final template is ████████████████████████████████████████████

███████ Ex. BL at 15. ███████████████████████████████████████████

███████████ Plans using this language are not included in the proposed class definition.

Like the "charges" templates, the master schedule templates also include standard and common nonstandard benefit options and Plan language provisions. *See infra* at Part I. B. (discussing amending the class definition to account for varying schedule definitions of "coinsurance"). Therefore, it is simple to identify all or the vast majority of material and relevant variations through template analysis. Any variations not included in the templates would be "one off" and would have been subject to ███████████████████████████████████████

███████ and would have been rare. *See e.g.*, Ex. BE at 594 ███████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ These

outliers can be identified through ███████████████

Consistent with the standardized nature of its business, Cigna ████████████

████████████████████████████████████████████████████████████████

████████████████████████████ Oliver Decl., Ex. G; Opening Memo at 4.

Regardless of the Plan the member had (*e.g.*, high-deductible or not, 20% coinsurance or 10%

coinsurance), or the total amount of a member's deductible, Cigna's claims platforms always

calculated the deductible amount using the Cigna-CareCentrix rate.

## ARGUMENT

## I.   THERE ARE NO MATERIAL PLAN VARIATIONS THAT DEFEAT COMMONALITY

### A.   "Discretionary Authority" Provisions Do Not Defeat Commonality

Asserting that it had the discretion to interpret some Plans but not others, Cigna insists that

the Court must engage in an "individualized inquiry into the terms of the plan" to determine "the

standard of review for Cigna's plan interpretation." Opp. at 18. This argument fails for at least four

reasons:

*First*, Cigna ignores Plaintiffs' common, class-wide claim that it failed to establish and

maintain reasonable claim procedures. Fourth Am. Compl. [ECF No. 130] ("FAC") at ¶¶ 94-101.

The failure to establish "procedures in full conformity" with 29 C.F.R. § 2560.503-1(l)(1) means

that Plaintiffs are deemed to have exhausted and are entitled to *de novo* review. *Halo v. Yale Health*

*Plan, Dir. of Benefits & Recs. Yale Univ.*, 819 F.3d 42, 45 (2d Cir. 2016); *see also* 29 C.F.R. §

2590.715-2719(b)(2)(i)(F). In particular, by keeping the Provider Rate secret from class members,

Cigna unduly inhibited or hampered the initiation or processing of claims in violation of 29 C.F.R.

§ 2560.503-1(b)(3), and failed to disclose material information in violation of 29 C.F.R. §

2560.503-1(g)(1)(iii). Moreover, Cigna failed to identify the specific Plan provisions on which

determinations were based in violation of subsection (g)(1)(ii).[6] Finally, Cigna's inability to identify the plans that confer discretion, *see* Opp. at 18, only serves to strengthen its lack of discretion. *See* 29 C.F.R. § 2560.503-1(b)(5) (requiring "administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents").

*Second*, whether Cigna had discretion is irrelevant because, under any standard of review, Cigna may not interpret uniform terms in different ways. *See Carlson v. Northrop Grumman Corp.*, 333 F.R.D. 415, 421 (N.D. Ill. 2019) ("Interpretation of the same plan term in different ways is 'paradigmatically arbitrary and capricious'"); *see also* 29 C.F.R. § 2560.503-1(b)(5) (requiring "administrative processes and safeguards designed to ensure and to verify . . . that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants"). Because the meaning of "charges" cannot vary from one participant to the next, Cigna is wrong that "the 'unique' circumstances for each member will influence the court's determination of the reasonableness of Cigna's interpretation of 'charges' to mean the CareCentrix rate." Opp. at 44. Cigna quotes language from *Lipstein v. UnitedHealth Grp.*, 296 F.R.D. 279 (D.N.J. 2013), about a "kaleidoscope of 'yeses' and 'nos' across the class," Opp. at 19 (internal quotation marks omitted), but the standard of review mattered in *Lipstein* because—unlike the uniform "charges" definition here—some plans in that case were *silent* on the matter at hand. *See Lipstein*, 296 F.R.D. at 294.

---

[6] For example, in its interrogatory responses, Cigna identified particular plan provisions that should properly be considered in calculating benefits under each Plaintiff's plan. See Ex. BN at 6-11. Cigna's Rule 30(b)(6) witness concerning claims and appeals procedures confirmed that ███████████████████████████████████████████ ████████████████████████████████ Ex. BO at 114:12-118:23. Yet in Cigna's letter to Plaintiff Terry denying his benefit appeal, Cigna did not identify those—or any—plan terms as the basis for the decision. See, e.g., Oliver Decl., Ex. K at 037. And Cigna never told Plaintiff Jacques the provisions on which the denial of his appeal were based, as he never received a response to his appeal at all. FAC at ¶ 147. Accordingly, Cigna's appeal processors failed to identify the proper provisions upon which the appeals should have been determined.

***Third***, "unambiguous language leaves no room for the exercise of discretion." *McCutcheon v. Colgate-Palmolive Co.*, 2020 WL 3893303, at *9 (S.D.N.Y. July 10, 2020). That the parties have made conflicting arguments about whether CareCentrix was a provider does not create ambiguity. *Vetromile v. JPI Partners, LLC*, 706 F. Supp. 2d 442, 447-48 (S.D.N.Y. 2010) ("Language whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation."). Here, CareCentrix was not a provider of the medically necessary products and services at issue and, therefore, its markups for administrative services cannot be the basis of a deductible charge.

Cigna's litigation position that CareCentrix was a "provider" conflicts with ordinary usage and is belied by the evidence. The American Medical Association filed an amicus brief in *Peters*, explaining that "'[]within the health care industry, a 'provider' is one who performs a service (such as a physician) or who maintains a health care facility (such as a hospital)… Mere contracting with those who perform services or maintain facilities is not the provision of healthcare, and companies, such as Optum (a PBM managing a network of pharmacies), who maintain these contracts are not deemed the provider of the service (even though they may provide the network.)'" *Peters,* 2 F.4th at 234; Ex. BK at 596-97 ███████████████

████████████████████████████████████████

█████████████████████████

Moreover, Cigna's argument removes "indirectly" from the key Plan language that limits deductible charges to the Provider Rate "when the provider has contracted directly ***or indirectly*** with Cigna for a different amount." Here, CareCentrix established a network of approximately ██████████████████████████████ Ex. AW at 64:25-65:18. As Cigna's own expert admitted, ███████████████████████████████████████████

██████████████████████ *See* Ex. AX at 17:8-20. Cigna's argument that CareCentrix, ████

██████████████████████ is the "provider" under the Plans is directly contrary to how the

CareCentrix network functioned. Because Cigna's interpretation of the Plans is not logical or

reasonable, whether it has the right to exercise discretion is irrelevant.

*Fourth*, even if Plaintiffs must conduct a plan-by-plan review to categorize plans by their

standard of review, that exercise does not defeat class certification. Although "a plan may confer

discretion in different ways," Opp. at 18, a reservation of discretion must be clear. *Krauss v. Oxford

Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008). Thus, the reservation will be immediately

apparent from the face of the plan. "While this issue may involve a file-by-file review, it will not

require a file-by-file trial" and does not defeat certification. *Mahon v. Chicago Title Ins. Co.*, 296

F.R.D. 63, 76 (D. Conn. 2013).

### B.     Cigna's Plan Variation Arguments Are Meritless.

The Plan language "variations" that Cigna argues impact cost-share calculation can be

grouped into two categories: (1) irrelevant provisions that do not vary or contradict the meaning

of the class language; and (2) variations in Cigna's boilerplate templates that Plaintiffs now have

excluded from the class definition.  None of these precludes class certification.

As an initial matter, Cigna's heavy reliance on this Court's decision in *Negron* is

misplaced. Not only did *Negron* involve entirely distinct coverage and cost share plan provisions,

*compare Negron*, 2021 WL 2010788, at *1-3, *13-21 *with* Appendix A (class definition) attached

hereto, Judge Meyer identified variations in the plans that could have affected the calculation of a

member's cost-share for individual purchases of prescription drugs. Here, there are **no** such

variations for the amended proposed class. Because *Negron* addressed wholly different plan

benefits and terms and there are no plan variations that affect the calculation of a member's

deductible charge, it is not relevant here.

With regard to the Plan variations that Cigna has raised in this case, Plaintiffs have analyzed Cigna's source pages and master schedules to identify variations that exist in the templates as alternative standard or common nonstandard language options. Plaintiffs have amended their class definition to account for any variations, regardless of whether Cigna identified those variations. For example, the templates include a variation of the copayment definition also identified by Cigna that ties copayments to "services received" rather than "covered services." Opp. at 25. Plaintiffs have excluded this potential variation by amending the proposed class definition to exclude copayment transactions.  To further narrow and simplify the case, and to address potential variations included in the templates and identified by Cigna, Plaintiffs have also amended the proposed class definition to exclude (1) coinsurance transactions, (2) plans adjudicated on the Facets, Diamond, and Power MHS platforms, and (3) claims that were subject to coordination of benefits under specific language that Cigna began adding to plans in 2017.

## 1. Cigna's "[C]harges"/"Covered Expenses" Arguments Relate to Whether There Is Coverage, Not Deductible Amounts

None of the "variations" that Cigna identifies in the "Covered Expenses" section of the Plans (Opp. at 20) are relevant. These provisions concern which charges are covered under the Plans and which are not. But Plaintiffs do not challenge Cigna's coverage decisions. Instead, they challenge how much deductible they were required to pay for the charges that Cigna determined were covered. Cigna's cited clauses concern which charges are covered, while the class definition language concerns "how much" of these charges members will pay. These so-called "variations" do not matter.

Substituting the Plan definition for the word "charges" in Cigna's snippets proves the point. For example, Covered Expenses for DME are "[actual billed charges; except when the provider has contracted directly or indirectly with Cigna for a different amount] made for purchase or rental

of Durable Medical Equipment that is ordered or prescribed by a Physician and provided by a vendor approved by Cigna for use outside a Hospital or Other Health Care Facility." Opp. at 21 (quoting Decl. of Warren Haskel, June 7, 2021 [ECF 181-1] ("Haskel Decl."), Ex. 20 at 660). Whether the equipment is or is not supplied by a vendor approved by Cigna changes only whether the equipment will be covered, not how much a member will pay for it. So, for example, the various DME coverage provisions Cigna cites explain only that if Plaintiff Neufeld purchased a CPAP machine on Amazon, rather than through aa vendor approved by Cigna,[7] Cigna would cover none of those "charges." Those provisions say nothing about how much Plaintiff Neufeld would pay for a CPAP machine obtained through a CareCentrix network provider. Instead, he must look to the "charges" definition and the other language of the class definition.

### 2.    The "Charges" Cost Share Definition Does Not Materially Vary

Cigna points to the "Allowable Expense" definition in the Coordination of Benefits section of Plaintiff Terry's plan and the history of the New Jersey Department of Insurance ("NJ DOBI") inquiry as additional fatal variations (Opp. at 23-24), but they also are irrelevant.

The Allowable Expense provision is language that Cigna began adding to Plans in 2017. It is a definition in the coordination of benefits section of the Plans that *only* "applies if you or any one of your Dependents is covered under more than one plan." Haskel Decl, Ex. 33 at 560. Accordingly, it *only* applies to claims where a member has secondary coverage either through Cigna or another insurer. *Id.* ("For the purposes of this section, the following terms have the meanings set forth below."). Members whose plans had this language and who had secondary coverage are excluded from the proposed amended class definition, so this language is irrelevant.

---

[7] ████████████████████████████████████████████████████████████████. Ex. BF at 58:8-16.

Cigna contends that the New Jersey inquiry requires a "state-specific analysis" of charges, while also arguing that "the two regulatory inquiries are [] irrelevant to whether CareCentrix is a provider under the definition in Cigna's plans." Opp. at 15-16, 24. Cigna reads too much into NJ DOBI's rejection of Cigna's attempt to change the "charges" language for all of its national ancillary relationships. Opp. at 23. NJ DOBI investigated Cigna's billing practices solely for chiropractic claims through American Specialty Health. Because the investigation did not include CareCentrix, NJ DOBI had no way of knowing how CareCentrix claims were processed, or whether it was in accordance with plan terms. NJ DOBI required changes consistent with the scope of its inquiry and nothing more. Indeed, Cigna's attempt to change the language in New Jersey for all ancillary relationships underscores that Cigna was aware (even if NJ DOBI was not) of inconsistencies between its plan language and its calculation of benefits for CareCentrix claims, but did nothing to remedy it.

### 3.     The "Portion" Clause

Most of the so-called variations that Cigna points to in relation to the "Portion" clause (Opp. at 25) pertain to definitions of copayments and coinsurance. Plaintiffs have excluded copayment and coinsurance transactions from their proposed amended class definition and, thus, those variations are irrelevant.

Cigna does not argue that there are fatal differences among the definitions of a deductible payment, nor can it. Throughout the boilerplate templates, deductibles are uniformly referred to as ███████████████████████████████████ during the class period. *See, e.g.*, Ex. BG at 175 (2016 Master Schedule Template); Ex. BH at 577 (2017 Master Schedule Template).

A single one of the bullets on page 25 of Cigna's Opposition discusses the definition of "Deductible." Cigna's only argument is that because the definition in Plaintiff Neufeld's Plan does

not include either the term "portion" or "Covered Expenses," neither term applies to deductibles under Neufeld's plan. This cramped reading ignores the language at the start of "The Schedule" that specifies, "[Y]ou and your Dependents may be required to pay a portion of the Covered Expenses for services and supplies. That portion is the Copayment, Deductible or Coinsurance."[8] Haskel Decl., Ex. 20 at 639.

### C.   There Are No Plan Terms Other Than the Uniform Language in the Class Definition That Affect How Deductibles Are Calculated

Relying on *Negron*, Cigna argues that certain plan terms vary how deductibles must be calculated and therefore preclude class certification. Opp. at 28. The key difference between these provisions and the plan terms identified in *Negron* is that these deductible provisions only impact how long an individual remains in the deductible phase before shifting to coinsurance or copayments. They have nothing to do with how the amount of the deductible due on individual transactions is calculated. *Negron*, 2021 WL 2010788, at *15, *20 (identifying provisions that required a minimum payment amount for a transaction or imposed a mandatory penalty for purchasing a drug at retail). Whether Plaintiff Neufeld's plan-year deductible was $500 or $1,000 has no bearing on whether he was entitled to pay the CareCentrix Rate of $25.68 or the $7.50 Provider Rate. All of Cigna's so-called variations affect the amount of the plan-year deductible. Cigna has identified no provisions that vary how an individual deductible transaction for DME or home health should be calculated, and Plaintiffs have not discovered any through their review of

---

[8] The language following "[t]hat portion is the" specifies the elected cost-share type for the Plan. ███████ ██████████████████████████████████████████████ *See* Ex. BM at 063. Cigna identifies one plan that has the class-definition language and also states "[t]hat portion is the Coinsurance." Opp. at 24; Haskel Decl., Ex. 35. This is not one of the standard template options, and is therefore an outlier that would have been subject to additional approvals by ████████████████████. Because this plan is an outlier, any interpretation of the language would affect few plans and would not justify denial of class certification. *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 644 (S.D.N.Y. 2013), *abrogated on other grounds* by *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502 (2d Cir. 2020) ("Of course, in any group there will always be outliers."); *Jacob v. Duane Reade, Inc.*, 2016 WL 3221148, at *4 (S.D.N.Y. June 9, 2016).

the boilerplate templates. To the extent Cigna is arguing that these provisions are relevant to the calculation of an individual's aggregate damages, that issue also does not defeat certification for the reasons explained in Argument Part II.B below.

      **D.**    **Cigna's ASO Agreements are Irrelevant**

Insisting that some of its ASO agreements with plan sponsors support "Cigna's interpretation of the 'charges' definition to mean the CareCentrix Rate," Cigna argues that the Court will need to engage in an individualized inquiry into the terms of these agreements. Opp. at 29. But ASO agreements cannot vary Plan terms. *See Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc.*, 813 F.3d 420, 429 (1st Cir. 2016); *Fritcher v. Health Care Serv. Corp*., 301 F.3d 811, 817 (7th Cir. 2002); *accord Long Island Neurological Assocs., P.C. v. Highmark Blue Shield*, 375 F. Supp. 3d 203, 207 (E.D.N.Y. 2019). Moreover, as set forth above, interpreting identical Plan terms differently from one member to the next is arbitrary and capricious. Additionally, ERISA requires that Summary Plan Descriptions be provided to participants. 29 U.S.C. § 1024(b). Here, in contrast, the ASO agreements are marked confidential. Cigna cannot use documents that participants cannot even see to determine participants' benefits.

Cigna also is incorrect that benefit determinations may "be directed or governed by ASO agreements." Opp. at 29-30. Indeed, consistent with black letter ERISA law, the two Plan documents cited by Cigna confirm that they govern, not the ASO agreements. *See* Haskel Decl., Ex. 39 at 010 ("If there is a difference between this Plan and other plan documents that describe the Plan, this document will govern"); Haskel Decl., Ex. 56 at 904 ("the specific provision and language of these documents will govern in every respect and instance.").

*Noah U. v. Trib. Co. Med. Plan*, 138 F. Supp. 3d 1134, 1145-46 (C.D. Cal. 2015), lends Cigna no support because the court held that assuming "*arguendo*" that ASO agreements may be used to interpret plan terms, extrinsic evidence may not be used to create an ambiguity. In addition

15

to the fact that the *Noah* assumption is not appropriate, "the ambiguity in the Plan must be patent; that is, apparent on the face of the contract." *Schachner v. Blue Cross & Blue Shield of Ohio*, 77 F.3d 889, 893 (6th Cir. 1996).[9] That is not the case here. Cigna attempts to sow doubt about the charges for which *members* are responsible under the *plan* by pointing to an ASO agreement provision that pertains to fees and charges owed by the *plan sponsor* under the *ASO agreement*. *See* Haskel Decl., Ex. 55 at 318. The fact that the amount to the sponsor paid to Cigna is different from the amount the member paid to CareCentrix is irrelevant.

### E.      Cigna Is a Proper Defendant

Cigna also argues that it is not a proper defendant for a section 502(a)(1)(B) claim for benefits with respect to self-insured plans for which it does not exercise "total control" over claims for benefits. Opp. at 30. It similarly argues that it is not in a position to pay benefits. *See* Opp. at 49 (quoting *Hall v. LHACO, Inc.*, 140 F.3d 1190, 1196 (8th Cir. 1998) (a former plan administrator "cannot be enjoined to make payments of benefits from the Plan")). But, in the very case Cigna relies upon, the Second Circuit expressly declined to decide whether "a claims administrator that exercises less than total control over the benefits denial process is an appropriate defendant under § 502(a)(1)(B)." *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.,* 798 F.3d 125, 132 n.5 (2d Cir. 2015).

Moreover, whether Cigna "is in [a] position … to pay out benefits" from a Plan is irrelevant. Plaintiffs are not seeking the payment of benefits from Plan funds. Instead, they seek to be compensated for the overcharges Cigna wrongfully imposed on Plaintiffs. Plan funds are not implicated in any way. Accordingly, this issue is ultimately irrelevant. *See Varity Corp. v. Howe*,

---

[9] *Accord Tyll v. Stanley Black & Decker Life Ins. Prog.*, 403 F. Supp. 3d 27, 32 (D. Conn. 2019). Regardless, "[t]he mere fact that [the parties] might need to resort to parol evidence to prove or defend against . . . claim[s] alone does not preclude a finding of commonality." *Cunningham v. Wawa, Inc.*, 387 F. Supp. 3d 529, 547 (E.D. Pa. 2019).

516 U.S. 489, 515 (1996) (where a participant does not have a claim against a former sponsor under ERISA § 502(a)(1)(B), it could have a claim against non-sponsor under ERISA § 502(a)(3) lest the participant "have no remedy at all").

Perhaps in an attempt to avoid *Varity*, Cigna attempts to cast doubt over its status as a fiduciary. Opp. at 30. As set forth below, Cigna clearly is a fiduciary. See Argument Part IIII.B below.  Accordingly, *Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618 (6th Cir. 2011), does not apply. That is an out-of-circuit case, in which the defendant's fiduciary status turned on the funding arrangements contained in each plan sponsor's administrative services agreements. *Id*. at 631. Here, in contrast, Cigna is a fiduciary because of the Plan terms and its conduct—conduct that was common to the class.[10]

## II.     CIGNA'S ARGUMENTS REGARDING DAMAGES ARE PREMATURE

### A.     Cigna Improperly Conflates Injury and Damages

Throughout its argument, Cigna repeatedly (and mistakenly) conflates injury and damages and argues that determining whether a member was "harmed" defeats class certification. *See, e.g.,* Opp. at 41-40, 46-60. But these assertions mischaracterize arguments relating to the ***calculation of damages*** as arguments about the existence of ***legal injury***.  ***Every*** class member was injured because the class is defined to include plan members who had at least ***one*** transaction where they were charged an amount greater than the provider rate. *See* Appendix A. Because every class member was charged an amount in excess of the Provider Rate on at least one transaction, he or she has "an injury-in-fact for the purposes of Article III standing." *Peters,* F.4th at 218; *see also*

---

[10] In a footnote, Cigna asserts that Plaintiffs cannot identify which plans are governed by ERISA. Opp. at 30 n.7. To the contrary, Plaintiffs may rely upon Cigna's records. *See, e.g., Owens v. Metro. Life Ins. Co.*, 323 F.R.D. 411, 416-17 (N.D. Ga. 2017) (finding that plaintiff could use defendant's records to determine which plans were governed by ERISA); *Wit v. United Behav. Health*, 317 F.R.D. 106, 130 (N.D. Cal. 2016) (same). Moreover, the single example Cigna cites, the City of Gary Plan, expressly states that members have and can enforce their rights under ERISA. *See* Haskel Decl., Ex. 57 at 597.

*Messner v. Northshore Univ. HealthSystem¸* 669 F.3d 802, 822 (7th Cir. 2012); *Torres v. Mercer Canyons Inc.,* 835 F.3d 1125, 1136-38 (9th Cir. 2016). That **legal** injury, wholly apart from the existence of any damages, warrants class certification.

The existence or non-existence of damages for individual class members does not create a conflict or require the court to "exclude those individuals from a class that is created to vindicate their ERISA-created rights." *Richards v. FleetBoston Fin. Corp.*, 235 F.R.D. 165, 171 (D. Conn. 2006); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100, at \*44 (E.D.N.Y. Oct. 15, 2014) ("Nothing in our class certification jurisprudence requires that every single class member suffer an impact or damages, regardless of the size of the class. To the contrary, courts have routinely recognized what an unrealistic burden this would put on plaintiffs."); *Meidl v. Aetna*, 2017 WL 1831916, at \*11 (D. Conn. May 4, 2017) (certifying class even though some class members would still be denied benefits).

Moreover, the question of calculating "damages" as such is completely irrelevant to Plaintiffs' requests under Rules 23(b)(1) and (2) for a reprocessing injunction. As to Plaintiffs' separate request for relief in the form of damages (such as under Rule 23(b)(3)), "the Second Circuit has found that individualized calculations of damages do not defeat the predominance requirement," and any concerns regarding calculation of damages can be addressed later in the case. *Schear v. Food Scope Am., Inc.* 297 F.R.D. 114, 126 (S.D.N.Y. 2014); *see also Roach v. T.L. Cannon Corp.*, 2017 WL 11529679, at \*9 (S.D.N.Y. Sept. 27, 2017) (bifurcation of damages phase, rather than denial of certification, proper approach even assuming existence of individualized damages issues); *Custom Hair Designs by Sandy v. Cent. Payment Co.*, 984 F.3d 595, 601 (8th Cir. 2020) ("At worst, this requires individual proof at the damages phase, which the [Supreme] Court approved in *Tyson [Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)]");

18

*Briceno v. USI Services Grp., Inc.* 2015 WL 5719727, at *10 n.42 (E.D.N.Y. Sept. 29. 2015) (possibility of need for individualized proof of damages does not defeat certification).

### B.    Cigna's Attempts to Setoff and Aggregate Transactions Are Improper

Even if damages were relevant at this stage—and they are ***not***—Cigna's own expert acknowledged that ████████████████████████████████████████████████ ████████████████████████████████████████ *See* Opp. at 46; Haskel Decl., Ex. 2 at p. 5; Ex. AX at 190:20-23, 192:4-7. ████████████████████████████████████████████ ███████████████████████████████[11] In that regard, when calculating damages, Cigna is not entitled to "net" claimed undercharges against any overcharges. *See, e.g.,* Opp. at 7-10, 33, 36-38, 44, 46. That assertion ignores that each claim for benefits is a separate transaction as clearly set forth in Cigna's data. The alleged "undercharges" are not within the scope of this litigation. If a class member was overcharged on a transaction, then he or she is entitled to a refund at that time. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 136 (D.D.C. 2017) ("[A] single overcharge is sufficient to show injury . . .").[12]

Even assuming some class members may not have suffered a net loss when all of their transactions are aggregated (*see, e.g.,* Opp. at 37-38), that is irrelevant to injury because "the financial loss analysis must be conducted at the individual claims level rather than at the aggregate

---

[11]  Cigna's insinuation that there is an intra-class conflict because class members would be "worse off" because they would have to pay Cigna back for the 1% of transactions where the Provider Rate was higher than the CareCentrix rate (Opp. at 46) is false. *See Munro v. Univ. of S. Cal.*, 2019 WL 7842551, at *7 (C.D. Cal. Dec. 20, 2019) ("Defendants fail to articulate how the relief sought by Plaintiffs could actually harm putative class members [as] [p]articipants who profited from allegedly imprudent investment options will not have to pay back their gains") (collecting cases).

[12]  That Cigna may undercharge that same person in a separate transaction is irrelevant to the overcharge. At best, this is a set-off argument. But this affirmative defense (to the extent it applies) is not a reason to deny class certification. *See, e.g., In re Elec. Books Antitrust Litig.*, 2014 WL 1282293, at *20 (S.D.N.Y. Mar. 28, 2014); *Herman v. SeaWorld Parks & Entm't, Inc.*, 320 F.R.D 271, 298 (M.D. Fla. 2017); *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 685-86 (N.D. Ga. 2016); *Berrien v. New Raintree Resorts, Int'l, LLC*, 276 F.R.D. 355, 364 (N.D. Cal. 2011).

claims level." *Peters,* 4 F.4th at 218. "[P]laintiffs do not have to show that each class member suffered an overcharge on each and every purchase they made. Rather, it is enough if they provide sufficient evidence to demonstrate that substantially all class members were overcharged at least once." *In re Air Cargo*, 2014 WL 7882100, at *45.[13]

Even if it were proper to aggregate transactions in calculating damages, such aggregation at most would go to the ***amount*** of damages a class member may be entitled to and does not create "divergent outcomes" among class members that defeat certification. *Almonor*, 2009 WL 8412125, at *5 ("the question of whether Plaintiff benefitted from Defendants' alleged breaches is a question of *damages*—not of injury."). Cigna's reliance (Opp. at 49) on *In re Literary Works in Electronic Databases Copyright Litig.*, 654 F.3d 242 (2d Cir. 2011), is misplaced. In *Literary Works*, the class representatives, all of whom had one particular claim, were inadequate representatives for a fixed-value settlement that placed the entire risk that total claims might exceed the settlement cap on a distinct group of class members who held a completely different claim. *Id.* at 253-54. Accordingly, the class representatives' payout would not be reduced in the event that the settlement cap was exceeded; rather, that risk was borne solely by the unrepresented class members. The court understandably held that this "fundamental conflict" rendered the class representatives inadequate. Here, all class members (including Plaintiffs) have the same claims under the same Plan language, and so there is no risk of such self-dealing.

Likewise, courts outside the Eleventh Circuit have largely rejected *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181 (11th Cir. 2003) (Opp. at 49). "[T]he Eleventh Circuit's

---

[13] *See also Almonor v. BankAtlantic Bancorp, Inc.*, 2009 WL 8412125, at *5 (S.D. Fla. 2009) ("While it may be true that Defendant's alleged breaches actually conferred a net benefit on Plaintiff, that fact is irrelevant to whether Plaintiff suffered an injury-in-fact or whether Plaintiff suffered a compensable loss under ERISA."); Federal Practice & Procedure § 3531.4 (3d. ed. 2021 update) ("Once injury is shown, no attempt is made to ask whether the injury is outweighed by benefits the plaintiff has enjoyed from the relationship with the defendant").

holding fails to appreciate … that a direct purchaser may recover the full amount of the overcharge, even if he is otherwise benefitted." *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd*., 246 F.R.D. 293, 304 (D.D.C. 2007).[14] This Court should similarly reject *Valley Drug* given that "[h]ere, every class member has suffered an injury" on at least one transaction. *See Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384, 401-02 (S.D.N.Y. 2015) (distinguishing *Valley Drug*).

## III.   THE ERISA CLASS IS CERTIFIABLE UNDER RULE 23(b)(1), (2) or (3)

Plaintiffs need satisfy only one prong of Rule 23(b). Here, Cigna focuses almost exclusively on Rule 23(b)(3), all but conceding that 23(b)(1) and (2) are satisfied. However, the Court need not reach Cigna's arguments about 23(b)(3) because the Court can certify a class under either or both of 23(b)(1) or (2). *See Meidl*, 2017 WL 1831916, at *23. But, if it elects to do so, certification is also warranted under Rule 23(b)(3).

### A.   The ERISA Class Should Be Certified Under Rule 23(b)(1)

Cigna's abbreviated argument regarding Rule 23(b)(1) fails. *See* Opp. at 46-47. Rule 23(b)(1)(A) is specifically designed for cases "where the party is obliged by law to treat members of the class alike." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Accordingly, "[t]he Supreme Court has observed that actions for breach of fiduciary duties are 'classic examples' of Rule 23(b)(1) cases." *Douglin v. GreatBanc Tr. Co.*, 115 F. Supp. 3d 404, 412 (S.D.N.Y. 2015). Indeed, ERISA class actions concerning health benefits are routinely certified under Rule 23(b)(1).[15]

---

[14] *See also In re Wellbutrin SR Direct Purchaser Antitrust Litig*., 2008 WL 1946848, at *5-7 (E.D. Pa. May 2, 2008) ("Courts in this circuit and elsewhere have rejected the 'conflict' rationale adopted in *Valley Drug*. . . ."); *In re Glumetza Antitrust Litig*., 2020 WL 3498067, at *14 (N.D. Cal. June 29, 2020).

[15] *See, e.g., Meidl*, 2017 WL 1831916, at *17; *Med. Soc'y of N.Y. v. UnitedHealth Group*, 332 F.R.D. 138, 153-54 (S.D.N.Y. 2019); *Hendricks v. Aetna Life. Ins. Co*., 2021 WL 2497950, at *7 (C.D. Cal. June 11, 2021); *Des Roches v. Cal. Physicians' Servs*., 320 F.R.D. 486, 506-07 (N.D. Cal. 2017); *A.D. v. T-Mobile USA, Inc*., 2016 WL 3882919, at *3 (W.D. Wash. July 18, 2016); *Wit*, 317 F.R.D. at 131-34; *Escalante v. Cal. Physicians*, 309 F.R.D. 612, 619-20

Cigna alleges that the class must include ***all*** plan members. Opp. at 46. To the contrary, Rule 23(b)(1) ERISA classes routinely do ***not*** include all plan participants. For example, Judge Hall certified a Rule 23(b)(1) ERISA class comprised of only those plan members who were denied a specific type of benefit. *Meidl,* 2017 WL 1831916, at \*16-20, \*23*; see also Wit*, 317 F.R.D. at 116.  Likewise, in *Leber v. Citigroup 401(k) Plan Investment Committee* 323 F.R.D. 145, 167 (S.D.N.Y. 2017), the court certified a class of only plan members who invested in particular funds out of a wider portfolio of options. 323 F.R.D. at 167; *see also Berry v. Wells Fargo & Co.*, 2018 WL 9989754, at \*13 (D.S.C. Oct. 9, 2018) (certifying Rule 23(b)(1) class of specific subset of plan members). Here, similar to *Meidl*, the class properly includes only Plan members who sought health benefits through the CareCentrix network and paid more than the Provider Rate.

The cases cited by Cigna are inapposite. Plaintiffs' claims in this case are individual claims under ERISA §§ 502(a)(1) and (a)(3) (*see* FAC at Counts I, II, III, and IV), as well as an additional claim in Count IV under § 502(a)(2) for "fiduciary breaches that impair the value of plan assets in a participant's ***individual*** account" (*LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008)). Such claims are different from claims under § 502(a)(2) that are brought to "provide a remedy for … ***plan*** injuries." *Id.* Accordingly, Cigna's reliance (Opp. at 46-47) on both *Local 1522 of Council 4 v. Bridgeport Health Care Ctr., Inc.*, 2018 WL 1419792 (D. Conn. Mar. 21, 2018) and *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006), is largely misplaced, as both involved plan-injury claims under § 502(a)(2). *See Local 1522*, 2018 WL 1419792, at \*9-10; *Coan*, 457 F.3d at 260.[16] Moreover, even plan-injury classes under 502(a)(2) do not need to include all Plan

---

(C.D. Cal. 2015); *Z.D. ex rel. J.D. v. Grp. Health Co-op*., 2012 WL 1977962, at \*7 (W.D. Wash. June 1, 2012); *Kennedy v. United Healthcare of Ohio, Inc*., 206 F.R.D. 191, 198 (S.D. Ohio 2002).

[16] The remaining (and out-of-Circuit) district court case cited by Cigna, *Bond v. Mariott Int'l, Inc.,* 296 F.R.D. 403 (D. Md. 2014), is inconsistent with Second Circuit precedent. Moreover, *Bond* misconstrues the precedent that it cites. The *Bond* court declined to certify under Rule 23(b)(1) a class asserting § 502(a)(1) claims on behalf of a subset of plan members. *Id.* at 409. However, the sole authority cited by the court was *Spano v. Boeing Co.*, 633 F.3d 574, 588

members. For example, in defined contribution plan investment cases, courts routinely certify classes comprised of only plan members with damages arising from investment in the challenged investment funds. *Leber*, 323 F.R.D. at 167. Finally, even if it was true that "*all* members of a given plan" must be included in Rule 23(b)(1) classes asserting ***plan*** claims under § 502(a)(2) (and it is not as demonstrated by *Leber*), that analysis does not apply to individual claims under § § 502(a)(1) and (3). [17]

### B.    The ERISA Class Should Be Certified Under Rule 23(b)(2)

Certification is appropriate under Rule 23(b)(2) when the defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Here, Plaintiffs seek a ***retrospective*** injunction ordering Cigna to reprocess claims it wrongly adjudicated, as courts routinely require under Rule 23(b)(2). "In numerous ERISA cases, courts have certified classes under subsection (b)(2) where defendants allegedly employed an unlawful general policy that affected the process for adjudicating all claims of the class, and plaintiffs sought declaratory and injunctive relief requiring reprocessing of the claims." *Med. Soc'y of N.Y.* 332 F.R.D. at 154-55 (concluding that "a reprocessing order is sufficient generalized relief under Rule 23(b)(2) even where every individual class member might not ultimately receive benefits upon reprocessing of

---

(7th Cir.2011). *Spano*, in turn, principally focused on plaintiffs' claim under § 502(a)(2). The *Spano* plaintiffs did not bring a claim under § 502(a)(1) at all, and although they plead a claim under § 502(a)(3), that was quickly discounted by the 7th Circuit based on the specific allegations of the complaint and so "most of the attention both in the district court and in this court has appropriately been on subpart (a)(2)." *Id.* at 578.

[17] *See e.g., Med. Soc'y of N.Y.*, 332 F.R.D. at 145-46, 151-54; *Des Roches*, 320 F.R.D. at 495, 506-07; *A.D.*, 2016 WL 3882919, at *1-3; *Wit*, 317 F.R.D. at 114-17, 131-34; *Escalante*, 309 F.R.D. at 616, 619-20; *Z.D. ex rel J.D.*, 2012 WL 1977962, at *2, 6-7; *Kennedy*, 206 F.R.D. at 194-95, 198.

their claims"). Indeed, certifications of reprocessing claims under Rule 23(b)(2) are common. *See generally* Opening Memo at 14-15 (citing cases).[18]

Accordingly, Cigna's argument that Plaintiffs have failed to satisfy Rule 23(b)(2) fails. *See* Opp. at 47-49. As a preliminary matter, Cigna ignores the fact that ERISA claims against fiduciaries are equitable and Plaintiffs may seek a broad range of equitable remedies. *See Cigna v. Amara*, 563 U.S. 421, 439-45 (2011); *Peters*, 2 F.4th at 229. Moreover, ERISA 502(a)(3) [29 U.S.C. § 1132(a)(3)] specifically authorizes a plan beneficiary or participant to "(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan . . . ." Equitable relief is particularly appropriate in this case where, as the claims administrator, Cigna is a fiduciary because it had the discretionary authority to apply plan terms and make factual determinations concerning the computation of benefits. *See, e.g.,* Oliver Decl. Ex. B at 688; *Peters*, 2 F.4th at 229; *Conn. Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 988 F.3d 127, 130 (2d Cir. 2021); *see also Sun Life Assur. Co. of Canada v. Diaz*, 2015 WL 1826088, at *3 (D. Conn. Apr. 22, 2015). In particular, it had the fiduciary duty to calculate the deductible amount based on the Provider Rate.[19]

A reprocessing injunction is appropriate equitable relief in this case because Cigna set up a system that, according to Cigna's expert, ██████████████████████████████

---

[18] *See also Smith v. United HealthCare Servs., Inc*., 2002 WL 192565 at *5 (D. Minn. Feb. 5, 2002) (certifying class under Rule 23(b)(2) where defendant insurer violated plan language in calculating cost share charges); *Vogt v. State Farm Life Ins. Co*., 2018 WL 1955425, at *8 (W.D. Mo. Apr. 24, 2018), aff'd, 963 F.3d 753 (8th Cir. 2020) (certifying Rule 23(b)(2) class seeking declaration that insurance provider's uniform overcharges violated contracts); *Wit*, 317 F.R.D. at 134-38; *Escalante*, 309 F.R.D. at 620; *Ballas v. Anthem Blue Cross Life & Health Ins. Co*., 2013 WL 12119569, at *13 (C.D. Cal. Apr. 29, 2013); *Z.D. ex rel J.D. v. Grp. Health Co-Op*, 2012 WL 5033422, at *2, 5 (W.D. Wash. Oct. 17, 2012); *Kennedy*, 206 F.R.D. at 199; *Caranci v. Blue Cross*, 194 F.R.D. 27, 40 (D.R.I. 2000).

[19] Cigna argues that *Meidl* involved a denial of coverage rather than the improper calculation of the cost share, but offers no explanation as to why that immaterial factual distinction should affect the legal propriety of a Rule 23(b)(2) injunction in an ERISA case like this. Indeed, there is no logical reason why it should.

███████. Ex. AX at 202:5-18.[20] As a result of Cigna's voluntary agreement with CareCentrix that it would not even have access to the Provider Rate, Cigna has created data complexity that, according to Cigna, effectively precludes certification. But Cigna cannot immunize itself from classwide liability because its data is unusable as a result of the structure of its CareCentrix contract. Instead, as the claims administrator with the express fiduciary authority to process claims according to Plan terms, under the clear equitable powers available under ERISA, Cigna should be required to work out the data issues that it created and reprocess the transactions in accordance with the Plan terms. If Cigna does not know the amounts it improperly overbilled class members, the Court should order Cigna to figure it out. *See, e.g.*, *Frommert v. Becker*, 153 F. Supp. 3d 599, 610 (W.D.N.Y. 2016) (in an ERISA action, "[o]nce invoked, the scope of a district court's equitable powers is broad, for breadth and flexibility are inherent in equitable remedies")..

As to Cigna's specific arguments, ***first***, Rule 23(b)(2) is not limited to cases alleging a risk of future harm, and none of the cases cited by Cigna involved a request that defendant be enjoined to take action to address ***past*** harms (such as reprocessing claims). *See* Opp. at 47-48. Rather, Cigna's cases all involved simple requests for money damages, with no genuine injunction component. For example, the plaintiff in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), did not seek an injunction that the defendant engage in specific conduct to remedy past behavior (as Plaintiffs do here), but a general injunction that the defendant not engage in future misconduct to cause future harm to the population as a whole. *Id.* at 111. The court concluded that plaintiffs could

---

[20] ███████████████████████████████████████████
███████████████████████████ Ex. AX at 13:6-14:16.
██████████████████████████████████ *id.* at 14:23-15:8, 62:25-63:17
███████████████████████ *id.* at 23:10-24, █████
███████████████████████████████████████████
██████████████████████ *Id.* at 7:18-8:16, 214:18-22.
██████████████ *Id.* at 113:5-114:8. ███████████
████████████████████.

not obtain an injunction against generalized uncertain future misconduct absent a particularized likelihood of future injury. *Id.*

Similarly, the Court in *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974), concluded that it was inappropriate to issue an injunction directing government officials not to act in a discriminatory manner against the population as a whole in the future; unlike here, the requested injunction did ***not*** seek specific redress for specific past misconduct. Cigna's reliance on *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218 (2d Cir. 2012), is even more attenuated: the Second Circuit simply found that Rule 23(b)(2) certification was not appropriate in a Fair Debt Collection Practices Act where the plaintiff sought only money damages and had not sought an injunction ***at all***. Moreover, none of these cases Cigna cited involved suits against a fiduciary under ERISA, which, by their very nature, are equitable.[21]

***Second***, Cigna's argument that monetary relief would not be "incidental" to the injunction" (Opp. at 48) is incorrect. Plaintiffs seek a uniformly applied equitable injunction to require Cigna to apply the Plan terms and reprocess the transactions using the Provider Rate rather than the CareCentrix Rate. As this Court held in *Meidl*, "[r]ather than seeking payment, a reprocessing claim [under Rule 23(b)(2)] simply seeks that claims be reprocessed via lawful method …. The fact that certain class members may end up receiving payment … is too attenuated to treat the reprocessing itself as a form of monetary damages." 2017 WL 1831916, at *21. For each transaction, class members may (or may not) recover money as a result of reprocessing, but that does ***not*** mean that Plaintiffs' claims are "predominantly for money damages." *See Wit*, 317 F.R.D.

---

[21] The out-of-circuit cases cited by Cigna (Opp. at 47-48) are inapposite for the same reason. *See McNair v. Synapse Grp., Inc.* 672 F.3d 213, 224 (3d Cir. 2012) (denying Rule 23(b)(2) certification because plaintiffs "no cognizable interest" in obtaining injunction to stop ***future*** subscription renewal marketing where plaintiffs not current customers of defendant and had no present intention of becoming customers)(emphasis added); *Thorn v. Jefferson-Pilot Life Ins. Co.,* 445 F.3d 311, 331 (4th Cir. 2006) (holding that "injunction request is illusory" where plaintiffs sought injunction against ***future*** collection of discriminatory premiums where all policies already fully paid-up).

at 134-35. Rather, the monetary relief sought by Plaintiff is "incidental" because it would "flow

directly from liability to the class as a whole on the claims forming the basis of the injunctive [and]

declaratory relief." *See Allison v. Citgo Petrol. Corp.*, 151 F.3d 402, 415 (5th Cir. 1998) (emphasis

omitted). By contrast, the plaintiffs in *AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am.

Ins. Co.*, 938 F.3d 1170 (11th Cir. 2019) (cited in Opp. at 48) sought only to enjoin the inclusion

of the disputed provisions in *future* contracts (*i.e.,* future wrongdoing), and so the court concluded

that (as Cigna notes) the claim for injunctive relief was a mere "fig leaf." *Id*. at 1177-78. As

discussed above, Plaintiffs here are not seeking such an illusory injunction. Rather, as in *Meidl*,

the injunction sought is at the heart of Plaintiffs' claim for relief: to have class members' cost share

reprocessed *properly*, in accord with the terms of the Plans.[22]

      *Third*, Cigna's argument that a Rule 23(b)(2) class would not be "cohesive" is incorrect.

See Opp. at 48. Cigna simply refers generally to its arguments elsewhere for the proposition that

there are "individualized inquiries and intra-class conflicts" that bar certification under Rule

23(b)(2) as well as (b)(3). But as discussed throughout this Reply, no such individualized issues

or class member conflicts exist.[23]

---

[22] The New Jersey District Court's express rejection of *Meidl* in *In re Aetna UCR Litig.*, 2018 WL 10419839, at *25 (D.N.J. 2018) (*see* Opp. at 48) is contrary to the law in this Circuit (and others) and should not be followed here. Moreover, the *Aetna UCR Litig.* Court emphasized that its decision not to certify a Rule 23(b)(2) class rested equally on the fact that a "plan-by-plan minefield" precluded the finding of a common question under Rule 23(a)(2). Here, Plaintiffs have established the existence of common questions including (1) whether Cigna based all deductible charges on the CareCentrix rate and (2) whether this was in violation of common plan language.

[23] Cigna also cites to *Aetna UCR Litig.* for the proposition that a Rule 23(b)(2) class is inappropriate where "an injunction would likely result in some class members owing money after reprocessing." Opp. at 48. However, in that case, the plaintiffs "failed to challenge Aetna's contention that '"large segments'" and '"many class members'" would '"owe money if Aetna were ordered to reprocess their claims.'" 2018 WL 10419839, at *27. Here, by the definition of the proposed Class, the only claims Plaintiffs seek to reprocess are claims where there were overcharges. Moreover, as also discussed above, any class member who did benefit from Cigna's improper cost share calculations would not be required to repay that money. In addition, not every class member must have been damaged in order for a claim to be certified under Rule 23(b)(3). *See, e.g.*, *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig*., 2017 WL 4621777, at *12 n.12, *15 (D. Mass. Oct. 16, 2017) (granting class certification even though Defendants argued "at least 378,000 consumers were uninjured even if Defendants are found liable for antitrust violations as a result of coupon and voucher programs"); *In re Nifedipine Antitrust Litig.*, 246 F.R.D. 365, 369 (D.D.C. 2007) ("[P]laintiffs do not need to prove that every class member was actually injured.). As the Seventh Circuit explained, "a class will

27

***Finally***, Cigna's argument that Rule 23(b)(2) reprocessing would be "impossible to carry out" because "Cigna is no longer the claims administrator for some of the plans at issue" also fails. Cigna may not be the administrator for certain plans at this time, but Cigna—and not any individual Plan—***is*** the entity that maintains or should maintain all of the relevant records. If it hired CareCentrix to maintain any relevant data such as the Provider Rate, it should obtain that data from CareCentrix. Moreover, Cigna—and not any individual Plan—is the entity that ***benefitted*** from the improper deductible calculations. ██████████████████████████

████████████████████████████████

███████████████████████ Oliver Decl. Ex. G at slide 4.

## C.    The ERISA Class Should Be Certified Under Rule 23(b)(3)

As discussed above, this Court should certify the proposed ERISA class under Rule 23(b)(1) and/or 23(b)(2). Accordingly, the Court need proceed no further. *See Meidl*, 2017 WL 1831916, at *23.  However, should the Court conclude that sections (b)(1) and (2) do not apply, certification of the ERISA class also is warranted under Rule 23(b)(3).[24]

### 1.    Plaintiffs Have Shown Classwide Injury

Cigna's argument that Plaintiffs cannot show classwide injury through common proof (Opp. at 31-34) is incorrect. Plaintiffs' theory of injury is straightforward: Class Members were harmed when Cigna calculated plan member deductibles based upon the CareCentrix rate rather than the lower Provider Rate. Cigna's injury argument relies entirely upon the incorrect legal conclusions in the *Peters* trial court summary judgment opinion that the Fourth Circuit reversed.

---

often include persons who have not been injured by the defendant's conduct . . . . Such a possibility ***or indeed inevitability*** does not preclude class certification." *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009) (emphasis added).

[24] Cigna's arguments concerning (b)(3) appear in various places in their Opposition. If the Court certifies a class under either (b)(1) or (b)(2), it need not consider any of the arguments set forth below.

Not only did the Fourth Circuit rejected Cigna's arguments on the merits (2 F.4th at 222-27), but Cigna's arguments apply to each and every class member and, therefore, are not grounds to deny class certification. At best, they should be considered at the trial of the claims of a certified class.

As to Cigna's arguments on the merits, Cigna *first* wrongly argues that the class-wide "injury" theory "makes no sense" because, although the deductible is based on the rate "that the provider has contracted directly or indirectly ***with Cigna***," Cigna only contracted with CareCentrix (and not with any provider). Opp. at 32 (quoting Haskel Decl., Ex. 33 at 579) (emphasis in original). This argument is incorrect. *See* Argument Part I.A above. At a minimum, how to interpret the plans' uniform language and whether Cigna indirectly contracted with the Providers applies equally to all Class Members, and any dispute does not bar class certification. Furthermore, this argument addresses Plaintiff's core *liability* theory, not an "injury" theory, and, therefore, is not even subject to an injury theory analysis.

***Second,*** Cigna again relies on the *Peters* trial court summary judgment analysis to argue that Plaintiffs' injury theory is "a mythical Shangri-Law" that "makes no economic sense" because it assumes that the Provider Rate would still be available if the CareCentrix relationship did not exist and Cigna had to establish its own provider network. *See* Opp. at 32-33. In making this argument, Cigna ignores Plaintiffs' actual theory. As discussed above, Plaintiffs' damages theory is that Class Members should have paid the Provider Rate and were charged more than that Rate. The loss is simply the difference between the rate that was charged and the rate that should have been charged. This merits issue applies equally to all class members and should not be even be considered at class certification.

29

Moreover, as the Fourth Circuit held, the merits of Plaintiff's injury theory is not fanciful, but grounded in well-established (and very real) injury jurisprudence:

> [T]he district court **erred** in comparing what [plaintiffs] actually paid with what they would have paid had the [insurer-intermediary] relationship not existed. [Plaintiff's] contention was never that the [insurer-intermediary] was itself illegal. Rather, she brought ERISA claims challenging [the insurer's] repeated self-serving benefit determinations charging her and her plan for [the intermediary's] fees in the guise of medical expenses.

*Peters,* 2 F.4th at 224 (emphasis added). Instead, the measure of loss is the difference between what a class member paid and what she should have paid under the Plans. *Id.* As in *Peters,* Plaintiffs' injury theory is not that Plaintiffs were overcharged as compared with some hypothetical world in which CareCentrix did not exist, but that Cigna violated its Plan contracts by charging Class Members the CareCentrix Rate (with its administrative mark-up), rather than the Provider Rate.[25] The rates Cigna might or might not have charged in some contra-factual world in which those contracts did not exist are irrelevant.[26]

### 2. Plaintiffs More Than Pass *Comcast*

The "burden on [plaintiffs] at the class certification stage, with regard to damages, is minimal." *In re Global Brokerage, Inc.*, 2021 WL 1160056, at *20 (S.D.N.Y. Mar. 18, 2021).[27] Under *Comcast*, "all that is required at class certification is that the plaintiffs must be able to show

---

[25] The contention that Cigna's "median rates with its network providers were often higher than Cigna's rates with CareCentrix" (Opp. at 33), even if true, is irrelevant. The question in this case is whether Class Members were charged the correct deductible amounts based on the charges of the providers in the CareCentrix network who they in fact used, not some other hypothetical providers who are not even in the CareCentrix network but who they might hypothetically have used. In any event, this, again, is a merits issue.

[26] Cigna's argument that Plaintiff Terry and other class members would have paid more for services such as sleep testing but for CareCentrix's involvement in its hypothetical contra-factual world (Opp. at 33) is both a merits issue and a red herring that, even if true, has no bearing on Plaintiff's injury theory, as discussed in Argument Part IV below.

[27] Cigna (Opp. at 34) relies solely on a single out-of-Circuit District Court case, *Daniel F. v. Blue Shield of Cal.,* 305 F.R.D. 115 (N.D. Cal. 2014). However, even if it was relevant in the Second Circuit, which it is not, another court within the Ninth Circuit questioned the heightened damages proof imposed by the *Daniel F.* court. *Owino v. CoreCivic, Inc.,* 2021 WL 120874, at *8 (N.D. Cal. Jan. 13, 2021).

that their damages stemmed from the defendant's actions that created the legal liability" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 88 (2d Cir. 2015). Given the clear-cut nature of Plaintiffs' injury theory and damages methodology, this is easily satisfied. Plaintiffs' liability theory is that Cigna violated the Plans when it charged Plaintiffs more than the Provider Rate. The damage theory is that the loss is the difference between the Provider Rate, and the amount they were charged, the CareCentrix Rate. The liability and damages theories are an exact match.

Contrary to Cigna's argument (Opp. at 34-35), Plaintiffs are not required to establish a classwide damage model even **after** *Comcast*. "*Comcast*, then, did not hold that a class cannot be certified … simply because damages cannot be measured on a classwide basis." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015). Rather, "*Comcast*'s holding was narrower" and requires only that the proposed method "actually measure damages that result from the class' asserted theory of injury." *Id*. Accordingly, there is "nothing improper about plaintiffs' decision not to proffer expert damages analysis at this stage, given that plaintiffs are not required to establish loss causation—let alone proffer a damages model—on class certification." *In re Barrick Gold Sec. Litig.,* 314 F.R.D. 91, 105 (S.D.N.Y. 2016).

Cigna argues that the damage model must apply to all "plan" members, regardless of whether they are in the class, because the case concerns a single plan interpretation. Opp. at 35. As set forth at Argument Part III.A above, this argument is clearly wrong: a class can cover only a subset of participants in a plan. The sole case Cigna cites, *Franco v. Conn. Gen. Life Ins. Co.*, 299 F.R.D. 417 (D.N.J. 2014), does not hold otherwise; rather, *Franco* denied certification because, *inter alia*, plaintiffs' damages approach ignored that the plan defined benefits by reference each provider's "normal charge," which would require an individualized inquiry. *Id.* at 429-30. No such plan-language calculation issues exists in this case, as discussed above.

31

As to expert evidence, although not necessary, Cigna's expert, Dr. May, opined that,

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████ Ex. AX at 7:18-8:16, 120:15-

18, 134:16-135:2; Haskel Decl., Ex. 2 at p. 53-54, A1-8. ████████████████████

█████████████████████████████████████ If the court certifies

the class, Plaintiffs will present a similarly simple model at the merits stage: one that calculates

the difference between the CareCentrix Rate and the Provider Rate for each transaction.[28]

To the extent that there are any "holes" in the evidence because of the unavailability of

data, Cigna, as the breaching fiduciary has the duty to provide that information. "It is illogical and

unfair" to penalize an ERISA plaintiff for not having data that properly should be maintained by

the defendant, as there is "nothing in ERISA that supports such a Kafkaesque regime" where a

defendants' failure to keep its own records "can license a plan administrator to throw up his hands

and say 'not my problem.'" *Estate of Barton v. ADT Sec. Servs. Pension Plan,* 820 F.3d 1060,

1066 (9th Cir. 2016). "[W]here a claimant has made a prima face case that he is entitled to a[n

ERISA] benefit but lacks access to the key information … and the defendant controls such

information, the burden shifts to the defendant to produce this information." *Id.* at 1068 ("'once

[plaintiff] proved the fact of damages and [defendant's] failure to keep adequate records, the

burden shift[s] to [defendant] to come forward with evidence'" concerning the missing

information). Because Cigna had the primary duty to calculate benefits pursuant to Plan terms, if

Cigna's recordkeeping system is inadequate to determine whether it did so correctly, Cigna bears

---

[28] To minimize the burden on CareCentrix prior to class certification, the parties agreed that CareCentrix could delay the production of a complete set of data that included all of the Provider Rate charges. ECF 174, 176.  If the class is certified, Plaintiffs will request the remaining data so that Plaintiffs' expert can perform the merits damage analysis.

the burden of providing the necessary information, including identifying the specific Plan language that was used to adjudicate the claims. *See, e.g.*, *Lassen v. Hoyt Livery, Inc.*, 2016 WL 7165716 at *9 (D. Conn. Dec. 8, 2016). And because the burden is on the breaching fiduciary, "[a]ny doubt or ambiguity should be resolved against them." *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985).[29]

### 3.    There Are No Material Individualized Issues

Cigna wrongly argues that identifying uninjured class members and calculating damages requires individualized inquiries (Opp. at 36-40) that defeat class certification. *First*, Cigna argues that "Plaintiffs do not factor in the savings" that the overall CareCentrix relationship ostensibly provided. Opp. at 36-37. In yet another iteration of their global economic theory, as discussed above, these issues are irrelevant under *Peters*.

*Second*, Cigna's argument that the CareCentrix Rate benefited at least one class member on aggregated transactions (Opp. at 37-38) again fails for the reasons set forth above. *See* Argument Part II.B. As also discussed above, class members were injured and are entitled to recover for each transaction in which they were overcharged because the CareCentrix Rate exceeded the Provider Rate, regardless of whether they ostensibly benefited on certain other transactions. *Id.* Accordingly, even assuming class members sometimes benefitted from application of the CareCentrix rate, those transactions are simply irrelevant and do not create individualized issues.

---

[29] *See generally Fed. Ins. Co. v. Mertz*, 2016 WL 164618, at *2 (S.D.N.Y. Jan. 12, 2106) (once "a plaintiff has demonstrated a prima facie case of breach of fiduciary duty (including damages, in this case)[,] the burden shift[s] to a defendant to prove the fairness of its conduct"); *Salovaara v. Eckert*, 222 F.3d 19, 26, 29-30 (2d Cir. 2000) (agreeing with District Court that "the burden shifts to the defendant on the issue causation of loss" once the plaintiff has shown "both breach of fiduciary duty and a prima facie case of loss").

Moreover, as the Fourth Circuit held in the *Peters* appeal, "winning" and "losing" transactions are not set off on "claims based on surcharge, disgorgement, and declaratory and injunctive relief that do not require a showing of personal financial harm." *Peters*, 2 F.4th at 221; *see generally id.* at 221-27. Here, Plaintiffs are seeking such surcharge, disgorgement, and equitable relief. *See* FAC at ¶¶ 175, 188, 197, 211.

Additionally, even assuming it were proper to aggregate and offset "winner" and "loser" transactions, that would not defeat class certification because it concerns solely the damages each class member would be entitled to recover. Determining whether and how much individual class members are damaged is an issue in every class action and does not defeat certification. *See A.R. v. Conn. State Bd. of Educ.*, 2020 WL 2092650, at *13 (D. Conn. May 1, 2020).[30]

**Third**, *Peters* rejected Cigna's argument that Plaintiffs must account for "the interplay between members' co-insurance, deductibles and out-of-pocket maximums" and the effect of "bundled payments" (Opp. at 38-39) at least with regard to surcharge, disgorgement and other equitable remedies because these remedies may be awarded "without regard to financial injury." *Peters*, 2 F.4th at 241-44. Moreover, even if they must be accounted for, that does not defeat certification because the only question is the amount of the damages at the end of the year after aggregating all of a class member's benefit claims and cost share payments. As discussed above, this is another damages issue that does not defeat certification.[31]

---

[30] *See also Spencer v. Hartford Fin. Servs. Grp., Inc.,* 256 F.R.D. 284, 294 (D. Conn. 2009); *Macedonia Church v. Lancaster Hotel Ltd. P'ship*, 270 F.R.D. 107, 117 (D. Conn. 2010); *Roach v. T.I. Cannon*, 778 F.3d 401, 409 (2d Cir. 2015) (noting that the general rule that "individualized determinations alone cannot preclude class certification" was "left undisturbed by *Comcast*"); *Schear v. Food Scope Am.*, *Inc.* 297 F.R.D. 114, 126 (S.D.N.Y. 2014) ("the Second Circuit has found that individualized calculations of damages do not defeat the predominance requirement"); *In re U.S. Foodservice Inc. Pricing Litig.*, No. 3:07-md-1894 (CFD), 2011 WL 6013551, at *16 (D. Conn. Nov. 29, 2011) ("It is a rare case where computation of each individual's damages is so complex, fact-specific, and difficult that the burden on the court is intolerable").

[31] Cigna's reliance on *Daniel F.* (Opp. at 39) is misplaced. Cigna ignores that fact that the primary issue in *Daniel F.* was identification of the services that  provided and whether they were even covered under the plans. Opp. at 39. *See Daniel F*., 305 F.R.D at 131. Here, in sharp contrast, there is no dispute as to either the services provided by

***Fourth***, Cigna's argument that certain class members never paid CareCentrix (Opp. at 39-40) does not create individualized issues because incurring the debt is sufficient for standing. *Med. Soc'y of New* York, 332 F.R.D. at 147 ("United contends that some putative class members have not suffered any injury because Columbia routinely releases patients from all responsibility to pay claims denied by United. Plaintiffs respond that patients were injured by United's alleged violation of ERISA in a manner sufficient to confer Article III standing even if they have no 'out-of-pocket liability.' The Court agrees with Plaintiffs."). Even if CareCentrix writes off the debt as an accounting matter (Opp. at 39), class members remain liable and thus have standing to sue. *Peters v. Aetna, Inc.*, 2016 WL 4547151, at *6 (W.D.N.C. Aug. 31, 2016) ("courts have recognized that an insured has standing when she alleges violations of an ERISA plan without having to prove that the insured paid the provider or was balance billed by the provider"). Although it might be proper to set-off amounts owed by a class member for certain transactions against damages they are awarded for other transactions, that again is a damages issue that does not defeat certification. If Cigna or CareCentrix (as Cigna's agent) did not keep adequate records to determine whether a given class member did or did not pay a cost-share on a particular transaction, that, again, is Cigna's burden to resolve, and a problem for Cigna and CareCentrix to work out amongst themselves.

***Fifth***, Cigna's argument that certain class members might have secondary coverage with a carrier other than Cigna is irrelevant. Secondary insurance is a separate agreement between the class member and that other insurer, and Cigna is a stranger to that contract. The fact that a class member may (or may not) have to reimburse the secondary carrier from amounts paid by Cigna to

---

CareCentrix to class members or whether they were covered. All of that information is contained in Cigna's records. Although the court also stated that calculating damages would require manual review of records and discovery of amounts actually paid, as set forth above, these individualized issues do not defeat certification in this circuit. Accordingly, the Court should give no weight to *Daniel F.*

the member under the separate secondary insurance contract is irrelevant, and does not let Cigna off the hook for reimbursing plan members what they are owed. *See Hughes Comm. Galaxy, Inc. v. United States*, 271 F.3d 1060, 1072 (Fed. Cir. 2001) (declining to reduce breach of contract damages award where plaintiff had independently increased charges to third parties to recover losses, because "[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step").

**Sixth**, contrary to Cigna's argument (Opp. at 40), there is no "disconnect between Plaintiffs' class definitions and Plaintiffs' claims" just because Plaintiffs are not seeking recovery for *all* of their transactions. As discussed above, Plaintiffs only seek compensation for all transactions where they were charged a CareCentrix Rate that was greater than the Provider Rate. Although Plaintiffs only identified in the FAC specific transactions where they were certain such was the case, they made clear in their interrogatory responses that "Plaintiff contends that *all* claims where he paid a cost share that exceeded, or was not based on, the amount paid to a Network Provider are at issue in this Action. . . ." *See, e.g.,* Ex. BI at p. 3.

**Seventh**, Cigna's argument that the class should not be certified because it is not "manageable or 'superior to other available methods'" is incorrect. Opp. at 45. The "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule" *In re Petrobras Sec. Litig.*, 862 F.3d 250, 268 (2d Cir. 2017); *Mahon v. Chicago Title Ins. Co.*, 296 F.R.D. 63, 79 (D. Conn. 2013) (rejecting defendant's argument that "managing the class would impose extraordinary administrative burdens, including contacting agents and reviewing, indexing and storing files, for the defendant as it identifies the class members and/or calculates damages"). Plaintiffs have defined the class with objective criteria using specific plan language provisions and types of

transactions. "The identity of the particular health benefits plan under which any member's particular benefits claim was adjudicated can be located through searches of internal Cigna systems using a combination of automated processes and internal Cigna codes." Stipulation and Order Regarding Identification of Plans [ECF 161]. Even if Cigna's records do not allow for automated "one-stop identification" for all class members, and individualized review of Plans is required, this does not render the class unmanageable or undermine superiority. *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 692 (N.D. Ga. 2016); *Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 136 (S.D.N.Y. 2003) (denying class certification on other grounds, but stating "[e]ven if MetLife is unable to run the database on the older statistical information, the class can be identified through an examination of the individual files of each of the participants"); *Sheet Metal Workers Local No 20 Welfare & Benefit Fund v. CVS Pharm. Inc.*, 2021 WL 1986564, at \*15 (D.R.I. May 11, 2021) (certifying class even though it might require review of 40,000 contracts).

Finally, Cigna's argument that Plaintiffs must demonstrate reliance to certify an ERISA class (Opp. at 41-43) is incorrect. As expressly stated in the very cases cited by Cigna, a claim for breach of fiduciary duty only requires reliance when it is based upon a misrepresentation. *See, e.g., Kelly v. Honeywell Int'l, Inc.*, 233 F. Supp. 3d 302, 319 (D. Conn. 2017) (cited in Opp. at 41) (a plaintiff must show reliance for "a breach of fiduciary duty claim **based on a material misrepresentation or omission**") (emphasis added). Plaintiffs' ERISA claims, by contrast, are based upon overcharges, not an alleged misrepresentation.[32] Accordingly, reliance is not an issue and need not be shown. *See Peters,* 2 F.4th at 237 (claims for "restitution, surcharge, disgorgement,

---

[32] The vast majority of Cigna's argument regarding reliance expressly concerns only RICO claims (*see generally* Opp. at 41-43), which Plaintiffs no longer are pursuing.

and declaratory and injunctive relief … do not require [plaintiff] to demonstrate detrimental reliance") (citing *Amara*, 563 U.S. at 444).[33]

## IV.   CIGNA'S ARGUMENTS REGARDING TYPICALITY ARE WITHOUT MERIT

Cigna's argument that Plaintiffs' claims are not typical (Opp. at 49-50) is incorrect. First, Cigna's discussion of Plaintiff Terry is a red herring. This argument is based on Cigna's global economic theory which, as discussed above, was soundly rejected in *Peters*. Although CareCentrix decided to cover cheaper at-home sleep testing rather than more expensive office testing, that coverage decision has nothing to do with Plaintiff's injury theory, which is whether Terry paid too much under the express terms of his Plan. As in *Peters*, the relevant comparison is whether Terry would have paid less for the at home testing authorized by CareCentrix had he properly been charged the Provider Rate rather than the CareCentrix rate. *See Peters*, 2 F.4th at 218-19. Tellingly, Cigna is silent as to this question. For the same reason, whether Cigna provided coverage to Plaintiff Neufeld is irrelevant under Plaintiffs' legal theory. Rather, the question is whether these Plaintiffs were charged the correct deductible amount for the services that were indisputably covered. *Peters*, 4 F.4th at 222-23. This claim is typical of all class members.

Cigna's claim that "Plaintiffs will be subject to individual defenses" is also unavailing. "[T]he existence of unique defenses is insufficient to defeat typicality unless the defenses threaten to become the focus of the litigation." *Audet v. Fraser,* 332 F.R.D. 53, 68 (D. Conn. 2019). "[I]n fact, a representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him or her that would not impact other class members." *Id.* (internal citations omitted). As this Court has emphasized, "'[t]he unique defense

---

[33] Cigna's arguments that a Rule 23(b)(3) certification is inappropriate because it will purportedly entail individual inquiries (Opp. at 44) or because a class will not be manageable (Opp. at 45) merely restate their prior arguments under different headings and so should be rejected for all of the reasons discussed above.

Case 3:17-cv-01693-KAD   Document 192   Filed 08/11/21   Page 51 of 53

rule . . . is not rigidly applied in this Circuit and is intended to protect [the] plaintiff class—not to shield defendants from a potentially meritorious suit.'" *Estate of Gardner v. Cont'l Cas. Co.,* 316 F.R.D. 57, 72 (D. Conn. 2016) (quoting *Duling v. Gristede's Operating Corp.,* 267 F.R.D. 86, 97 (S.D.N.Y.2010)). For example, in *Butto v. Collecto Inc.,* 290 F.R.D. 372, 384 (E.D.N.Y. 2013), the court noted that "'the presence of a meritorious unique defense as to Plaintiff . . . will not threaten to become the focus of the litigation . . . because it does not go to the heart of Plaintiff's case and will not require considerable time and effort to rebut." *Id.* (quoting *Lapin v. Goldman Sachs & Co.,* 254 F.R.D. 168, 180 (S.D.N.Y.2008).

Here, the "unique defenses" identified by Cigna will not shift the focus of the lawsuit from Cigna's common conduct of violating the Plans by forcing members to pay deductibles at the CareCentrix Rate rather than the Provider Rate. For example, whether any of the Plaintiffs assigned their ***benefits*** to a third party is irrelevant. Plaintiffs do not seek the payment of a benefit, regardless of whether it was or was not assigned; rather, Plaintiffs seek the return of deductible overcharges. Moreover, Cigna has not even argued that the right to return of those overcharges was assigned.

Similarly, Cigna argues that the claims of "some" named Plaintiffs "may" be premature or barred for an alleged failure to exhaust administrative remedies. Cigna identifies only a single named Plaintiff who it claims did not exhaust administrative remedies, and he is no longer seeking appointment as a class representative.[34] *See* Opp. at 59 (citing only the transcript of Plaintiff Burns).

---

[34] Though not required, all Plaintiffs are deemed to have exhausted because the rejection of the appeals of the other Plaintiffs constitutes a "clear and positive showing" that attempting to exhaust would have been futile. *See Bish v. Aquarion Servs. Co.*, 289 F. Supp. 2d 134, 148-50 (D. Conn. 2003). Cigna's "fixed company-wide policy" of calculating deductibles based on the CareCentrix rate further supports that "it would [have been] futile for [Plaintiffs] to pursue administrative remedies with [Cigna]." *Peck v. Aetna Life Ins. Co.*, 2005 WL 1683491, at *3 (D. Conn. July 19, 2005).

The exhaustion requirement applies only to the named Plaintiffs in a class action; once a class representative has exhausted, there is no requirement that others need to do so as well. *See Adams v. Anheuser–Busch Cos.*, 2012 WL 1058961, at *4-5 (S.D. Ohio Mar. 28, 2012); *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 395 (E.D. Pa. 2001); *Laurenzano v. Blue Cross & Blue Shield*, 134 F. Supp. 2d 189, 211 (D. Mass. 2001); *see also* Newburg on Class Actions § 2:3 (5th Ed.). At least two of the Plaintiffs seeking appointment as class representatives appealed their claims which Cigna either denied or did not respond to. Oliver Decl., Ex. K at 037; FAC ¶ 147. That is enough. The "unique defenses" raised by Cigna do not defeat typicality.

## <u>CONCLUSION</u>

For all of the reasons set forth above and in their Opening Memo, Plaintiffs respectfully request that their motion for class certification be granted.

Dated: August 11, 2021                    Respectfully submitted,

                                          */s/ Robert A. Izard*
                                          Robert A. Izard (ct01601)
                                          Craig A. Raabe (ct04116)
                                          Seth R. Klein (ct18121)
                                          Christopher M. Barrett (ct30151)
                                          IZARD, KINDALL & RAABE, LLP
                                          29 South Main Street, Suite 305
                                          West Hartford, CT 06107
                                          Telephone:  860-493-6292
                                          Facsimile:860-493-6290
                                          rizard@ikrlaw.com
                                          craabe@ikrlaw.com
                                          cbarrett@ikrlaw.com

                                          William H. Narwold (ct00133)

40

Mathew Jasinski, (ct27520)
MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone:  860-882-1681
Facsimile:   860-882-1682
bnarwold@motleyrice.com
mjasinski@motleyrice.com


Meghan S. B. Oliver
Charlotte Loper
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: 843-216-9000
moliver@motleyrice.com
cloper@motleyrice.com