**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JEFFREY NEUFELD, AUBREY SREDNICKI, KEVIN JACQUES, NICHOLAS MARSHALL, WILLIAM NINIVAGGI, TROY TERRY, JOYCE WOOD, ROBERT BURNS, TIMOTHY RUTHERSBY, and NATHAN WHEATLEY, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | No. 3:17-cv-1693-KAD |
| vs. | |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY, | September 15, 2021 |
| Defendant. | |

**DEFENDANT CIGNA HEALTH AND LIFE INSURANCE COMPANY'S**
**SUR-REPLY TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ................................................................................................1

ARGUMENT .......................................................................................................1

I.     THE AMENDED CLASS DEFINITION CREATES MORE COMMONALITY, PREDOMINANCE, AND SUPERIORITY ISSUES UNDER 23(A) AND 23(B)(3). ..................................................2

     A.     The Amended Class Definition Does Not Cure Material Plan Variations. ...........................................................................2

     B.     The Amended Class Definition Confirms that Superiority Is Not Met. ........................................................................................8

II.     THE AMENDED CLASS DEFINITION CREATES INCONSISTENT OUTCOMES AND OBLIGATIONS THAT PRECLUDE 23(B)(1) AND (B)(2) CERTIFICATION. .......................................11

III.     PLAINTIFFS MISCHARACTERIZE *PETERS*. ...................................13

     A.     Under *Peters*, the Member's Entire Claims History and Any Gains the Member Received Must Be Considered in Evaluating Financial Injury. .......................................................14

     B.     *Peters* Did Not Prohibit Evaluating Member Savings. .............16

     C.     The *Peters* Court's Remand on Disgorgement, Surcharge, and Injunction Is Irrelevant to Plaintiffs' Class Certification Arguments Here. .......................................................................17

CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*A.D. v. T-Mobile USA, Inc.*,
   2016 WL 3882919 (W.D. Wash. July 18, 2016) ...................................................13

*In re Aetna UCR Litig.*,
   2018 WL 10419839 (D.N.J. June 30, 2018) .......................................................12

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ..............................................14, 15

*Amara v. Cigna Corp.*,
   925 F. Supp. 2d 242 (D. Conn. 2012) ...............................................................20

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ..........................................................................................11

*Estate of Barton v. ADT Security Services. Pension Plan*,
   820 F.3d 1060 (9th Cir. 2016) ..........................................................................15

*Buckley v. Slocum Dickson Med. Grp., PLLC*,
   585 F. App'x 789 (2d Cir. 2014) ........................................................................4

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*,
   771 F.3d 150 (2d Cir. 2014).............................................................................19

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013).............................................................................16, 18, 20

*Des Roches v. Cal. Physicians' Serv.*,
   320 F.R.D. 486 (N.D. Cal. 2017)......................................................................13

*Donovan v. Bierwirth*,
   754 F.2d 1049 (2d Cir. 1985)......................................................................14, 17

*Escalante v. Cal. Physicians' Serv.*,
   309 F.R.D. 612 (C.D. Cal. 2015) ......................................................................13

*Est. of Kenyon v. L+M Healthcare Health Reimbursement Acct.*,
   404 F. Supp. 3d 627 (D. Conn. 2019) .................................................................7

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002)....................................................................................12, 19

*Guevarra v. Progressive Fin. Services, Inc.*,
   2006 WL 3613742 (N.D. Cal. Nov. 30, 2006) ....................................................9

*Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ.*,
  819 F.3d 42 (2d Cir. 2016).................................................................................3

*Z.D. ex rel J.D. v. Grp. Health Co-op.*,
  2012 WL 1977962 (W.D. Wash. June 1, 2012)....................................................13

*Kokoshka v. Inv. Advisory Comm. of Columbia Univ.*,
  2021 WL 3683508 (S.D.N.Y. Aug. 10, 2021).......................................................12

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
  552 U.S. 248 (2008)...........................................................................................12

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
  323 F.R.D. 145 (S.D.N.Y. 2017)..........................................................................12

*Lipstein v. UnitedHealth Grp.*,
  296 F.R.D. 279 (D.N.J. 2013)...............................................................................4

*In re Literary Works in Elec. Databases Copyright Litig.*,
  654 F.3d 242 (2d Cir. 2011)..................................................................................9

*Local 1522 of Council 4 v. Bridgeport Health Care Ctr., Inc.*,
  2018 WL 1419792 (D. Conn. Mar. 18, 2018) ...............................................11, 12

*Mahon v. Chicago Title Ins. Co.*,
  296 F.R.D. 63 (D. Conn. 2013)..............................................................................4

*Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*,
  332 F.R.D. 138 (S.D.N.Y. 2019) ....................................................................13, 14

*Meidl v. Aetna, Inc.*,
  2017 WL 1831916 (D. Conn. May 4, 2017)..........................................11, 12, 13

*Montanile v. Bd. of Trustees of Nat'l. Elevator Indus. Health Benefit Plan*,
  577 U.S. 136 (2016).............................................................................................19

*Nationwide Life Ins. Co. v. Haddock*,
  460 F. App'x. 26 (2d Cir. 2012) ..........................................................................20

*Negron v. Cigna Health & Life Ins. Co.*,
  2021 WL 2010788 (D. Conn. May 20, 2021)............................................... *passim*

*Novella v. Westchester Cty.*,
  661 F.3d 128 (2d Cir. 2011)................................................................................19

*Pegram v. Herdrich*,
  530 U.S. 211 (2000).............................................................................................4

*Peters v. Aetna Inc.*,
   2 F.4th 199 (4th Cir. 2021) ........................................................................... *passim*

*In re Petrobras Securities*,
   862 F.3d 250 (2d Cir. 2017) ........................................................................... 8

*In re Principal U.S. Prop. Acct. ERISA Litig.*,
   2013 WL 7218827 (S.D. Iowa Sept. 30, 2013) ............................................. 16

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   292 F. Supp. 3d 14 (D.D.C. 2017) ............................................................. 14, 20

*Richards v. FleetBoston Fin. Corp.*,
   235 F.R.D. 165 (D. Conn. 2006) ................................................................... 15

*Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*,
   324 F. Supp. 3d 387 (S.D.N.Y. 2018) ........................................................... 18

*Spann v. AOL Time Warner, Inc.*,
   219 F.R.D. 307 (S.D.N.Y. 2003) ..................................................................... 8

*Spears v. Liberty Life Assurance Co. of Boston*,
   2018 WL 2390136 (D. Conn. May 25, 2018) .............................................. 19, 20

*Tri-Star Pictures, Inc. v. Leisure Time Productions, B.V.*,
   17 F.3d 38 (2d Cir. 1994) ............................................................................... 4

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..................................................................................... 13

*Wenig v. Messerli & Kramer P.A.*,
   2013 WL 1176062 (D. Minn. Mar. 21, 2013) ............................................. 8, 9

*Wilkins v. Mason Tenders Dist. Council Pension Fund*,
   445 F.3d 572 (2d Cir. 2006) ......................................................................... 18

*Wit v. United Behav. Health*,
   317 F.R.D. 106 (N.D. Cal. 2016) ........................................................ 12, 13, 20

*Wood v. Prudential Ret. Ins. & Annuity Co.*,
   2017 WL 3381007 (D. Conn. Aug. 4, 2017) ................................................... 8

## Statutes

ERISA § 502(a) ............................................................................. 12, 18, 19, 20

## Other Authorities

3 William B. Rubenstein, Newberg on Class Actions § 7:30 (5th ed.) ................ 9

# INTRODUCTION[1]

Cigna submits this Sur-reply for two reasons. <u>First</u>, Plaintiffs' amended class definition does not cure the Rule 23 failings identified in Cigna's Opposition; it compounds them. For example, implicitly conceding that the same plan variations that sunk class certification in *Negron* exist here, Plaintiffs now try to drop copayments and coinsurance claims from their class, leaving only deductibles. This does not work. For one, Plaintiffs have not shown how to identify plans or class members that fit this new definition. But even if they could, this further-gerrymandered class would guarantee inconsistent interpretations among class members (or even the same member) with the same plans and plan language. This outcome is incompatible with ERISA, as even Plaintiffs admit. Ultimately—and not surprisingly—Plaintiffs cannot cite a single case that has ever certified such a piecemeal ERISA class. This Court should not be the first to do so.

<u>Second</u>, Plaintiffs mischaracterize the Fourth Circuit's decision in *Peters v. Aetna Inc.*, 2 F.4th 199 (4th Cir. 2021). That case recognized that an ERISA plaintiff must aggregate all transactions across their entire claims history to determine if they actually suffered a financial loss. As Dr. Kessler and Dr. May showed—and Plaintiffs do not contradict—this cannot be done on a class-wide basis here. Plaintiffs' class cannot be certified for this separate reason as well.

# ARGUMENT

After filing their Fourth Amended Complaint, Plaintiffs have narrowed this putative class action at every turn. For instance, Plaintiffs previously dropped all members who had Cigna plans that did not contain three cherry-picked pieces of plan language, and also any claim for which the Subcontracted Rate was higher than the CareCentrix Rate. But as Cigna already explained, the

---

[1] Capitalized and defined terms retain their meaning from Cigna's Opposition and references to Exhibits 1-70 are to Dkt. 181-1. Exhibits 71-79 are appended to the Declaration of Warren Haskel filed with this Sur-reply. Unless otherwise noted, emphasis is added, and internal quotations, alterations, and citations are omitted.

resulting gerrymandered classes still failed to satisfy Rule 23. Plaintiffs apparently agree: rather than defend the classes they proposed in their Motion, they now offer an "amended class definition" that even more resembles Swiss cheese. For example, Plaintiffs dropped coinsurance and copayments claims, leaving only members whose deductibles were calculated based on the CareCentrix Rate, not the Subcontracted Rate (*compare* Mot. at 2 *with* Reply, Appx. A). Plaintiffs also dropped their RICO class, leaving only an ERISA class. (Reply at 2 n.2.)  Plaintiffs also now exclude members: (1) with fully-insured policies (the class definition no longer includes "policies," only health benefit plans administered by Cigna); (2) whose claims were administered on any claims platform other than Proclaim; (3) with secondary coverage if their plans contain certain language; (4) with plans not "identified in Cigna's data as subject to ERISA"; or (5) if the member's plan spells "charges" as "Charges." (*Compare* Mot. at 2 *with* Reply, Appx. A.)

After all this slicing and dicing, Plaintiffs now concede that at best only ***four*** of the ten named Plaintiffs could possibly be part of the amended putative class. (Reply at 2 n.2.) As Judge Meyer recognized in *Negron*, such "ever-evolving class definitions" and "whack-a-mole approach" are sure signs that something is awry with the class. *See Negron v. Cigna Health & Life Ins. Co.*, 2021 WL 2010788, at \*19, \*21 (D. Conn. May 20, 2021). Plaintiffs' efforts to change course midway through briefing did not carry the day in *Negron*, and this case is no different.

## I.    THE AMENDED CLASS DEFINITION CREATES MORE COMMONALITY, PREDOMINANCE, AND SUPERIORITY ISSUES UNDER 23(A) AND 23(B)(3).

### A.    The Amended Class Definition Does Not Cure Material Plan Variations.

*Negron* recognized that "plaintiffs' ever-evolving class definitions undermine their argument that there are common issues across thousands of plans that are suitable for class-wide resolution." *Id.* at \*19. So too here.

Variation in Cigna's Discretionary Authority and ASO Agreements. Plaintiffs do not

dispute that the standard of review for Cigna's interpretation varies plan-by-plan. (Reply at 7-10.) They argue that this is irrelevant because Cigna is not entitled to discretion for allegedly violating DOL claims procedure regulations. (*Id.* at 7 (citing *Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ.*, 819 F.3d 42, 45 (2d Cir. 2016)).) But *Halo* in fact underscores that this inquiry is member-specific:  it held that failure to comply with these regulations "will result in **that claim** being reviewed *de novo* . . . unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the regulation in the processing of a **particular** claim was inadvertent *and* harmless." *Id.* at 45 (last emphasis in original).

As in *Halo*, any putative violation would turn on an individualized inquiry into each member's claims. For example, Plaintiffs say that Cigna kept the Subcontracted Rate a secret, but at least two named Plaintiffs testified they were told the Subcontracted Rate. (Ex. 59, 178:17-21; Ex. 71, 158:8-16.) Plaintiffs also complain that Cigna did not identify the plan provisions based on which it decided their appeals, but Mr. Ninivaggi's appeal did not mention the Subcontracted Rate at all (Ex. 72 at Ninivaggi_0029; Ex. 73 at Ninivaggi_0036), and other Plaintiffs did not even file a formal appeal. (*See, e.g.*, Ex. 74 at 1; Ex. 75 at CIGNA_NEUFELD00773092).

Plaintiffs also argue that any variation in Cigna's discretionary authority is irrelevant, because no matter the standard of review, Cigna "may not interpret uniform terms in different ways." (Reply at 8.) That misses the point, which is that **this Court** may analyze Cigna's interpretation differently based on what standard of review applies. Next, Plaintiffs argue that plan language is unambiguous in their favor. (Reply at 9.) This is wrong (Opp. at 12-14), but at the very least, the language is ambiguous—which means that this Court would have to undertake a plan-by-plan review to determine what standard of review applies, and then decide whether Cigna's interpretation of that language for that plan was legally correct (under *de novo* review) or

reasonable (under abuse of discretion). *See Buckley v. Slocum Dickson Med. Grp., PLLC*, 585 F. App'x 789, 793 (2d Cir. 2014). Finally, Plaintiffs also argue that plan-by-plan review does not defeat class certification, but the one case they cite involved title insurance, not ERISA (Reply. at 10 (citing *Mahon v. Chicago Title Ins. Co.*, 296 F.R.D. 63, 76 (D. Conn. 2013))), and courts that have actually considered variations in discretionary authority have held that such variations do defeat class certification. *See Lipstein v. UnitedHealth Grp.*, 296 F.R.D. 279, 290 (D.N.J. 2013).

Finally, Plaintiffs do not dispute that many of Cigna's ASO agreements with plan sponsors specifically disclosed that Cigna would calculate benefits using "fee-for-service charges for various **vendors** and other providers/arrangers of health care services" like CareCentrix. (Ex. 55, at CIGNA_NEUFELD00774325.) Plaintiffs argue that this disclosure is irrelevant because ASO agreements cannot vary the terms of the ERISA plan. (Reply at 15-16.) But this argument also misses the point. If the ASO agreement did not give Cigna discretion in calculating CareCentrix's fee-for-service charges, then Cigna was not a fiduciary when it did so—which then would mean that Cigna could not have breached any fiduciary duty. *See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) ("[T]he threshold question" is whether the administrator was acting as a fiduciary "when taking the action subject to complaint."); *Peters*, 2 F.4th at 230-31 (recognizing that terms of ASO agreements were critical in determining whether Aetna was exercising its discretion in interpreting the plan to include Optum's administrative fees). Just as important, a provision in Cigna's ASO agreements stating that Cigna would calculate benefits based on a vendor's fee-for-service charges is at least a factor the Court should consider in determining if Cigna was acting in good faith when it based a member's cost-share on the CareCentrix Rate. *Tri-Star Pictures, Inc. v. Leisure Time Productions, B.V.*, 17 F.3d 38, 45 (2d Cir. 1994) ("[I]n exercising [contractual] right[s], [a party] cannot be said to have acted in bad faith.").

4

<u>Variations in Charges, Covered Expenses, and the Portion Clause.</u> Plaintiffs' case hinges on three pieces of plan language: (1) a member "may be required to pay a portion of the Covered Expenses" ("portion" clause); (2) "The term Covered Expenses means the expenses incurred by or on behalf of a person for the charges listed below if they are incurred after he becomes insured for these benefits" ("Covered Expenses" provision); and (3) "The term 'charges' means the actual billed charges; except when the provider has contracted directly or indirectly with Cigna for a different amount" ("charges" definition). (Mot. at 2.) From this, Plaintiffs argue that members must "pay a cost share that was a 'portion' of 'Covered Expenses,'" which they say must be based on "charges" of subcontracted providers, not CareCentrix. (Mem. at 1-2.)

Plaintiffs' interpretation ignores material variations in the plans, and the amended class definition does not cure these problems. For example, Cigna showed that the meaning of charges in the plans varies because the Covered Expenses provision separately defines the charge for each Covered Expense under the plan. (Opp. at 20-24) For Durable Medical Equipment ("DME"), some plans define Covered Expenses as "charges made for purchase or rental of [DME] that is . . . provided by a *vendor*[.]" (*Id.* at 21.) This reference to a "vendor" providing the DME rebuts Plaintiffs' argument that CareCentrix is not a "provider" and that its fees thus do not qualify as charges under the Covered Expenses portion (*see* Reply at 3), which the Court should consider in evaluating Cigna's interpretation. That this language varies both for DME and among the types of services CareCentrix provides means this will also require plan-by-plan analysis.

Plaintiffs insist this language is "irrelevant" because it only describes what is covered, not how cost-share should be calculated. (Reply at 11-12.) But Plaintiffs are asking this Court to skip a step that their own amended class definition requires: the only way that Plaintiffs can get from their interpretation of the portion clause to the charges definition is through the Covered Expenses

provision. The entirety of the Covered Expenses provision modifies the meaning of the charges in the Covered Expenses preamble, just as much as the charges definition does.

Plaintiffs also have no answer to the "Allowable Expense" language in the coordination of benefits section in certain plans, which provides that "[i]f Cigna contracts with an entity to arrange for the provision of Covered Services . . . the amount that Cigna has agreed to pay that entity is the allowable amount used to determine your coinsurance or deductible payments." Plaintiffs' solution is, again, just to ignore this language—by removing members who have secondary insurance ***and*** this plan language from the class. (Reply at 12.) But Plaintiffs do not explain how this excision can be done without individualized inquiry into each member's secondary coverage and plan language. (*See also infra* Sec. I.C.) More important, Plaintiffs cannot simply ignore plan provisions that they do not like. Whether a plan member has secondary insurance or not, the Court must read the plan as a whole—and this language is clearly relevant to Cigna's interpretation of what the charge is for calculating the deductible claims for plans with this language.

Finally, as Judge Meyer recognized in *Negron*, the portion clause cannot be interpreted in isolation; the Court must also consider the definitions of "Copayments," "Deductibles" or "Coinsurance" in interpreting the meaning of the plan. 2021 WL 2010788, at *20-*22. This language also varies from plan to plan, as Cigna showed. (Opp. at 24-26.)

With no answer to these variations, Plaintiffs offer to limit the class to just deductible claims. But this is no silver bullet either. To start, Plaintiff Neufeld's plan definition of Deductible does not refer to either Covered Expenses or charges (Opp. at 24), so Plaintiffs' supposedly "uniform" interpretation of charges and Covered Expenses makes no sense even for his plan. Nor is it proper to cabin Plaintiffs' interpretation of portion to just Deductibles—when the language also includes Copayments and Coinsurance—because that would render those terms superfluous.

*See Est. of Kenyon v. L+M Healthcare Health Reimbursement Acct.*, 404 F. Supp. 3d 627, 632 (D. Conn. 2019). Last, Plaintiffs concede that at least one plan's portion clause does not even include deductibles at all. (Reply at 14 n.8.) Plaintiffs dismiss this plan as an outlier. It is not. (*See, e.g.*, Ex. 76 at CIGNA07875404; Ex. 77 at CIGNA08328740; Ex. 78 at CIGNA02985602.) Regardless, these new problems that pop up every single time Plaintiffs propose a class are precisely what led Judge Meyer to conclude in *Negron* that plaintiffs' "whack-a-mole approach to what appear to be material [plan language] variations is not tenable," and that he could not "simply take plaintiffs' word that other variations do not exist in all the other thousands of plans that fall under the Class . . . definitions." 2021 WL 2010788, at *21.

Variation in Service-Specific Deductibles. The plans also vary in how they define service-specific deductibles, as well as in how members accumulate deductibles. (Opp. at 28.) Plaintiffs contend that these provisions have "nothing to do" with how to calculate deductibles on individual claims. (Reply at 14.) Not so. As *Negron* explained, "variations in how each Class . . . member's cost-share payment is calculated . . . ***would*** be material," such that "[i]f the plans provide for different methods or means of calculating that amount—rather than a single method or means," then certification is inappropriate. 2021 WL 2010788, at *15.

Here, there is no "single method or means" to calculate the deductible payment. (Opp. at 26-29.) To start, Plaintiffs do not even bother explaining how they could identify plans with service-specific deductibles, or how the Court should interpret plans that are silent as to whether service-specific deductibles or plan-level deductible applies. (*Compare* Ex. 46 CIGNA08293057 at -068, -073 ("$200 DME deductible per Contract Year, then 100%" compared to $400 plan deductible) *with* Ex. 47, CIGNA03561786 at -804 ("Regardless of the Individual Plan Deductible, the Home Health Care Deductible will not exceed $50.").) And even if Plaintiffs could propose a

workable method for identifying plans in these different categories (or show that there is even a manageable number of these different categories of plans), that still leaves a slew of other problems—because calculating a member's deductible based on a different rate (*i.e.*, the Subcontracted Rate) would require consulting all, some, or none of these service-specific and accumulation provisions; and because calculating that deductible payment would also depend on the plan year, on the member's other claims in that year, and on the network status of claims. Plaintiffs have not shown how this daunting analysis could be done on a class-wide basis.

## B.    The Amended Class Definition Confirms that Superiority Is Not Met.

Rule 23(b)(3) requires Plaintiffs to show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Cigna's Opposition showed that courts often deny certification in similar ERISA cases based on this factor, where "[r]equiring the Court to conduct . . . inquiries into thousands of plans would be unmanageable," and particularly where plaintiffs have "not shown that it will be unnecessary to conduct highly individualized, fact-intensive inquiries." *See Wood v. Prudential Ret. Ins. & Annuity Co.*, 2017 WL 3381007, at *6 (D. Conn. Aug. 4, 2017); *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 321 (S.D.N.Y. 2003). Plaintiffs do not even try to distinguish these cases,[2] and their new class definition does not cure this problem. In fact, as explained below, Plaintiffs have only made it worse.

First, gerrymandering a class "that resolves only a fraction of the possible claims" for strategic reasons having nothing to do with the underlying claim is neither a "fair[]" nor "efficient[]" way to "adjudicat[e] the controversy." *See Wenig v. Messerli & Kramer P.A.*, 2013 WL 1176062, at *5 (D. Minn. Mar. 21, 2013) (denying class certification of FDCA claim where

---

[2]  Plaintiffs point to *In re Petrobras Securities*, 862 F.3d 250, 268 (2d Cir. 2017), but there the Second Circuit held that difficulties in managing a class action should be addressed under the superiority factor rather than through an ascertainability requirement. The rest of the cases Plaintiffs cite are distinguishable, as they are not ERISA cases that deal with plan interpretation and re-adjudication issues. (Reply at 36.)

plaintiffs attempted to limit class to only 1,000 or 2,000 consumers when 30,000 received the improper letter at issue). Other courts have recognized that such "arbitrary" gerrymandering of a class is unfair to defendants because it would "encourage piecemeal litigation" and "contravenes the central purpose of class actions: avoiding multiple lawsuits." *See, e.g.*, *Guevarra v. Progressive Fin. Services, Inc.*, 2006 WL 3613742, at *2-3 (N.D. Cal. Nov. 30, 2006) (denying class certification where class was arbitrarily limited to one specific creditor). Plaintiffs' continued slicing-and-dicing of the putative class here triggers those exact same concerns.

Even with their amended class definition, the core of Plaintiffs' theory remains that under the plans, members' cost-share must be based on "charges" of subcontracted providers, not CareCentrix. But Cigna's interpretation applies ***both*** to claims where the Subcontracted Rate was lower than the CareCentrix Rate, and where it was higher, as well as all types of cost-sharing. The nature of Plaintiffs' claims would thus necessarily include the class members they are now trying to exclude, even though some would be worse off under Plaintiffs' interpretation. And those members who believed they would be better off may seek to use that decision for offensive collateral estoppel in certifying a copayment class, a coinsurance class, a Facets class, a Power class, a Diamond class, a fully-insured class, etc. *See id.*, 2006 WL 3613742, at *2-3. That outcome is not fair to Cigna or the excised class members, but it is also a waste of judicial resources and "deprive[s] the class[ ] action device of much of its utility." *See Wenig*, 2013 WL 1176062, at *6.

The proper solution here would be subclasses, not excising members of the class. But Plaintiffs no doubt thought of that (Dkt. 130 (delineating subclasses in prior class definition)), and recognized that the number of subclasses needed would create "unnecessary administrative inefficiencies" that defeats superiority. *See* 3 William B. Rubenstein, Newberg on Class Actions § 7:30 (5th ed.); *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 257 (2d

Cir. 2011) (seven subclasses are "surely beyond the point at which reclassification . . . must end").

Second, it is telling that Plaintiffs' latest proposed class definition defines two of the four remaining named Plaintiffs out of the class. Mr. Jacques' 2018 Visa plan does not contain the class language (Opp. at 45; Ex. 3, Decl. of Karen Anderson, Ex. 1), and his deductible claims were under that plan—which means that he does not meet the amended class definition. (*See generally* Ex. 79.) And Mr. Neufeld is not part of the amended definition either, since his claims were covered by a fully-insured policy, which Plaintiffs now exclude from the class. (Ex. 20, at CIGNA_NEUEFLD00000629.) The fact that Plaintiffs' counsel themselves apparently could not figure out whether two of their four remaining class representatives are within the class further underscores the complexity of these member-specific inquiries, and it confirms that deciding who is in and who is out of Plaintiffs' putative class of millions of members is not feasible class-wide.

Third, recognizing that members with secondary insurance also raise significant class certification concerns, Plaintiffs propose dropping any member who has secondary insurance, and whose plan contains material variation in the meaning of charges in the coordination of benefits section. (*See* Reply, Appx. A.) But again, this is easier said than done, because Plaintiffs have offered no way to identify these plans. Moreover, Cigna typically does not know when a member submits a claim for secondary insurance, nor is that information reflected in the claims data. (Opp. at 40; May ¶¶ 133-135.) The example of Ms. Wood, a former class representative with secondary insurance, was telling. Cigna had to conduct member-specific discovery into Ms. Wood's primary and secondary plan documents and records—followed by a deposition—to determine that she had secondary insurance and submitted a claim to another insurer. This is quintessential individualized inquiry, which will likewise be required for other similarly-situated members.

Fourth, Plaintiffs argue that the "charges" definition they rely on does not vary (Reply at

12-13), but this is belied by the fact that Plaintiffs have attempted to excise all plans where the definition says "Charges" as opposed to "charges." (*Id.*, Appx. A & n.1.) They do not explain how that can be done on a class-wide basis without a manual, plan-by-plan review.

## II.    THE AMENDED CLASS DEFINITION CREATES INCONSISTENT OUTCOMES AND OBLIGATIONS THAT PRECLUDE 23(B)(1) AND (B)(2) CERTIFICATION.

Plaintiffs' amended class is no more a Rule 23(b)(1) or (b)(2) class than it is a (b)(3) class. First, Plaintiffs misleadingly frame Cigna's under-inclusivity point by claiming the issue is that the 23(b)(1) and (b)(2) classes do not include "***all*** plan members." (Reply at 22.) The problem with these classes was not that they did not include all plan members—it was that they did not include all plan members who would be impacted by Plaintiffs' plan interpretation that the "charge" is the Subcontracted Rate, not the CareCentrix Rate. This would create a situation where the same plan was interpreted differently for no reason other than how Plaintiffs defined their class.

The amended class definition exacerbates this problem by excluding coinsurance and copayments claims, which would be subject to the same interpretation under the same plan terms as the deductible claims still in the class. Plaintiffs argue that "interpreting identical Plan terms differently from one member to the next is arbitrary and capricious." (Reply at 8, 15.) Adopting Plaintiffs' theory would thus result in the precise outcome they say ERISA forbids: "***inconsistent interpretations of the plan language at issue, requiring Cigna to calculate some members' cost-shares differently than others***." (Mot. at 3.) Plaintiffs' new class thus creates the problem that Rule 23(b)(1) is designed to avoid. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

None of Plaintiffs' cases supports a different result. For example, *Meidl v. Aetna, Inc.*, 2017 WL 1831916 (D. Conn. May 4, 2017)—which involved only a subset of plan members—still included all plan members who were allegedly injured by defendant's policy to deny coverage for certain services. *Local 1522 of Council 4 v. Bridgeport Health Care Ctr., Inc.*, 2018 WL 1419792,

at *11 (D. Conn. Mar. 18, 2018) (recognizing distinction).[3] This means that any plan member with an interest in the dispute over plan benefits was part of the class. In contrast, here, as in *Local 1522,* "the distinctions that the plaintiffs have asserted are irrelevant to the harm alleged or the relief requested," which creates an under-inclusive class under 23(b)(1) and (b)(2). *Id.*[4]

 <u>Second</u>, a Rule 23(b)(2) "reprocessing" injunction is inappropriate because Plaintiffs admit that their claim is for money damages, not equitable relief under ERISA:   "Plaintiffs are not seeking the payment of benefits from Plan funds. Instead, ***they seek to be compensated for the overcharges*** Cigna wrongfully imposed on Plaintiffs." (Reply at 16.) "A claim for money due and owing under a contract is quintessentially an action at law." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002). Nor can Plaintiffs obscure the nature of this monetary relief by framing it as a request for an injunction, since "[a]lmost invariably . . . suits seeking (whether by judgment, ***injunction***, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages," and "[m]oney damages are, of course, the classic form of legal relief." *Id.*; *In re Aetna UCR Litig.*, 2018 WL 10419839, at *26 (D.N.J. June 30, 2018) (denying request for reprocessing injunction when claim was essentially for monetary relief).[5]

 This makes cases like *Meidl* distinguishable, because they involved the reversal of a policy to deny certain services as experimental and therefore non-covered—and the court found that if

---

[3] Plaintiffs' other cases are either the same as *Meidl* (*see, e.g.*, *Wit v. United Behav. Health*, 317 F.R.D. 106 (N.D. Cal. 2016) (class of plan members affected by coverage guideline), *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145 (S.D.N.Y. 2017) (plan members invested in specific funds subject to mismanagement)), or are distinguishable on the facts, *see, e.g.*, *Local 1522*, 2018 WL 1419792 at *12 (distinguishing *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008) because plaintiff there did not bring claims that implicated the plan as a whole).

[4] Plaintiffs try to distinguish *Local 1522* as a Section 502(a)(2) case, but its rationale is not limited to that section, 2018 WL 1419792 at *1, as is evident from at least one court's reliance on *Local 1522* for a 502(a)(3) claim. *Kokoshka v. Inv. Advisory Comm. of Columbia Univ.*, 2021 WL 3683508, at *5 n.5 (S.D.N.Y. Aug. 10, 2021). And courts rarely certify 23(b)(1) and 23(b)(2) classes for ERISA § 502(a)(1)(B) claims, since they are claims for money damages.

[5] Unlike the cases Plaintiffs cite, which involve denials of coverage, *In re Aetna UCR* involved recalculation of the reimbursement rate for allegedly underpaid benefit claims, 2018 WL 10419839 at *27, as is the case here.

the plan later determined that the claim was covered under the revised policy, then payment of benefits was incidental to this relief. 2017 WL 1831916, at *4.[6] In contrast, the injunction Plaintiffs seek is ***purely*** for monetary relief, since what Plaintiffs really want is for Cigna to recalculate their deductibles to compensate them for a supposed "overcharge." (Reply at 23-24.) In fact, *Meidl* itself distinguished claims for recalculation of backpay, like the overcharges here, as being inappropriate for a reprocessing injunction—because that is a claim for individualized monetary relief that is not incidental to injunctive relief. 2017 WL 1831916, at *4 (citing *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 367 (2011)).

Plaintiffs fare no better by claiming that they "seek a ***uniformly*** applied equitable injunction to require Cigna to apply the Plan terms and reprocess the transactions using the Provider Rate rather than the CareCentrix Rate." (Reply at 23.) There is nothing "uniform" about Plaintiffs' injunction, which demands that Cigna reprocess claims based on Plaintiffs' interpretation for deductibles claims (not coinsurance or copayments claims), for only certain plans with certain plan language, on one claims system, and only when the Subcontracted Rate is higher. This is the type of injunction Rule 23(b)(2) was designed to avoid. *See Dukes,* 564 U.S. at 360.

## III.    PLAINTIFFS MISCHARACTERIZE *PETERS*.

Throughout their Reply, Plaintiffs cite to the Fourth Circuit's decision in *Peters*, arguing that the reversal of the district court's decision to deny class certification undercuts Cigna's opposition. (Reply at 1.) But the Fourth Circuit offered "no opinion on [plaintiff's] ability to meet the full criteria of Rule 23 on remand," including any of the requirements of Rule 23(b). 2 F.4th at

---

[6] *See Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, 332 F.R.D. 138, 145-46, 151-54 (S.D.N.Y. 2019) (denial of office-based surgery claims); *Des Roches v. Cal. Physicians' Serv.*, 320 F.R.D. 486, 495, 506-07 (N.D. Cal. 2017) (denial of outpatient rehab claims); *A.D. v. T-Mobile USA, Inc.*, 2016 WL 3882919, at *1-3 (W.D. Wash. July 18, 2016) (denial of autism treatment); *Wit*, 317 F.R.D. at 114-17 (denial of behavioral health treatment); *Escalante v. Cal. Physicians' Serv.*, 309 F.R.D. 612, 616, 619-20 (C.D. Cal. 2015) (denial of experimental treatment); *Z.D. ex rel J.D. v. Grp. Health Co-op.*, 2012 WL 1977962, at *2, *6-7 (W.D. Wash. June 1, 2012) (denial of mental health treatment).

244. And on one of the few issues relevant to class certification that *Peters* did address—financial injury for an ERISA claim—the Fourth Circuit was clear that Plaintiffs cannot gerrymander a class to include only benefit claims where a member suffered a financial loss. *Id.* at 225-26.

### A.    Under *Peters*, the Member's Entire Claims History and Any Gains the Member Received Must Be Considered in Evaluating Financial Injury.

Just like Plaintiffs do here (Reply at 19-20), the plaintiff in *Peters* argued that "offsetting losses with gains is erroneous in a merits analysis" and that the court should "focus exclusively on the claims in which she suffered a financial loss via the bundled rate." *Id.* at 223-24. While the Fourth Circuit held this approach may work for Article III standing, it was equally clear that this theory of financial injury for ERISA claims—and thus Plaintiffs' theory in this case—was wrong.[7]

Relying on *Donovan v. Bierwirth*, 754 F.2d 1049 (2d Cir. 1985), the Fourth Circuit held that "the measure of loss applicable in an ERISA trust circumstance like this case requires a comparison of what [plaintiff] . . . would have paid had [plaintiff's] claims excluded Optum's administrative fee with what they actually paid on those claims." *Peters*, 2 F.4th at 223. "Correspondingly, if what [plaintiff] . . . actually paid on Peters' claims is less than—or equal to— what they would have paid had [plaintiff's] claims excluded Optum's administrative fee, no loss was sustained." *Id.* This "would include all [plaintiff's] health care expenses, not just those from Optum." *Id.* at 224. To hold otherwise would give plaintiff "relief where the Second Circuit's *Donovan* framework helps her," but ignore it "when that same framework shows she actually had a gain or broke even."[8] *Id.* Applying this framework, the *Peters* court credited Dr. Kessler's

---

[7] Just as they conflate *Peters*' analysis of Article III standing and proof of financial injury and loss (*e.g.*, Reply at 19-20, 28-29), Plaintiffs cite cases discussing the injury required to show Article III standing, not financial loss. *E.g.*, *Med. Soc'y of N.Y.*, 332 F.R.D. at 147 (dealing with Article III standing).

[8] None of Plaintiffs' cases hold that financial injury under ERISA should be calculated any other way. *See, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 136 (D.D.C. 2017) (discussing antitrust injury, but denying class certification for failing to prove predominance because of uninjured class members); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100, at *45 (E.D.N.Y. Oct. 15, 2014) (discussing antitrust injury).

analysis showing that "when all of her health care claims are considered," she "avoided paying greater participant responsibility," and thus "experienced no direct financial injury." *Id.* at 227.

Like in *Peters*, Dr. Kessler identified examples of Cigna members who paid less as a result of Cigna's use of the CareCentrix Rate. (Kessler ¶ 89 (showing that on balance, the member came out ███ ahead when considering all CareCentrix claims).) He also found examples of members who were not harmed because they hit their out-of-pocket maximum (*id.* ¶ 97), or because their payments were bundled with other services (*id.* ¶ 57), or because they actually did not pay CareCentrix any cost-share. (*Id.* ¶¶ 108-109.) And Dr. May showed these issues were endemic to the class (May ¶¶ 93-94 (7% to 9% of members had a least one winner claim); *id.* ¶ 112 (16% to 23% of the members with a claim within Plaintiffs' proposed class potentially hit their out-of-pocket maximums); *id.* ¶ 115 (CareCentrix did not collect ███ of what members actually owed)), necessitating individualized inquiries to determine any class member's financial loss or damages.

Nothing in the amended class definition fixes these problems, since they all apply to deductibles as well. (*See* May ¶¶ 72-79, 82, 115.) And while the Fourth Circuit did not reach predominance, other circuits have held that if a substantial number of class members suffered no injury, the need to identify those individuals will predominate. (Opp. at 36, 38 (citing cases).)[9]

The same issues apply to Plaintiffs' flawed argument that they have shown class-wide damages (Opp. at 37-40); in fact, the amended class definition—remarkably—makes things even worse. (*See supra* Sec. I.C.) Attempting to duck this complexity, Plaintiffs throw up their hands and argue that if "there are any 'holes' in the evidence because of the unavailability of data," Cigna "has the duty to provide that information." (Reply at 32.) This, again, misses the point. The *Estate*

---

[9]  None of Plaintiffs' cases suggest otherwise. *See, e.g.*, *Richards v. FleetBoston Fin. Corp.*, 235 F.R.D. 165 (D. Conn. 2006) (discussing prospective injunctive and declaratory relief, not financial loss); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100, at *44 (E.D.N.Y. Oct. 15, 2014) (only a few "outliers" were uninjured).

of *Barton v. ADT Security Services. Pension Plan*, 820 F.3d 1060 (9th Cir. 2016) case on which Plaintiffs rely involved a situation where the plan administrator did not have the records at all. Here, the information is available—but only through ***individualized inquiry***, which makes it incompatible with class-wide resolution. (*E.g.*, Dkt. 161 ¶¶ 3-4; *see* Opp. at 37-40.)

Plaintiffs also try to hand-wave *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) away—they argue that they do not need a damages model at all. (Reply at 30-33.) But *Comcast* says that Plaintiffs must establish "through evidentiary proof" that damages are "capable of measurement on a classwide basis." 569 U.S. at 33-34. Plaintiffs have put forth no such evidence. And it is telling that Plaintiffs point to no case that certified an ERISA class action like this one— which would require re-adjudicating millions of individual benefit transactions under thousands of plans—with no damages model or evidence of class-wide damages at all. (Reply at 30-33.) Courts considering similar paltry showings have denied class certification. (Opp. at 34-35 (citing cases).) Plaintiffs also promise that some unnamed expert can later calculate class-wide damages. (Reply at 32 & n.28.) But as *Comcast* says, a class cannot be certified based on such "assurances" alone. *See* 569 U.S. at 37-38; *see also In re Principal U.S. Prop. Acct. ERISA Litig.*, 2013 WL 7218827, at *36 (S.D. Iowa Sept. 30, 2013) (denying class certification and recognizing that damages model flunked *Comcast* where "there are simply too many variables to control at both the class certification and the damages stages of litigation").

Finally, it is "plaintiffs who bear the burden" to satisfy Rule 23, "not Cigna's burden to disprove it." *Negron*, 2021 WL 2010788, at *21. Plaintiffs have not put forth evidentiary proof of injury or class-wide damages; their Motion thus fails.

### B.    *Peters* Did Not Prohibit Evaluating Member Savings.

Cigna's Opposition showed that some members (like Plaintiff Terry) actually benefited given the money they saved on their home sleep tests through CareCentrix. (Kessler ¶¶ 80-81.)

Cigna also showed that the existence of net winners, like Mr. Terry, presents typicality, adequacy, and predominance issues that defeat class certification. (Opp. at 36, 44, 49-50.) In their Reply, Plaintiffs do not dispute that these substantial savings exist, but instead attempt to explain them away as irrelevant. To get there, they point to *Peters* as a rejection of what Plaintiffs call the "global economic benefit" of the Optum relationship. (*E.g.*, Reply at 3.) Plaintiffs mischaracterize both *Peters*' holding as well as Cigna's evidence of member savings in this case.

To start, the Fourth Circuit said nothing about disregarding the "global economic benefit" of the Optum relationship. In fact, it held the ***opposite***. *Peters*, 2 F.4th at 225 ("[W]e assess whether Peters and the Plan suffered a loss ***in the aggregate*** or experienced a gain based on all of her claims in each year."); *id.* at 224 (criticizing the plaintiff's damages model for failing to "include all her health care expenses, not just those from Optum."). That is not surprising, since the Second Circuit's decision in *Donovan*—on which *Peters* relied—holds the same. 754 F.2d at 1056.

Ignoring this holding, Plaintiffs point to *Peter*s' disagreement with the district court's view that the proper "but-for" world is one where "the challenged agreements were not entered into in the first place." 2 F. 4th at 223-24. While Cigna disagrees with the Fourth Circuit's holding on this point, it is not relevant to the kind of savings that Cigna addressed in its Opposition, like those of Mr. Terry—which flow not from the "but-for" world where the agreements do not exist, but the real-world savings on home sleep test claims that Mr. Terry actually received as part of the sleep program. (Kessler ¶¶ 80-81 (assuming Plaintiffs' but-for world is correct, but showing that Terry saved $288.92 for his services overall).) This is exactly the kind of "aggregate" gain discussed in both *Peters* and *Donovan, see Peters*, 2 F. 4th at 224, to which Plaintiffs have no answer.

## C.     The *Peters* Court's Remand on Disgorgement, Surcharge, and Injunction Is Irrelevant to Plaintiffs' Class Certification Arguments Here.

Finally, *Peters* ordered the district court to consider the equitable remedies of surcharge,

disgorgement, and injunction on remand. *Id.* at 242-43. Hoping to capitalize on the Fourth Circuit's instruction, Plaintiffs say that they also included surcharge, disgorgement and injunctive relief in their complaint, and they argue that even if their restitution claims fails, these remedies supposedly still save their ERISA class. (Reply at 34.) Plaintiffs are wrong for several reasons.

First, **pleadings** are not enough at this **class certification** stage. Plaintiffs have offered no proof that the class is entitled to these remedies, nor can they explain how their "simple" damages formula ties to the equitable remedies in *Peters*, or to Plaintiffs' Section 502(a)(1)(B) benefits or Section (a)(3) breach of fiduciary duty claims—let alone that these theories would uniformly apply across the class. *See Comcast*, 569 U.S. at 35. Plaintiffs bear the burden of proof to show that class certification is warranted, and they failed to carry their burden on these equitable remedies. *See Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 324 F. Supp. 3d 387, 395 (S.D.N.Y. 2018) ("[As] the party seeking class certification, Royal Park bears the initial burden [under Rule 23] and cannot solely wait to respond to deficiencies U.S. Bank raises in its in opposition.").

Second, there are important differences between the claims and remedies sought in *Peters* and those here. In *Peters*, plaintiff did not seek to certify a 502(a)(1)(B) claim for plan benefits.[10] 2 F.4th at 213. This is significant because "Section 502(a)(3) has been characterized as a 'catch-all' provision which normally is invoked only when relief is not available under § 502(a)(1)(B)" and "the provision authorizes solely equitable relief," which "means that money awards are available in suits brought under § 502(a)(3) only in very limited circumstances." *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 578-79 (2d Cir. 2006). While the "limited circumstances" needed for relief under § 502(a)(3) may have been present in *Peters*, they are not here. Plaintiffs have a 502(a)(1)(B) claim, so there is no showing of the need for 502(a)(3) relief.

---

[10] Plaintiffs also brought a 502(a)(2) claim on behalf of the plans, which Plaintiffs have discarded here by only seeking member's cost-share, and not any equitable relief on behalf of the plans. (Mot. at 3.)

Plaintiffs also offer no basis to distinguish between the relief for the 502(a)(1)(B) claim and the equitable remedies they seek under 502(a)(3).[11] In fact, they disclaim such a difference: Plaintiffs seek to certify an "ERISA Class" which seek the same relief on the same theory of "overcharge[]." (Reply at 37.) In analogous circumstances, where "Plaintiff seeks restitution, disgorgement of profits made by withholding benefits, surcharge, and an injunction requiring Defendants to pay benefits allegedly owed," those claims "are of the type which the Supreme Court has held almost invariably" seek monetary rather than equitable relief. *Spears v. Liberty Life Assurance Co. of Boston*, 2018 WL 2390136, at *9 (D. Conn. May 25, 2018) (dismissing equitable claims when 502(a)(1)(B) claim was available); *see also Great-West,* 534 U.S. at 214 (claims seeking "the imposition of personal liability for the benefits" are not equitable in nature). Because Plaintiffs' 502(a)(1)(B) and 502(a)(3) claims are indistinguishable, equitable relief is unavailable.

<u>Third</u>, Plaintiffs have not shown (let alone by preponderance of the evidence) that they are entitled to these equitable remedies on a class-wide basis.

**Disgorgement**: "Equitable remedies are, as a general rule, directed against some specific thing; they give or enforce a right to or over some particular thing . . . rather than a right to recover a sum of money generally out of the defendant's assets." *Montanile v. Bd. of Trustees of Nat'l. Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 145 (2016). In the ERISA context, plaintiffs must be able to "trace[] [the money they seek] to particular funds or property in the defendant's possession," rather than point more generally to a right to "recover[] money to pay for some benefit the defendant had received from [the plaintiff]." *See Great-West*, 534 U.S. at 213; *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150, 153-54 (2d Cir. 2014).

---

[11]   While the Court previously denied Cigna's motion to dismiss Plaintiffs' 502(a)(3) claim as duplicative at the pleading stage, that does not relieve them of their burden at the class certification stage, which requires proof by a preponderance of the evidence. *See Novella v. Westchester Cty.*, 661 F.3d 128, 148-49 (2d Cir. 2011).

This traceability requirement applies to disgorgement claims. *Spears*, 2018 WL 2390136, at *9. Here, Cigna never received any portion of the "spread," as any alleged "overpayments" were paid to CareCentrix, not Cigna. (Ex. 8 113:3-17) Plaintiffs do not explain what other funds Plaintiffs are seeking to disgorge from Cigna, or how they plan to identify separate monetary recoveries for any disgorged funds.[12] This fails under Rule 23. *Comcast*, 569 U.S. at 35.

**Surcharge**: Equitable surcharge may be permissible under two theories—a "make-whole" theory and an unjust enrichment theory. *Amara v. Cigna Corp.*, 925 F. Supp. 2d 242, 255 (D. Conn. 2012). Plaintiffs do not explain which theory they are advancing, but either one raises individualized inquiries. *See Wit*, 317 F.R.D. at 134 (noting that plaintiffs disavowed a surcharge remedy for "out-of-pocket" expenses because it "might raise the kind of individualized issues as to class members' monetary losses that would preclude certification"); *Amara*, 925 F. Supp. 2d at 264 (finding that a Rule 23(b)(2) class for surcharge remedy would require determining "the separate monetary recoveries to which individual plaintiffs are entitled from the funds disgorged"). Moreover, any surcharge theory will turn on whether Cigna acted inequitably under the terms of Cigna's ASO agreements, which, as explained *supra*, will require individualized inquiry to determine what Cigna was authorized by the ASO sponsor to do.

**Injunction/Declaratory Relief**: For reasons above (*supra* Secs. I.B-II), Plaintiffs' gerrymandered class is improper for either declaratory or injunctive relief.

## CONCLUSION

For reasons in Cigna's Opposition and additional reasons above, the Court should deny Plaintiffs' Motion to Certify a Class.

---

[12] *See Nationwide Life Ins. Co. v. Haddock*, 460 F. App'x. 26, 29 (2d Cir. 2012) ("[I]f plaintiffs are ultimately successful in establishing Nationwide's liability on the disgorgement issue, the district court would then need to determine the separate monetary recoveries to which individual plaintiffs are entitled from the funds disgorged.").

Dated: September 15, 2021
    New York, New York

                                               */s/ Warren Haskel*

                                               Joshua B. Simon (*Pro Hac Vice*)
                                               Warren Haskel (*Pro Hac Vice*)
                                               Dmitriy Tishyevich (*Pro Hac Vice*)
                                               Richard W. Nicholson Jr. (*Pro Hac Vice*)
                                               Caroline Incledon (*Pro Hac Vice*)
                                               Chelsea Cosillos (*Pro Hac Vice*)

                                               McDERMOTT WILL & EMERY LLP
                                               One Vanderbilt Avenue
                                               New York, NY  10017-3852
                                               Telephone: (212) 547-5400
                                               jsimon@mwe.com
                                               whaskel@mwe.com
                                               dtishyevich@mwe.com
                                               rnicholson@mwe.com
                                               cincledon@mwe.com
                                               ccosillos@mwe.com

                                               James M. Sconzo (ct04571)
                                               CARLTON FIELDS P.A.
                                               One State St., Suite 1800
                                               Hartford, CT 06103
                                               Telephone: 860-392-5000
                                               Facsimile: 860-392-5058
                                               jsconzo@carltonfields.com

                                               *Attorneys for Defendant Cigna Health and Life Insurance Company*