**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JEFFREY NEUFELD et al. | ) | CASE NO. 3:17-cv-01693 (KAD) |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CIGNA HEALTH AND LIFE | ) | JULY 6, 2023 |
| INSURANCE CO. | ) | |
| *Defendant*. | | |

**MEMORANDUM OF DECISION**
**RE: MOTION TO CERTIFY CLASS (ECF NO. 154)**

Kari A. Dooley, United States District Judge:

Plaintiffs bring this putative class action against Defendant Cigna Health and Life

Insurance Company ("Cigna") alleging violations of the Employee Retirement Income Security

Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, arising out of Cigna's use of third-party vendor

CareCentrix in securing and providing certain medical benefits under the Plaintiffs' ERISA health

benefit plans. Specifically, Plaintiffs allege that Cigna violated the terms of the Plaintiffs' plans

and breached its fiduciary duties under ERISA by overcharging Plaintiffs' deductibles for "durable

medical equipment" ("DME") and other medical care services and supplies. After years of

coordinated and largely cooperative discovery efforts, Plaintiffs now seek class certification. The

motion for class certification was briefed over the course of seven months.[1] Oral argument was

held on October 4, 2022. Having considered the voluminous submissions and the parties' multiple

briefs, for the reasons that follow, the motion for class certification, ECF No. 154, is DENIED.

---

[1] Following the conclusion of the "in due course" briefing, the parties continued to submit notices of
supplemental authority and continued to respond to such notices.  The most recent notice was filed June 7,
2023. *See* Notice of Additional Auth., ECF No. 236.

**Allegations**

The Fifth Amended Complaint[2] is both lengthy and fact intensive. But the issues to be decided with respect to the motion for class certification are fairly narrow. Accordingly, the Court summarizes to a great extent the allegations below.[3]

Plaintiffs are participants or beneficiaries in various employer-sponsored health benefit plans that are subject to ERISA.[4] Fifth Am. Compl. ¶¶ 35–43. Cigna serves as an insurer of some of the Plaintiffs' employee health benefit plans and also as the administrator of all of the Plaintiffs' employee health benefit plans. *Id.* When acting as an administrator of employee health benefit plans, Cigna represents that it is the employer that selects a plan's benefits, terms, and conditions. Oral Arg. Tr. at 24:18–25, ECF No. 233. Cigna offers template plan provisions to facilitate an

---

[2] The instant motion for class certification was filed while the operative complaint in this case was the Fourth Amended Complaint, ECF No. 130. However, after all briefing on the instant motion was completed and oral argument was held, Plaintiffs filed a motion for leave to file a Fifth Amended Complaint to remove the claims of Plaintiff Aubrey Srednicki, who had reached a separate settlement with Cigna. *See* Mot. to Amend/Correct at 1, ECF No. 230. The Court granted the motion, and Plaintiffs filed their Fifth Amended Complaint on February 24, 2023. *See* Order Granting Mot. to Amend/Correct, ECF No. 231; Fifth Am. Compl., ECF No. 232. The Fifth Amended Complaint appears to be identical to the Fourth Amended Complaint in all respects aside from the removal of Plaintiff Srednicki's name and associated claims. Moreover, neither party has indicated that the filing of the near-identical Fifth Amended Complaint has changed the landscape or arguments regarding class certification in any material respect. Accordingly, the Court refers to the Fifth Amended Complaint as the operative complaint in this Decision, but, for purposes of adjudicating the instant motion, treats the Fifth Amended Complaint as if it had been filed prior to the instant motion for class certification and its subsequent briefing.

[3] The following factual allegations, as summarized, are drawn from Plaintiffs' Fifth Amended Complaint, the parties' briefs on the motion for class certification, and the accompanying affidavits and exhibits. *See Lewis Tree Servs., Inc. v. Lucent Techs.*, 211 F.R.D. 228, 231 (S.D.N.Y. 2002) ("In deciding whether the requirements of Rule 23 have been met, the Court may examine not only the pleadings but also the evidentiary record, including any affidavits and results of discovery."). Although the conclusions to be drawn from the facts are contested, the facts themselves are largely undisputed.

[4] Although the Fifth Amended Complaint names some Plaintiffs who are not beneficiaries of ERISA-governed, employer-sponsored health plans, *see* Fifth Am. Compl. ¶¶ 35–43, as discussed *infra*, the class that Plaintiffs seek to certify has evolved over the course of the briefing. Since filing their initial motion for class certification, Plaintiffs have abandoned their request to certify any non-ERISA state-law or RICO classes and have represented that certain Plaintiffs no longer wish to be identified as named Plaintiffs. *See* Pls.' Reply App'x A ("Am. Class Definition"), ECF No. 193-1; Pls.' Reply at 2 n.2, ECF No. 193. Accordingly, the Court only considers the allegations of the named Plaintiffs who fall within the current proposed ERISA class definition.

employer's selection, however Cigna represents that "employers are free to pick and choose which template provisions they want." *Id.* at 25:8–10. Cigna, in turn, is hired by the employer to implement the employer's selections. *Id.* at 24:23–25.[5]

In its role as a health plan administrator of Plaintiffs' plans, Cigna entered into a contract with CareCentrix in 2003, through which CareCentrix established a network of providers for certain medical care supplies and services. Fifth Am. Compl. ¶ 45. Cigna negotiated with CareCentrix with respect to the amounts Cigna would pay CareCentrix for medical care supplies and services. *See* Def.'s Mem. in Opp'n at 7–10, ECF No. 183. CareCentrix, in turn, negotiated the amounts it would pay to its network of providers for these same medical care supplies and services. *Id.* at 10. This contractual relationship between Cigna and CareCentrix continued until January 31, 2021, on which date the contract expired after Cigna elected not to renew the contract. Pls.' Mem. in Supp. at 8, ECF No. 156.

Plaintiffs' plans included cost-sharing provisions—as relevant here, deductibles—which required Plaintiffs to pay out of pocket for a percentage of the costs of their medical care and covered services. *See* Fifth Am. Compl. ¶¶ 56–57; Pls.' Mem. in Supp. at 4. While the Cigna-CareCentrix contract was in effect, Cigna calculated Plaintiffs' financial responsibility for a covered claim under the plans by using as the "cost" of the care the amount it had negotiated to pay to CareCentrix (the "CareCentrix Rate") for the covered care. *See* Fifth Am. Compl. ¶¶ 61–64; Pls.' Mem. in Supp. at 4. Plaintiffs allege that, on occasion (more often than not), the amount paid to the medical provider by CareCentrix was lower than the amount paid to CareCentrix by Cigna. Fifth Am. Compl. ¶¶ 61–64. They allege that under the terms of the plans, the actual cost

---

[5] Cigna represents that, because of this process by which employers are free to pick and choose their plan provisions, "there is no standard Cigna plan," and that "Cigna administers tens of thousands of these health plans that all have varying benefits[,] . . . terms and conditions." Oral Arg. Tr. at 25:1–10.

of the care is what the provider received (the "Provider Rate"), not what CareCentrix received, and

that Cigna's use of the often-higher CareCentrix Rate resulted in Plaintiffs being overcharged in

violation of the terms of the plans and ERISA.[6] *See* Fifth Am. Compl. ¶¶ 72–78, 119–22; Pls.'

Mem. in Supp. at 2–3.

Although when originally filed, the Complaint alleged numerous violations of ERISA

arising out of the administration and provision of a variety of medical care devices and services,

the factual issues have been narrowed at this point. Remaining in Plaintiffs' Fifth Amended

Complaint are covered claims alleging overcharging specifically for medical care and services

provided or arranged by CareCentrix—namely home patient care, supplies, and "durable medical

equipment," or "DME," such as canes, CPAP machines, and other medically prescribed assistance

devices. *See* Am. Class Definition § (B); Fifth Am. Compl. ¶¶ 6, 62, 64. Now pending before the

Court is Plaintiffs' motion to certify the class pursuant to Federal Rule of Civil Procedure 23, ECF

No. 154.

**Legal Standard for Class Certification**

A party seeking class certification under the Federal Rules of Civil Procedure must

establish by a preponderance of the evidence that all of the requirements of Rule 23 have been

met. *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). A district court may not certify a

class unless it "is satisfied, after a rigorous analysis," that such requirements are met. *Wal-Mart

Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (quoting *Gen. Tel. Co. of Sw v. Falcon*, 457

U.S. 147, 161 (1982)). When assessing whether plaintiffs have met this burden, courts must

consider "all of the relevant evidence admitted at the class certification stage." *Betances v. Fischer*,

---

[6] Plaintiffs further allege that, by using the CareCentrix rate instead of the provider rate, Cigna was able to pass on the administrative costs associated with the CareCentrix contract to plan participants and beneficiaries. *See* Pls.' Mem. in Supp. at 7.

304 F.R.D. 416, 424 (S.D.N.Y. 2015) (quoting *In re Initial Pub. Offerings Sec. Litig.* ("*In re IPO*"), 471 F.3d 24, 42 (2d Cir. 2006)).

Pursuant to Rule 23(a), a class action may be certified only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Rule 23 also incorporates an "implied requirement of ascertainability" of the class. *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (quoting *In re IPO*, 471 F.3d at 30). In addition to satisfying the four requirements of Rule 23(a), "a class action must qualify under at least one of the '[t]ypes of [c]lass [a]ctions' listed in Rule 23(b)." *Meidl v. Aetna, Inc.*, No. 15-CV-1319 (JCH), 2017 WL 1831916, at *2 (D. Conn. May 4, 2017).

Rule 23(b)(1)[7] provides that a class may be certified where "prosecuting separate actions by or against individual class members would create a risk of" either "(A) inconsistent or varying adjudications . . . that would establish incompatible standards of conduct for the party opposing the class," or "(B) adjudications . . . that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." "Rule 23(b)(1)(A) takes in cases where the party is obliged by law to treat the members of the class alike . . . or where the party must treat all alike as a matter of practical necessity," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (internal quotation marks omitted), "while Rule 23(b)(1)(B) is appropriate in situations where

---

[7] In the Fifth Amended Complaint, Plaintiffs assert only that they seek class certification pursuant to Rule 23(b)(2) and 23(b)(3), *see* Fifth Am. Compl. ¶ 121, although in their Memorandum in Support of the motion for class certification they also seek certification under Rule 23(b)(1), *see* Pls.' Mem. in Supp. at 14–15. Perhaps this is yet another example of Plaintiffs' shifting positions throughout this litigation, however the Court considers Plaintiffs' arguments regarding certification under Rule 23(b)(1) to the extent that Plaintiffs still intended to raise them.

relief for some interested individuals may conflict with granting relief to others, such as 'limited fund cases,'" *Garthwait v. Eversource Energy Co.*, No. 3:20-CV-00902(JCH), 2022 WL 1657469, at \*15 (D. Conn. May 25, 2022) (quoting *Amchem*, 521 U.S. at 614). The justification for a Rule 23(b)(1) class is "that individual adjudications would be impossible or unworkable." *Wal-Mart*, 564 U.S. at 361.

Rule 23(b)(2) generally applies where a class seeks injunctive or declaratory relief. *See id.* at 360. It provides that a class may be certified when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The "key" to a Rule 23(b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (internal quotation marks omitted). Thus, a class may be certified under Rule 23(b)(2) only when "a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* Notwithstanding, monetary relief may still be sought by a Rule 23(b)(2) class "when that relief is incidental to a final injunctive or declaratory remedy." *Amara v. CIGNA Corp.*, 775 F.3d 510, 520 (2d Cir. 2014). Finally, class actions based on claims for individualized relief— whether monetary, declaratory, or injunctive—are impermissible under Rule 23(b)(2). *See id.* at 519; *Wal-Mart*, 564 U.S. at 360–61.

Rule 23(b)(3) provides that a class may be certified only where "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The predominance requirement of Rule 23(b)(3) usually presents a

6

"far more demanding" obstacle to certification than the commonality requirement of Rule 23(a)(2).

*In re Photochromic Lens Antitrust Litig.*, No. 8:10–cv–00984–T–27EA, 2014 WL 1338605, at \*16

(M.D. Fla. Apr. 3, 2014); *accord Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) ("If anything,

Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." (citing

*Amchem*, 521 U.S. at 623–24)).

**Discussion**

In its original briefing in opposition to Plaintiffs' motion for class certification, Cigna

identified numerous substantial differences between the many plans at issue in the proposed

certified class and subclasses. *See* Def.'s Mem. in Opp'n at 16–30, ECF No. 183. These

differences, Cigna argued, demonstrated the need for individualized proof with respect to each

Plaintiff, depending upon which plan applied, the specific language of that plan, and how these

differences could and would impact a determination of both liability and harm. *Id.* Given these

significant plan variations, Cigna challenged Plaintiffs' ability to demonstrate many of the

prerequisites to class certification. *Id.* In response, Plaintiffs, apparently in recognition of these

legal hurdles to class certification, significantly narrowed the scope and size of the class to include

only those Plaintiffs whose plans contained specific template language.[8] *See* Am. Class Definition.

---

[8] In the Fifth Amended Complaint, Plaintiffs originally sought certification of an ERISA class and a state law claims class. *See* Fifth Am. Compl. ¶¶ 121–22. However, in their Memorandum in Support of their motion for class certification, Plaintiffs instead sought certification of a RICO class and an ERISA class, apparently abandoning any claim in the Fifth Amended Complaint for a state law claims class. *See* Pls.' Mem. in Supp. at 10, 18. In their Reply brief, Plaintiffs now seek only certification of the ERISA class, having now abandoned the proposed RICO class. *See* Am. Class Definition; Pls.' Reply at 2 n.2. Further, the ERISA class has itself been substantially narrowed. For example, the prior proposed ERISA class also challenged the mechanism by which various methods of cost sharing, such as copays, deductibles, and coinsurance, were calculated. *See* Fifth Am. Compl. ¶ 122. The plan variations identified by Cigna in its original attempt to defeat class certification resulted in Plaintiffs now challenging only the mechanism by which deductibles were calculated. *See* Am. Class Definition. Similarly, the prior proposed class included class members who had secondary insurance in addition to a plan administered by Cigna. *See* Fifth Am. Compl. ¶ 122. These individuals are now excluded from the proposed ERISA class. *See* Am. Class Definition. Indeed, a significant portion of Plaintiffs' Reply is devoted to demonstrating how the current proposed class defeats each of Cigna's arguments raised in opposition to the certification of the original

In so doing, Plaintiffs assert that the question of whether Cigna violated ERISA by charging the

CareCentrix rate against Plaintiffs' deductibles creates a singular and class-wide legal issue that

can be established with generalized proof and determined irrespective of any other plan differences

that might otherwise exist. *See* Oral Arg. Tr. at 23:18–23. Cigna disagrees.

Plaintiffs now seek to certify the following class:

> All individuals residing in the United States and its territories who:
>
> (A) Were enrolled in a health benefit plan administered by Cigna Health and Life Insurance Company or its affiliates ("Cigna") meeting the following criteria:
>
> - was identified in Cigna's data as subject to ERISA; and
>
> - provided that a member "may be required to pay a portion of the Covered Expenses"; and
>
> - provided that "The term Covered Expenses means the expenses incurred by or on behalf of a person for the charges listed below if they are incurred after he becomes insured for these benefits"; and
>
> - provided that "The term 'charges' means the actual billed charges; except when the provider has contracted directly or indirectly with Cigna for a different amount"[9]; and
>
> - if the plan provided, in the Coordination of Benefits section, that "If Cigna contracts with an entity to arrange for the provision of Covered Services through that entity's contracted network of health care providers, the amount that Cigna has agreed to pay that entity is the allowable amount used to determine your coinsurance or deductible

---

ERISA class. *See* Pls.' Reply at 1–2, 10–13; *see, e.g.*, *id.* at 12 ("Members whose plans had this language and who had secondary coverage are excluded from the proposed amended class definition, so this language is irrelevant."); *id.* at 13 ("Plaintiffs have excluded copayment and coinsurance transactions from their proposed amended class definition and, thus, those variations are irrelevant."). As many of Cigna's original arguments have been rendered moot, the Court does not detail the manner by which the certification issue morphed into its current state, except to say that Plaintiffs' proceeding in this fashion years into the litigation has made the Court's assessment of the motion considerably more difficult and has unnecessarily tapped the resources of both the parties and the Court.

[9] Some of the "charges" definitions refer to "CG" or "CIGNA" instead of Cigna. Plaintiffs treat them interchangeably. Some of the "charges" definitions use "Charges" instead of "charges." Plans that use "Charges" are not included in the proposed class.

payments," the Cigna health benefit plan was the member's sole source of coverage for the claim(s) at issue; and

- the claims under the health benefit plan were adjudicated on the Proclaim platform; and

(B) From October 6, 2011 through December 31, 2019, obtained under such plan services, equipment, or supplies, other than drugs, from a provider in CareCentrix, Inc.'s network that were priced on a fee-for-service basis; and

(C) Were charged a deductible amount for those services, equipment, or supplies that was greater than the contracted rate between CareCentrix, Inc. and the provider.

Am. Class Definition (footnote in original, renumbered).

*Certification Under Rule 23(a)*

As discussed above, under Rule 23(a), a class may be certified if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Rule 23 also incorporates an "implied requirement of ascertainability" of the class. *Brecher*, 806 F.3d at 24 (quotations omitted).

Under Rule 23(a), Cigna principally challenges whether Plaintiffs can demonstrate the second requirement, which is often referred to as the "commonality" requirement. *See, e.g.*, *Wal-Mart*, 564 U.S. at 349. Commonality requires "a plaintiff to show that 'there are questions of law or fact common to the class.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(2)). "That language is easy to misread, since '[a]ny competently crafted class complaint literally raises common questions.'" *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–32 (2009)). In order to satisfy the commonality requirement, Plaintiffs' "claims must depend upon a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or

falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (quoting Nagareda, *supra*, at 132).

In response to Plaintiffs' Reply, which, as discussed above, had the effect of significantly narrowing the proposed class, Cigna first argues that individualized plan review for each Plaintiff would still be required to determine whether or not each Plaintiff's plan gave Cigna discretion in assessing and paying claims. *See* Def.'s Sur-Reply at 2–4, ECF No. 203. This inquiry, in turn, will dictate the standard of review this Court must apply—arbitrary and capricious for those plans that do confer discretion and *de novo* review for those that do not—which could then vary from Plaintiff to Plaintiff. *Id.*; *see Tsagari v. Pitney Bowes, Inc. Long-Term Disability Plan*, 473 F. Supp. 2d 334, 336 (D. Conn. 2007).

Plaintiffs respond, citing *Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ.*, 819 F.3d 42 (2d Cir. 2016), that, insofar as they have alleged ERISA violations in the processes and procedures by which claims were handled, their section 502(a)(1) claims alleging such violations are automatically subject to *de novo* review, rendering any variation in discretion conferred under the plans irrelevant. *See* Pls.' Sur-Sur-Reply at 1, ECF No. 206. Although the court in *Halo* did indeed hold that alleged violations of claim handling processes and procedures may result in *de novo* review of the benefits determination, 819 F.3d at 60–61, *Halo* does not undermine Cigna's argument here. Contrary to Plaintiffs' contentions, the court in *Halo* did not hold that *de novo* review *automatically* applies to ERISA claims merely alleging violations of claims processes and procedures. Rather, the court held that "*a plan's failure to comply with the*

*Department of Labor's claims-procedure regulation* will result in that claim being reviewed *de novo* in federal court, *unless* the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless."[10] *Id.* (emphasis added) (internal citation omitted). The court then remanded the case to the district court to make findings of fact and determine the applicable standard of review. *Id.* at 46 ("[T]he district court did not make factual findings that would permit us to assess whether Defendant . . . established procedures in full conformity with the regulation but inadvertently and harmlessly failed to comply with it in the processing of a particular claim. We therefore . . . leave it to the district court to apply the correct standard in the first instance on remand."). Here, likewise, a review of the individual applicable plan of each Plaintiff would be necessary to determine the applicable standard of review for each Plaintiff's claims.

In other words, under *Halo,* to determine the applicable standard of review, the first inquiry is of the individual plan—does it afford Cigna discretion in assessing claims? If no, then the standard of review is *de novo*. *See id.* at 51. If yes, then the second inquiry is, again, of the individual plan and claims at issue—did Cigna's claims processing pursuant to that plan comport with the DOL regulations?[11] If yes, then the standard of review is whether Cigna's determination

---

[10] The Department of Labor's regulations governing claims procedures for employee benefit plans under ERISA ("DOL regulations") provide highly specific minimum requirements for the processing of claims, which address timing, information sharing, appeals processes and the like. *See* 29 C.F.R. § 2560.503–1.

[11] The determination of whether Cigna's handling of Plaintiffs' claims fell short of the DOL regulations' minimum standards would require an examination of the process employed for each Plaintiff's claims. Although Plaintiffs allege that Cigna utilized a singular process that could be adjudicated on a class-wide basis, *see* Pls.' Reply at 7, Cigna argues that individualized review would still be necessary because the determination of whether the processing of each claim violated the DOL regulations will depend, at least in part, on the terms of each individual plan and the methods by which Cigna processed claims thereunder, *see* Def.'s Sur-Reply at 3–4. For example, Plaintiffs assert that Cigna's "gag policy" rendered Cigna's claims handling process unavailable to Plaintiffs insofar as they were not aware of the Provider Rate at all. *See* Pls.' Reply at 7–8. As Cigna observes, however, clearly some Plaintiffs were aware of the Provider

was arbitrary and capricious. *See id.* at 51–54. If no, then the standard of review will be *de novo* under *Halo* unless Cigna can demonstrate that the plan "otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless." *Id.* at 58. As a result, this multi-layered inquiry to determine the applicable standard of review could very well vary from plan to plan, resulting in a potential "kaleidoscope of 'yeses' and 'nos' across the class." *See Lipstein v. UnitedHealth Grp.*, 296 F.R.D. 279, 290 (D.N.J. 2013). Plaintiffs cannot avoid this undesirable conclusion by simply alleging an across-the-board failure to comply with the DOL regulations as to each of Plaintiffs' claims. Because even if Cigna's process was identical as to every Plaintiffs' claims, the individual plans are still the necessary starting point to determine the standard of review. And if no violations of the DOL regulations are proven, or they are proven but excused as inadvertent and harmless, the plans also become the ending point of the analysis.[12]

Even if Plaintiffs are correct that *Halo* renders irrelevant the grant of discretion (or lack thereof) in individual plans, Cigna also argues, persuasively, that in many of its agreements with self-funded plan sponsors ("ASO agreements"), it was contractually obligated to calculate benefits using "fee-for-service charges for various *vendors* and other providers/arrangers of health care services," of which CareCentrix was one. Def.'s Sur-Reply at 4 (emphasis in original). Cigna further notes that some plans specifically reflect that the plan will be administered in accordance with the plan itself and its related ASO agreements. *See id.*; Def.'s Mem. in Opp'n at 29–30. Therefore, Cigna argues, individualized assessment of the plans and the ASO agreements will be

---

Rate while others perhaps were not. Def.'s Sur-Reply at 3. Thus, individualized inquiry and proof would be required to determine whether the processing of each claim violated the DOL regulations.

[12] This is not to say that *Halo* could never be relied upon in a putative class action to render irrelevant the question of whether a plan administrator was given discretion under a particular plan. The Court can certainly envision allegations which would support such a result. But this is not that case.

required in order to assess Cigna's liability as to each Plaintiff with respect to both the wrongful

calculation of benefits claims and the breach of fiduciary duty claims. *See* Def.'s Mem. in Opp'n

at 29–30. In response, Plaintiffs assert that the ASO agreements cannot alter plan terms, and since

the plans of the now-proposed class all contain the same template language upon which Plaintiffs

rely, the ASO agreements are irrelevant. Pl.'s Reply at 15–16.

Again, the Court agrees with Cigna. While the resolution of Plaintiffs' claims may involve

a common question as to each proposed class member—as Plaintiffs succinctly put during oral

argument: "Did Cigna violate members' plans by adjudicating their CareCentrix claims using the

CareCentrix rate instead of the medical provider rate?"—there can be no answer, and therefore no

"common answer," without resorting to an individualized assessment of the particular plans and

determining whether and to what extent Cigna's administration of each plan was dictated by an

ASO agreement. Oral Arg. Tr. at 23:18–23; *see Wal-Mart*, 564 U.S. at 350 ("What matters to class

certification is not the raising of common questions—even in droves—but rather, the capacity of

a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."

(cleaned up)). Plaintiffs' sweeping dismissal of ASO agreements as not impacting the adjudication

of their claims simply fails; Plaintiffs cannot exclude as "irrelevant" the evidence needed to answer

the common question by insisting upon a myopic view of what is required to do so.

Finally, Cigna argues that, notwithstanding Plaintiffs' ever-evolving class definition, the

class definition still fails to account for other plan variations which necessarily defeat

certification.[13] Def.'s Sur-Reply at 5–8.

---

[13] Cigna asserts further that a plan-by-plan review would be required to determine who is in the class and who is not and that proceeding in this fashion opens Cigna up to serial class litigation to account for the plan variations one class action at a time. *See* Def.'s Sur-Reply at 8–11. Cigna therefore argues that proceeding in such a way precludes the Court from finding that a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy," as required to certify the class pursuant to Rule 23(b)(3). *Id.* As the Court concludes that Plaintiffs' proposed class cannot satisfy the

Plaintiffs' current class formulation applies to those whose plans contain language from a specific set of identified templates drawn from Cigna's library of available plan terms. *See* Pls.' Reply App'x B, ECF No. 193-2. To be a member of the class, the Plaintiff must have been enrolled in a health benefit plan administered by Cigna which meets, *inter alia,* the following criteria: the plan (1) is an ERISA plan; (2) provides that a member "may be required to pay a portion of the Covered Expenses" (the "Portion Clause"); (3) defines the term "Covered Expenses" as "the expenses incurred by or on behalf of a person for the charges listed below if they are incurred after he becomes insured for these benefits" (the "Covered Expenses Clause"); and (4) defines "charges" to mean "the actual billed charges; except when the provider has contracted directly or indirectly with Cigna for a different amount" (the "charges" definition). Am. Class Definition § (A). The class definition then goes on to exclude those with secondary health insurance and those whose claims were not adjudicated on the "Proclaim platform." *Id.* It further limits the class to those who obtained "services, equipment, or supplies, other than drugs, from a provider in CareCentrix, Inc.'s network that were priced on a fee-for-service basis" and whose deductibles for those services, equipment, or supplies were calculated based upon the CareCentrix Rate, not the Provider Rate. *Id.* §§ (B)–(C).

Plaintiffs' claim is that these uniform plan terms provided that they must "pay a cost share that was a 'portion' of 'Covered Expenses,'" which must be based on the "charges" of the network providers, *i.e.*, the Provider Rate, not the CareCentrix Rate. Pls.' Mem. in Supp. at 1. They argue that the class members can easily be identified by searching Cigna's plans for the presence of these uniform plan terms, and that the legal issue presented, *i.e.*, whether the plan allows Cigna to

---

commonality requirement of Rule 23(a), nor can it qualify as any of the types of class actions listed in Rule 23(b), including the 23(b)(3) class for lack of predominance, the Court need not reach the issue of superiority.

calculate deductibles based upon the CareCentrix Rate, is resolved by a plain reading of this uniform language and is therefore identical for all class members. *See* Pls.' Reply at 14 & n.8; Pls.' Sur-Sur-Reply at 1–4.

While Plaintiff has attempted to address some of the hurdles to certification revealed during the briefing, the Court agrees with Cigna that, in addition to the problems discussed above and notwithstanding the standard template language used in each of the Plaintiffs' plans, there are still significant variations between the plans that must be taken into consideration in adjudicating each Plaintiff's ERISA claims.

> As Judge Meyer observed in *Negron v. Cigna Health and Life Ins. Co.*:

> > ERISA plans are essentially contracts, and courts use "familiar rules of contract interpretation" when addressing an ERISA plan. *Lifson v. INA Life Ins. Co. of N.Y.*, 333 F.3d 349, 353 (2d Cir. 2003) (*per curiam*). One such well-established rule is that I must read a plan "as a whole, [and] giv[e] terms their plain meanings." *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002). To be sure, "contract claims generally may be appropriate for class certification where form agreements are at issue." *Wing v. Metro. Life Ins. Co.*, 2007 WL 9814564, at *6 (S.D.N.Y. 2007). On the other hand, "courts properly refuse to certify breach of contract class actions where the claims require examination of individual contract language" where the language variations are material to the issue of breach. *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 124 (2d Cir. 2013). Further, "class-wide resolution of contract claims becomes problematic in the absence of form agreements, or where a number of different form agreements are at issue." *Wing*, 2007 WL 9814564, at *7.

No. 3:16-CV-01702 (JAM), 2021 WL 2010788, at *14 (D. Conn. May 20, 2021).

And although *Negron* involved similar differential pricing for prescription drugs, the arguments advanced in that case were largely identical to those advanced here: that uniform interpretation of specific plan provisions would allow for class-wide resolution of the ERISA claims without the need to address plan variations. *See id.* at *14–15. The Court agrees with Judge Meyer's analysis and finds his conclusion that "the number of variations among the specific

plans identified by Cigna and the fact that they require individual-specific reference to terms in the plans outside the Class definition defeat any assertion of commonality across the ERISA Class" equally appliable here. *Id.* at *21.

For example, Cigna notes that the meaning of "charges" both between and within plans varies because the "Covered Expenses" provision of the plans separately defines the charge for each Covered Expense under the plan. Def.'s Sur-Reply at 5–6. To illustrate, Cigna points to the Covered Expense provision defining the charge for DME in some plans. *Id.* Cigna identifies that some plans define the DME charge as "*charges* made for purchase or rental of [DME] that is ordered or prescribed by a Physician and provided by a *vendor approved by Cigna*." Def.'s Mem. in Opp'n at 20–21 (emphasis added by Cigna). This plan language, Cigna argues, rebuts Plaintiffs' argument that CareCentrix is not a "provider" and that its fees therefore do not qualify as "charges" for the purpose of the Covered Expenses Clause. Def.'s Sur-Reply at 5. More importantly, Cigna notes that, in spite of Plaintiff's repeated dismissal of this plan variation as "irrelevant," the fact that the meaning of "charges" varies both within plans and from plan to plan for both DME and the other types of services CareCentrix arranged or provided means that plan-by-plan analysis will be required to determine the proper definition of "charges" in a given plan. *Id.* at 5–6.

Similarly, Cigna identifies other ways that the plans vary which may inform the definition of "charges." *See* Def.'s Sur-Reply at 6. For example, some plans provide in the "Allowable Expense" provision that "[i]f Cigna contracts with an entity to arrange for the provision of Covered Services through that entity's contracted network of health care providers, the amount that Cigna has agreed to pay that entity is the allowable amount used to determine your coinsurance or deductible payments." Def.'s Mem. in Opp'n at 23; Def.'s Sur-Reply at 6. This language, Cigna

argues, "makes clear" that even if Plaintiff's theory that CareCentrix is not a "provider" is correct, it was permissible for Cigna to use the CareCentrix rate in calculating deductibles under plans containing this language. Def.'s Mem. in Opp'n at 23. Plaintiffs responded to this argument by simply excluding members who have secondary insurance and this plan language from the class. *See* Def.'s Sur-Reply at 6. However, as Cigna points out, this excision cannot be carried out without individualized inquiry into each Plaintiff's secondary coverage and plan language. *Id.*

The Court need not decide whether the variations identified above, or the plethora of other variations identified by Cigna, would result in the "kaleidoscope of 'yeses' and 'nos'" that the class action model seeks to avoid. *See Lipstein*, 296 F.R.D. at 290. Indeed, "Plaintiffs very well may be correct" that some of these variations are irrelevant to the ultimate disposition of the proposed class's alleged common question. *See Negron*, 2021 WL 2010788, at *21. But, just as Judge Meyer observed in *Negron*, it is within Plaintiffs' myriad rationalizations of each variation identified by Cigna that lies the issue: "[P]laintiffs' responses to these variations in language require interpretations of countless individual plans to explain why this-or-that variation is or is not consistent with the Class language." *Id.* And in a case with thousands of potential plaintiffs and plans, "this kind of whack-a-mole approach to what appear to be material variations is not tenable." *Id.*

Thus, the Court finds that Plaintiffs have failed to meet their burden to establish commonality under Rule 23(a).

*Certification Under Rule 23(b)*

As the Court finds that there is no basis to certify the class under the less stringent commonality requirement of Rule 23(a), there is certainly no basis upon which to certify the class under the more rigorous requirements of Rule 23(b). However, the Court observes that, even if the

class did meet the commonality requirement of Rule 23(a), the proposed class would likely face even greater hurdles to certification under any of Rule 23(b) class subtypes.

As set out above, to be certified as a class under Rule 23(b)(1), Plaintiffs generally must show "that individual adjudications would be impossible or unworkable." *Wal-Mart*, 564 U.S. at 361. However, it is the class-wide adjudication of Plaintiffs' claims that would be unworkable, if not impossible.[14] As indicated, the possibility for variations in the applicable standard of review and the potential effects of plan variations could yield an array of differing outcomes across the class. Moreover, as Cigna has observed, Plaintiffs' attempts to escape the effects of the plan variations has resulted in the exclusion of many similarly situated individuals from the class. Def.'s Sur-Reply at 11–12. Thus, even if the Court were to undertake the process of adjudicating the claims in this case through painstaking individualized review, Cigna could yet still be exposed to further adjudications of similar claims by those who were excluded from the proposed class. *See id.* Proceeding as a class therefore would not serve to protect the interests of interested parties;

---

[14] Cigna asserts, and the Court agrees, that individualized assessment of the plans and their ASOs would also be necessary to determine whether Cigna was acting as a fiduciary in the first instance, at least with respect to some Plaintiffs. *See* Def.'s Sur-Reply at 4. The need for individualized assessment of whether Cigna was acting as a fiduciary would also defeat Plaintiffs' certification request under Rule 23(b)(1). Although breach of fiduciary claims are oft certified under Rule 23(b)(1), *see Douglin v. GreatBanc Tr. Co.*, 115 F. Supp. 3d 404, 412 (S.D.N.Y. 2015) ("The Supreme Court has observed that actions for breach of fiduciary duties are 'classic examples' of Rule 23(b)(1) cases, and courts in this Circuit have indeed determined that claims for breach of fiduciary duty brought under ERISA—as plaintiffs do in this action— are well suited to Rule 23(b)(1)." (internal citations omitted)), those cases generally involve circumstances where there is no dispute as to the nature of the fiduciary relationship or the obligations arising thereunder, *see, e.g., id.* (finding that certification under Rule 23(b)(1)(A) was appropriate because "because the defendants have a statutory obligation, as well as a fiduciary responsibility, to treat the members of the class alike" (internal quotations omitted)); *Meidl v. Aetna, Inc.*, No. 15-CV-1319 (JCH), 2017 WL 1831916, at *17–20 (D. Conn. May 4, 2017) (finding certification under Rule 23(b)(1)(A) appropriate where an insurance provider was alleged to have violated its ERISA fiduciary obligations by denying coverage to all class members for a specific type of medical treatment). Where, as here, the assessment of the fiduciary relationship requires an individualized assessment as to each Plaintiff, the common rationale for certification of such claims is absent. *Cf. Peters v. Aetna, Inc.*, 2 F.4th 199, 229–31 (4th Cir. 2021) (noting that the "threshold question" is whether the defendant "was acting as a fiduciary when taking the action subject to complaint," and that "[t]he lodestar to determining fiduciary or party in interest liability are the terms of the Plan" (internal quotations omitted)).

rather, it may well "impair or impede their ability to protect their interests." *See* Fed. R. Civ. P. 23(b)(1)(B).

Likewise, the class cannot be certified under Rule 23(b)(2). As set out above, to be certified as a class under Rule 23(b)(2), Plaintiffs must show that "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. However, once again, the variety of potential outcomes across the class and the possibility that Cigna's actions may prove permissible in some instances while impermissible in others precludes the imposition of singular injunctive relief for the class as a whole. *See In re Aetna UCR Litig.*, No. 07-CV-3541 (KSH) (CLW), 2018 WL 10419839, at *25 (D.N.J. June 30, 2018) (finding that "an injunction would not provide indivisible relief to all class members" in a purported class action seeking recalculation of past insurance claims where the class featured a "plan-by-plan minefield"). Moreover, Cigna has cast substantial doubt on whether the relief sought by Plaintiffs—the reprocessing of each Plaintiff's claims using the Provider Rate where it was lower than the CareCentrix Rate—is truly injunctive. *See* Def.'s Sur-Reply at 12–13. While the Court need not decide this issue, the reprocessing of claims *only* in instances where Plaintiffs were overcharged and not undercharged does not appear to be truly injunctive or to provide merely an "incidental" monetary benefit. *See Amara*, 775 F.3d at 520; *cf. Meidl*, 2017 WL 1831916, at *21 ("Rather than seeking payment, a reprocessing claim simply seeks that claims be reprocessed via a lawful method, *despite the fact that certain class members may receive no payment* even after the reprocessing." (emphasis added)). Rather, this "injunctive" relief appears to be the mechanism through which Plaintiffs seek to recoup their monetary losses arising out of the claimed ERISA violations.

Finally, the class cannot be certified under Rule 23(b)(3). For a class to be certified under this subsection, "the questions of law or fact common to class members" must "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This predominance requirement is similar to the requirement of commonality under Rule 23(a), however it imposes a much higher bar. *Comcast Corp.*, 569 U.S. at 34. As the Court has previously observed, Plaintiffs fail to clear even the lower threshold of commonality for 23(a) purposes. And as "predominance" is a more rigorous requirement than commonality, *id.*, even if the Plaintiffs can be said to have cleared the commonality hurdle, for the same reasons the Court concludes otherwise, they cannot clear the predominance hurdle under Rule 23(b)(3).

**Conclusion**

For the foregoing reasons, Plaintiffs' motion for class certification, ECF No. 154, is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 6th day of July 2023.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE